UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN ARACELY PABLO SEQUEN,<br><br>Plaintiff,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>Defendants. | Case No. 25-cv-06487-PCP<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION** |

Carmen Aracely Pablo Sequen, an asylum-seeker from Guatemala, arrived in the United States in June 2023. One week later, she was arrested and detained by Department of Homeland Security (DHS) agents. The next day, DHS exercised its discretion under 8 U.S.C. § 1226(a) to release her on her own recognizance and initiated removal proceedings in immigration court. For over two years, Ms. Pablo Sequen lived, worked, and built a community in San Francisco, all while complying with the conditions of her release.

On July 31, 2025, as she was leaving the immigration court in San Francisco, Ms. Pablo Sequen was again arrested and detained by officers of Immigration and Customs Enforcement (ICE), a division of DHS. ICE re-arrested her, without notice or a hearing, on a warrant issued under § 1226. Ms. Pablo Sequen filed a writ of habeas corpus, claiming that her detention violated her procedural and substantive due-process rights under the Fifth Amendment. On August 1, 2025, this Court issued a temporary restraining order requiring the government to release Ms. Pablo Sequen and enjoining it from re-detaining her without notice and pre-arrest hearing before a neutral decisionmaker. Now before the Court is Ms. Pablo Sequen's request to convert that temporary restraining order into a preliminary injunction.

The government does not argue that its actions comport with the ordinary requirements of constitutional due process. Instead, it insists that those requirements do not extend to Ms. Pablo

Sequen. Because she was apprehended within a week of entering the country and a few dozen miles from the border, the government contends, she never "effected an entry" and thus has no due-process rights beyond those afforded by statute. *Cf. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). And though it consistently treated Ms. Pablo Sequen as subject to § 1226 until last month, the government now claims that she is detained under 8 U.S.C. § 1225(b)(1) and (b)(2). Section 1226 requires detention only in limited circumstances and entitles detainees to challenge their detention before an immigration judge. By contrast, § 1225(b)(1) mandates detention for all covered noncitizens, and § 1225(b)(2) mandates detention unless a covered individual is "clearly and beyond a doubt entitled to be admitted" into the United States. Neither § 1225(b)(1) nor (b)(2) provides a mechanism for a noncitizen to challenge her detention. Thus, the government argues, Ms. Pablo Sequen's detention is mandatory and she has no due-process right to challenge it.

The government's arguments are unavailing. Whether or not Ms. Pablo Sequen had "effected an entry" when first apprehended, she has certainly done so in the intervening two years. The Constitution now entitles her to due process of law, and the statutory processes available for her to challenge her detention do not satisfy this requirement. Contrary to the government's assertions, Ms. Pablo Sequen's detention is governed by § 1226. She does not fall within the limited class of individuals subject to § 1225(b)(1), and it is well past the point when the government could have detained her under § 1225(b)(2). But no matter which section governs her detention, the procedural safeguards available to Ms. Pablo Sequen (to the extent they exist) are constitutionally insufficient and do not justify her detention without a pre-arrest hearing. The Court therefore grants the preliminary injunction.

## STATUTORY FRAMEWORK

Two statutes—8 U.S.C. §§ 1225 and 1226—provide for the detention of noncitizens (or "aliens") pending removal proceedings.

Under § 1225, a noncitizen "who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). All applicants for admission

2

"shall be inspected by immigration officers" to assess whether they may be admitted into the country. 8 U.S.C. § 1225(a)(3). An inspecting officer must then sort an applicant for admission "into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287. Section 1225(b)(1) applies to noncitizens who, upon arriving, are initially deemed inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7) due to fraud, misrepresentation, or lack of valid documentation. *See* 8 U.S.C. § 1225(b)(1)(A)(i). It also applies to certain noncitizens designated by the Attorney General who are later determined to be inadmissible under § 1182(a)(6)(C) or (a)(7) and were not continuously present in the United States for the two-year period prior to that determination. *See id.* § 1225(b)(1)(A)(iii). Section 1225(b)(2) covers all other noncitizens "seeking admission," with limited exceptions not applicable here. *See id.* § 1225(b)(2)(A), (B).

Both § 1225(b)(1) and (b)(2) authorize detention pending removal proceedings in certain circumstances. Noncitizens covered by § 1225(b)(1) are subject to an expedited removal process and will be "removed from the United States without further hearing or review," unless they claim a right to asylum. *Id.* § 1225(b)(1)(A)(i)–(ii). If a noncitizen states an intent to apply for asylum and an immigration officer determines that there is a credible fear or persecution, the noncitizen "shall be detained for further consideration of the application for asylum." *Id.* § 1225(b)(1)(B)(ii). Noncitizens covered by § 1225(b)(2) are not subject to expedited removal. Instead, they are placed in standard immigration proceedings under § 1229a, which include an evidentiary hearing before an immigration judge and the right to seek review by the Board of Immigration Appeals (BIA) and a federal court of appeals. *Id.* § 1225(b)(2)(A); *Thuraissigiam*, 591 U.S. at 108. Section 1225(b)(2) mandates that noncitizens "shall be detained" pending such proceedings unless they are "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The government may release noncitizens detained under either § 1225(b)(1) or (b)(2) only on temporary parole "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 300; *see* 8 U.S.C. § 1182(d)(5)(A).

For noncitizens who are "already in the country," § 1226 permits detention "pending the outcome of removal proceedings" in certain circumstances. *Id.* at 289. Unlike § 1225(b)(1) and

3

(b)(2), § 1226 affords the government significant discretion. After arresting a noncitizen "[o]n a warrant issued by the Attorney General," the government "may continue to detain the arreste[e]" until a final removal decision is made or "may release" them on "bond" or "conditional parole." 8 U.S.C. § 1226(a)(1)–(2). "Conditional parole" may also be called "release on recognizance." *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007). Section 1226 prohibits the release of a detained noncitizen, whether on bond or conditional parole, unless the noncitizen "satisfies [the government] that [she] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(a)(4); *see also* 8 C.F.R. § 1236.1(c)(8). If a noncitizen wishes to contest the initial custody determination—i.e., the denial or amount of bond—she has a right to do so before an immigration judge. 8 C.F.R. § 1236.1(d)(1).

In a handful of circumstances, § 1226 departs from its discretionary framework to mandate detention. *See* 8 U.S.C. § 1226(c). The government "shall take into custody" noncitizens who are inadmissible or deportable because they committed certain criminal offenses, *id.* § 1226(c)(1)(A)–(C); are inadmissible based on terrorist affiliations or other security concerns, *id.* § 1226(c)(1)(D); or are inadmissible on certain bases *and* have been charged, arrested, or convicted for specified crimes, including burglary and shoplifting, *id.* § 1226(c)(E).

**BACKGROUND**

Ms. Pablo Sequen is a 30-year-old woman from Guatemala. On June 16, 2023, she entered the United States from Mexico. One week later, after walking approximately 35 miles into the country, Ms. Pablo Sequen called 911 to turn herself over to DHS. After briefly detaining her overnight, DHS released Ms. Pablo Sequen on her own recognizance. DHS's release order stated that it was releasing her "[i]n accordance with" § 1226. DHS also served Ms. Pablo Sequen with a Notice to Appear (NTA) and placed her in removal proceedings in immigration court pursuant to 8 U.S.C. § 1229a. The NTA specified that Ms. Pablo Sequen was inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as "[a]n alien present in the United States without being admitted or paroled."[1]

---

[1] The government objects to the Court's consideration of the release order, NTA, and other records filed with Ms. Pablo Sequen's reply brief. All of this evidence, however, directly responds to

Following her release, Ms. Pablo Sequen moved to San Francisco, where she has remained for the past two years. She currently lives with her sister and niece, for whom she often provides care and supervision. Since arriving in the United States, Ms. Pablo Sequen has attended all her immigration court hearings and complied with every requirement the government has imposed on her. She has no criminal history. After applying for asylum in May 2024, Ms. Pablo Sequen received work authorization and a Social Security number from the government. She has since been lawfully employed at a bakery in San Francisco's Mission District. Outside of work, Ms. Pablo Sequen has become an active member of her church community and spends her remaining free time with her family, friends, and boyfriend, who is a native-born citizen.

On July 31, 2025, Ms. Pablo Sequen attended a routine hearing at the San Francisco Immigration Court. She was unrepresented. During that hearing, the government moved to dismiss Ms. Pablo Sequen's pending removal proceedings with the intent to pursue expedited removal under § 1225(b)(1). The immigration judge continued the hearing until August 28, 2025 to give her an opportunity to respond to the government's motion.

As Ms. Pablo Sequen left the courtroom, ICE agents arrested her and took her to a holding area elsewhere in the building. The agents detained her pursuant to a DHS warrant issued under § 1226.

The next day, Ms. Pablo Sequen filed a petition for a writ of habeas corpus and a motion for a temporary restraining order. On the same day, the Court issued a temporary restraining order requiring the government to release Ms. Pablo Sequen and enjoining it from re-detaining her without notice and a pre-detention hearing before a neutral decisionmaker. In compliance with the order, the government released Ms. Pablo Sequen from detention that same evening.

The Court's temporary restraining order was originally set to expire at 5:00pm on August

---

arguments raised for the first time in the government's opposition, and so was properly submitted on reply. Nor has the government been denied an opportunity to review and respond to that evidence. The government received notice of this evidence when Ms. Pablo Sequen filed her reply three days before the hearing, and it had an opportunity to address the evidence at the hearing. The Court therefore exercises its discretion to consider the evidence. *See Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1188–89 (9th Cir. 2024); *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1041 (9th Cir. 2003).

5

1  11, 2025. The parties, however, have stipulated to keep the order in place until the Court issues

2  this decision on Ms. Pablo Sequen's request for a preliminary injunction. On August 28, 2025, the

3  Court heard argument on that request.

**LEGAL STANDARD**

To obtain a preliminary injunction, Ms. Pablo Sequen must establish that (1) she "is likely to succeed on the merits," (2) she "is likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [her] favor," and (4) "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).[2] "If a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). "Where, as here, the party opposing injunctive relief is a government entity, the third and fourth factors—the balance of equities and the public interest—merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

---

[2] "This standard applies to prohibitory injunctions, which aim to preserve the status quo by preventing a party from taking action." *Youth 71Five Ministries v. Williams*, No. 24-101, 2025 WL 2385151, at *5 (Aug. 18, 2025). The government suggests that the Court should instead apply the more stringent standard for mandatory injunctions, which "alter[] the status quo by requiring a party to take action[.]" *Id.* (citation modified). For preliminary-injunction purposes, the Court determines the status quo based on the parties' relationship "before the action challenged in the complaint occurred." *Id.* Ms. Pablo Sequen's complaint challenges her re-detention without a hearing, before which she enjoyed conditional release on her own recognizance. Her requested injunction would preserve that status quo by barring the government from re-detaining her, so the prohibitory-injunction standard applies.

6

# ANALYSIS

**I.     Ms. Pablo Sequen is likely to succeed on the merits.**

Ms. Pablo Sequen has demonstrated a likelihood of success on the merits of her claim that the Due Process Clause of the Fifth Amendment entitles her to a hearing before she may be re-detained.[3]

The Due Process Clause protects all persons in the United States, including noncitizens, from deprivations "of life, liberty, or property" by the federal government "without due process of law[.]" U.S. Const. amend V; *see also Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates "an implicit promise" that she will be re-detained only if she violates the conditions of her release. *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Conditional release "is valuable and must be seen as within the protection of the [Due Process Clause]." *Id.* at 482. Courts in this district thus consistently hold that if DHS has exercised its discretion to release a noncitizen pending civil removal proceedings, the noncitizen has a protected liberty interest in remaining out of immigration custody. *See Garro Pinchi v. Noem*, No. 5:25-cv-05632, 2025 WL 2084921, at *3 (N.D. Cal. July 24, 2025) (collecting cases). Here, after briefly detaining Ms. Pablo Sequen in June 2023, DHS released her on her own recognizance subject to certain conditions. Ms. Pablo Sequen therefore has a protected liberty interest in remaining out of custody.

The Due Process Clause typically "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis

---

[3] Ms. Pablo Sequen asks the Court to prohibit her detention under any circumstances, contending that the government has no valid interest to justify her detention. Because the relief granted herein obviates any immediate need for the Court to address this substantive due-process issue, the Court will not do so at this time. And while Ms. Pablo Sequen also asks the Court to order that she remain within the Northern District of California in order to preserve this Court's jurisdiction over her petition, it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).

added). The government attempts to circumvent this requirement by insisting that, because DHS initially detained Ms. Pablo Sequen soon after her arrival in the United States, the Due Process Clause affords her no protections beyond those prescribed by statute.

It is well established that a noncitizen "seeking initial entry" who is "on the threshold" has "only those rights … that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 139–40 (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). It is equally well established, however, that noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Mezei*, 345 U.S. at 212; *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[] an entry" and trigger due-process protections if the noncitizen is detained shortly thereafter, *Thuraissigiam*, 591 U.S. at 139–40, if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "h[er] constitutional status changes accordingly," and she "has a right to due process." *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population").

Ms. Pablo Sequen has unquestionably gained a foothold in this country and developed the ties needed to become "a part of our population." *Yamataya*, 189 U.S. at 101. Since her release, she has built a community in San Francisco: living with her sister and niece, actively attending church, cultivating friendships and a romantic relationship, and working at a local bakery with the federal government's express authorization.

Rather than address this current reality, the government focuses on Ms. Pablo Sequen's status in June 2023. It insists that Ms. Pablo Sequen had not effected an entry when ICE first detained her and that her initial detention froze her constitutional status in stone, depriving her of due-process protections unless and until she is admitted. Yet the government cites no authority requiring the Court to accept the legal fiction that a noncitizen released into the country on her own recognizance and physically present in the country for several years nonetheless remains "on

8

the threshold" of entrance into the country throughout that time period. *See Thuraissigiam*, 591 U.S. at 114–15 (involving a noncitizen who was not released); *Plasencia*, 459 U.S. at 23–25 (same); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 539–40 (1950) (same). Nor does that proposition make practical sense. Under the government's proposed rule, noncitizens like Ms. Pablo Sequen who turn themselves over to DHS soon after crossing the border would sacrifice the opportunity to gain constitutional due-process protections, while those who enter the country undetected would not. The Court declines to adopt a rule that would "create a perverse incentive" to evade government authorities. *Thuraissigiam*, 591 U.S. at 140. Whether or not she effected an entry before her first arrest, Ms. Pablo Sequen has done so in the more than two years since her release. She is entitled to due process under the Fifth Amendment.

To determine what procedures are constitutionally sufficient to protect Ms. Pablo Sequen's liberty interest, the Court applies the test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).[4] That test calls for balancing the following three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335. Each of these factors supports Ms. Pablo Sequen's constitutional right to a hearing before a neutral decisionmaker prior to any future detention.

### A. Ms. Pablo Sequen's private interest is substantial.

As explained above, Ms. Pablo Sequen has a substantial private interest in remaining out of custody. The liberty of a noncitizen released pending removal proceedings, "although indeterminate, includes many of the core values of unqualified liberty[.]" *Morrissey*, 408 U.S. at

---

[4] The government argues that neither the Supreme Court nor the Ninth Circuit have held that the *Mathews* test applies to due-process challenges to immigration detention. In *Rodriguez Diaz v. Garland*, however, the Ninth Circuit "assume[d] without deciding" that *Mathews* applies in this context, 53 F.4th 1189, 1206–07 (9th Cir. 2022), and both the Ninth Circuit and other federal courts of appeal regularly apply *Mathews* to due-process claims involving removal proceedings, *see Garro Pinchi*, 2025 WL 2084921, at *3 n.2 (collecting cases).

482. Subject to the conditions of her release, Ms. Pablo Sequen "can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* The termination of that liberty would "inflict[] a 'grievous loss'" both on Ms. Pablo Sequen and her loved ones. *Id.*; *see also Garro Pinchi*, 2025 WL 2084921, at *4. The first *Mathews* factor therefore weighs in her favor.

### B. The risk of an erroneous deprivation and probable value of additional procedural safeguards are high.

To assess the risk of an erroneous deprivation of Ms. Pablo Sequen's liberty interest, and the consequent value of additional procedural safeguards, the Court must first determine which statute applies to her: § 1225(b)(1), § 1225(b)(2), or § 1226.

For more than two years, the government treated Ms. Pablo Sequen as an alien subject to § 1226. That statute "authorizes the [g]overnment to detain certain aliens already in the country pending the outcome of removal proceedings." *Jennings*, 583 U.S. at 289. After her initial arrest in June 2023, DHS conditionally paroled Ms. Pablo Sequen into the United States on an Order of Release on Recognizance expressly issued under § 1226. *See Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the [government] used the phrase 'release on recognizance' as another name for 'conditional parole' under § 1226(a)."). Neither § 1225(b)(1) nor (b)(2) provides for conditional parole. Unsurprisingly, then, when ICE re-arrested Ms. Pablo Sequen in 2025 it did so on the basis of a warrant required by and expressly issued under § 1226. *See* 8 U.S.C. § 1226(a). Neither § 1225(b)(1) nor (b)(2) require such a warrant.

On the basis of these facts, Ms. Pablo Sequen argues that she is subject to § 1226. But despite its consistent invocation of § 1226 until last month, the government now argues that Ms. Pablo Sequen is subject to mandatory detention under both § 1225(b)(1) and (b)(2). Neither provision applies, however. As explained above, § 1225(b)(1) applies only in two circumstances. First, it applies if a noncitizen is initially determined upon arriving in the United States to be inadmissible under 8 U.S.C. § 1182(a)(6)(C) or (a)(7). *See id.* § 1225(b)(1)(A)(i). That is not the case here: Ms. Pablo Sequen's NTA shows that the government initially found her inadmissible under a different provision, 8 U.S.C. § 1182(a)(6)(A)(i). Second, § 1225(b)(1) applies if the

10

noncitizen is later determined to be inadmissible under § 1182(a)(6)(C) or (a)(7); was not continuously present in the United States for the two years prior to that determination; and is in a group designated by the Attorney General. 8 U.S.C. § 1225(b)(1)(A)(iii). That is also not the case here. The government has offered no evidence that an immigration officer has ever determined Ms. Pablo Sequen to be inadmissible under § 1182(a)(6)(C) or (a)(7). And even if an immigration officer were to do so now, it is too late to trigger § 1225(b)(1) because Ms. Pablo Sequen entered the United States more than two years ago and has been continuously present in the country since then. The plain language of § 1225(b)(1) thus does not cover Ms. Pablo Sequen.

Section 1225(b)(2) applies to all other noncitizens "present in the United States who ha[ve] not been admitted." *Id.* § 1225(a)(1), (b)(2)(A); *see also Jennings*, 583 U.S. at 287. On its face, that broad language would seem to encompass noncitizens like Ms. Pablo Sequen who have been arrested on a warrant pursuant to § 1226. But "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Depot U.S.A. v. Jackson*, 587 U.S. 435, 441 (2019) (citation modified). Here, the statutory scheme counsels against such a broad reading of § 1225(b)(2). *Id.* As explained above, where § 1225(b)(2) applies, it mandates detention unless a noncitizen is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Section 1226, by contrast, affords the government significant discretion concerning detention of noncitizens arrested on a warrant, providing that the Attorney General "may" continue to detain noncitizens or "may" release them. 8 U.S.C. § 1226(a)(1)–(2); *see Jennings*, 583 U.S. at 300 (noting that "the word 'may' … implies discretion" (citation modified)). Section 1226(c) creates several exceptions to this discretionary framework for criminals who are inadmissible due to criminal offenses, but it contains no exception for noncitizens who are subject to mandatory detention under § 1225(b)(2). *See* 8 U.S.C. § 1226(c). As another court in the District of Massachusetts recently explained:

> 'That express exception' to Section 1226(a)'s discretionary framework 'implies that there are no *other* circumstances under which' detention is mandated for noncitizens … who are subject to Section 1226(a). Interpreting Section 1225(b)(2) to mandate … detention in these circumstances would contravene Congress's intent that Section 1226(a)'s discretionary detention framework apply to all

11

noncitizens arrested on a warrant except those subject to Section 1226(c)'s carve-out.

*Gomes v. Hyde*, No. 1:25-cv-11571, 2025 WL 1869299, at *6 (D. Mass. July 7, 2025) (citation omitted) (quoting *Jennings*, 583 U.S. at 300).

Such a reading would also violate the "core canon of statutory construction" that courts must "construe a statute 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous[.]'" *In re Saldana*, 122 F.4th 333, 342 (9th Cir. 2024) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009)). Section 1225(b)(2) mandates detention for covered noncitizens who cannot prove to an immigration officer that they are "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Yet § 1226(c) also mandates detention for noncitizens who are "inadmissible" on certain grounds. It is unclear how a noncitizen who is "inadmissible" for the reasons listed in § 1226(c) could ever make the clear showing of admissibility required to avoid detention under § 1225(b)(2). So interpreting § 1225(b)(2) to cover noncitizens arrested on a warrant would render superfluous much of § 1226(c), including a subsection added by Congress in 2025. *See* Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)). The Court declines to adopt a reading of § 1225(b)(2) that would negate another provision of the same statutory scheme enacted just this year. *See Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013); *In re Saldana*, 122 F.4th at 341 ("When Congress substantively revises a statute's text, 'we presume it intends its amendment to have real and substantial effect.'" (quoting *Stone v. INS*, 514 U.S. 386, 397 (1995))). Read against the backdrop of § 1226, "[s]ection 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States." *Gomes*, 2025 WL 1869299, at *7.

The Court therefore concludes that Ms. Pablo Sequen is subject to § 1226 and, if re-detained, would be entitled to a post-arrest bond hearing before an immigration judge. Because such a hearing would only be provided *after* she has been detained and thereby deprived of her liberty, however, there remains a substantial risk that the government will erroneously deprive Ms. Pablo Sequen of her liberty by re-arresting her without first providing an opportunity for her to demonstrate why her detention is unwarranted. "[W]here … the petitioner has not received any

bond or custody redetermination hearing," "the risk of an erroneous deprivation of liberty is high." *Singh v. Andrews*, No. 1:25-CV-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025) (citation modified). That is because "neither the government nor [Ms. Pablo Sequen] has had an opportunity to determine whether there is any valid basis for her detention." *Garro Pinchi*, 2025 WL 2084921, at *5. There are only two such bases for civil immigration detention: to prevent flight or to protect against danger to the community. *See Zadvydas*, 533 U.S. at 690. The government has not asserted, let alone offered any evidence, that Ms. Pablo's detention would serve either purpose. The record before the Court suggests quite the opposite: Ms. Pablo Sequen has attended all her scheduled immigration hearings, has complied with every demand made of her by ICE, and has no criminal record. Further, she is gainfully employed, has strong family ties in San Francisco, and is involved in her church and community, making it unlikely that she will pose a threat or flee. *See Jorge M.F.*, 2021 WL 783561, at *3. Indeed, in order to release her on conditional parole in 2023, the government was previously required to determine that Ms. Pablo Sequen "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(a)(4); *see also* 8 C.F.R. § 1236.1(c)(8). Given the absence of any evidence justifying Ms. Pablo Sequen's detention, there is a significant risk that the deprivation of her liberty in the time between her arrest and a post-arrest bond hearing under § 1226 would be entirely unjustified.

If the government were correct that Ms. Pablo Sequen is subject to detention under § 1225 and not § 1226, that fact would, if anything, merely strengthen her due-process claim. Section 1225 contains no mechanism whatsoever for an alien to challenge her detention pending removal; instead, the alien must be detained until the completion of immigration proceedings. *See Rodriguez v. Robbins*, 715 F.3d 1127, 1136 (9th Cir. 2013) ("The risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decisionmaker is substantial."). The risk that she would be deprived of her liberty without any valid government justification would thus be significantly increased by any detention pursuant to § 1225. Subjecting her to expedited removal would further increase the constitutional risk because she would be denied any opportunity to prove her claim for asylum in a full evidentiary hearing or to pursue judicial review of the denial

of her application. *See Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004) (holding that "the private liberty interests involved in deportation proceedings are among the most substantial" and that a noncitizen's loss of the right to seek review by the BIA and court of appeals increases the risk of error (citation modified)).

In short, there is a significant risk that any curtailment of liberty that Ms. Pablo Sequen would suffer between her re-detention and the post-arrest bond hearing she would be entitled to under § 1226 would not be justified by any valid interest. That risk would only increase if she were subjected to § 1225 proceedings. Providing her with the procedural safeguard of a pre-detention hearing will have significant value in helping ensure that any future detention has a lawful basis. The second *Mathews* factor therefore weighs in Ms. Pablo Sequen's favor.

### C. The government's countervailing interest in re-detaining Ms. Pablo Sequen without a prior hearing is, at most, minimal.

Finally, the government has only a minimal countervailing interest in re-detaining Ms. Pablo Sequen without first providing a hearing. The government may have "a strong interest" in detaining noncitizens during the pendency of removal proceedings as needed to "protect[] the public from dangerous criminal aliens," or to prevent flight and thereby "increase the chance that . . . the aliens will be successfully removed." *Rodriguez Diaz*, 53 F.4th at 1208 (quoting *Demore v. Kim*, 538 U.S. 510, 515 (2003)). Here, however, the government has made no attempt to show that Ms. Pablo Sequen is a flight risk or a danger to the community. Nor can the government assert that providing a hearing would impose any financial or administrative burden. Because custody hearings in immigration cost "are routine and impose a minimal cost, . . . it is likely that the cost to the government of detaining Ms. [Pablo Sequen] pending any bond hearing would significantly exceed the cost of providing her with a pre-detention hearing." *Garro Pinchi*, 2025 WL 2084291, at *6 (quoting *Singh*, 2025 WL 1918679, at *8). Thus, the third *Mathews* factor also favors Ms. Pablo Sequen.

Because each of the *Mathews* factors supports Ms. Pablo Sequen's right to a bond hearing before an immigration judge prior to any re-arrest or detention, she has shown a likelihood of success on the merits of her due-process claim.

**II.     Ms. Pablo will likely experience irreparable harm absent a preliminary injunction**

Ms. Pablo Sequen is also likely to suffer immediate and irreparable harm without preliminary injunctive relief. The government argues that Ms. Pablo Sequen has not demonstrated any likelihood of harm because she has already been released from custody. But ICE did not release her voluntarily—it did so only after this Court issued a temporary restraining order. Given the government's position that Ms. Pablo Sequen's detention is mandated by statute, there is little question that ICE would immediately re-detain her in the absence of an injunction. The government has offered no assurance to the contrary.

The likely unconstitutional deprivation of liberty that Ms. Pablo Sequen faces is an immediate and irreparable harm, even if it lasts only until a post-detention bond hearing. "The loss or threatened infringement upon [constitutional] rights for even minimal periods of time unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th Cir. 2019) (citation modified). "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81 F.4th 1036, 1042 (9th Cir. 2023) (citation modified). "[I]t follows inexorably from [the Court's] conclusion" that Ms. Pablo Sequen "will likely be deprived of [her] physical liberty unconstitutionally in the absence of the injunction . . . that [she] ha[s] also carried [her] burden as to irreparable harm." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

**III.    The balance of the equities and public interest weigh in favor of granting a preliminary injunction.**

The final two *Winter* factors—the balance of the equities and public interest—merge where the government is the opposing party. *Nken v. Holder*, 556 U.S. 418, 435 (2009). These factors weigh heavily in favor of an injunction. "Because public interest concerns are implicated when a constitutional right has been violated, all citizens have a stake in upholding the Constitution, meaning it is always in the public interest to prevent the violation of a party's constitutional rights." *Baird*, 81 F.4th at 1042 (citation modified). Further, "the Ninth Circuit has recognized that 'the costs to the public of immigration detention are staggering.'" *Jorge M. F. v. Wilkinson*, No. 21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified) (quoting

15

*Hernandez*, 872 F.3d at 996). "Given the low risk that [Ms. Pablo Sequen] would cause harm to others or flee, in light of h[er] strong family ties . . . and work commitments, such government expenditure in this case would not greatly serve the interests of the general public." *Id.* (citation modified). And in contrast to the irreparable harm that Ms. Pablo Sequen would suffer absent an injunction, the potential harm to the government is minimal—at most, a short delay in detaining Ms. Pablo Sequen if it ultimately demonstrates to a neutral decisionmaker that her detention is necessary. *See id.* at *3; *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025). Moreover, the government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983); *see also Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013) (holding that the government "cannot suffer harm from an injunction that merely ends an unlawful practice" implicating "constitutional concerns"). Because "any additional administrative costs to the government are far outweighed by the considerable harm to [Ms. Pablo Sequen's] constitutional rights," the Court "ha[s] little difficulty concluding that the balance of hardships tips decidedly in [her] favor." *Hernandez*, 872 F.3d at 996 (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1437 (9th Cir. 1983)).

## CONCLUSION

For the foregoing reasons, the Court grants Ms. Pablo Sequen's request for a preliminary injunction. The government may not re-detain Ms. Pablo Sequen during the pendency of these proceedings without providing her with a pre-detention bond hearing before a neutral immigration judge. At such a bond hearing, the government will bear the burden of demonstrating, by clear and convincing evidence, that Ms. Pablo Sequen is a flight risk or a danger to the community and that no conditions other than re-detention would be sufficient to prevent such harms.

**IT IS SO ORDERED.**

Dated: September 16, 2025

P. Casey Pitts
United States District Judge