1

2

3

4                         UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    CARMEN ARACELY PABLO SEQUEN,              Case No.  25-cv-06487-PCP
     et al.,
8
                Plaintiffs,                    **ORDER GRANTING IN PART**
9                                              **MOTION FOR TEMPORARY**
          v.                                   **RESTRAINING ORDER**
10
     POLLY KAISER, et al.,                     Re: Dkt. No. 34
11
                Defendants.
12

13        Petitioners-plaintiffs Ligia Garcia and Yulisa Alvarado Ambrocio ("petitioners") move the

14   Court *ex parte* for a temporary restraining order that would, among other things, require Ms.

15   Garcia's immediate release from her ongoing detention by agents of Immigration and Customs

16   Enforcement ("ICE") and prohibit ICE from re-arresting either petitioner without ten days' notice

17   and a pre-detention bond hearing.[1] For the reasons set forth below, the Court grants the requested

18   order in part. The Court orders defendants to release Ms. Garcia from her ongoing detention and

19   prohibits defendants from re-arresting or otherwise re-detaining Ms. Garcia without first providing

20   her with a pre-detention bond hearing before an immigration judge at which the government

21   establishes by clear and convincing evidence that her detention is necessary to prevent her flight or

22   to protect the public. Because Ms. Alvarado Ambrocio is not currently being detained, the Court

23

24   ───────────────
     [1] Petitioners ask the Court to order that they remain within the Northern District of California in
25   order to preserve this Court's jurisdiction over their petition. But it is well-established that "when
     the Government moves a habeas petitioner after she properly files a petition naming her immediate
26   custodian, the District Court retains jurisdiction and may direct the writ to any respondent within
     its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*,
27   542 U.S. 426, 441 (2004). Petitioners also request that the Court prohibit their deportation during
     the pendency of the underlying case. In the absence of any evidence that either petitioner faces an
28   imminent risk of deportation, however, that potential injury appears too remote to warrant
     emergency *ex parte* relief.

United States District Court
Northern District of California

1    denies her request for issuance of an immediate temporary restraining order and will instead

2    consider whether to issue preliminary injunctive relief after defendants have had an opportunity to

3    respond to her motion.

4                                    **BACKGROUND**

5            The evidence before the Court establishes that Ms. Garcia is a 54-year-old asylum-seeker

6    from Colombia. She suffers from high blood pressure and is hard of hearing in one ear. After Ms.

7    Garcia entered the United States from Mexico, an agent of the Department of Homeland Security

8    ("DHS") arrested her and transported her to a nearby facility for processing. Shortly thereafter,

9    around March 12, 2024, DHS charged Ms. Garcia with inadmissibility under 8 U.S.C.

10   § 1182(a)(6)(A)(i) and released Ms. Garcia on her own recognizance. DHS records from the time

11   of Ms. Garcia's release state that she "has no criminal history" and "does not appear to be a threat

12   to national security, border security, or public safety." When releasing Ms. Garcia, DHS served

13   her with a notice to appear and placed her in full removal proceedings in immigration court. Ms.

14   Garcia has resided in the United States for the 18 months since that time.

15           On September 18, 2025, Ms. Garcia appeared at the immigration court in San Francisco for

16   a master hearing. She was unrepresented. During the hearing, the government moved to dismiss

17   Ms. Garcia's pending removal proceedings with the intent to pursue expedited removal under

18   § 1225(b)(1). The immigration judge continued the hearing to allow Ms. Garcia to seek legal

19   counsel and respond to the motion.

20           As Ms. Garcia exited the courtroom, ICE agents arrested her and took her to a holding area

21   elsewhere in the building. ICE records from the time of Ms. Garcia's second arrest again noted

22   that she has no criminal history and stated that she "will remain in ICE custody pending [a]

23   respon[se] to [the government's] motion for dismissal." Ms. Garcia is currently being held at the

24   San Francisco Immigration Court.

25           Ms. Alvarado Ambrocio is a 24-year-old asylum seeker from Guatemala. After she entered

26   the United States in April 2024, Ms. Alvarado Ambrocio—who was pregnant at the time—was

27   arrested by DHS agents and placed in a detention center for two days. DHS then released Ms.

28   Alvarado Ambrocio on her own recognizance pursuant to its authority under 8 U.S.C. § 1226 and

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  served her with a notice to appear in immigration court. Since her release, Ms. Alvarado Ambrocio

2  has lived in San Francisco with her now nine-month-old baby, her partner, and other family

3  members.

4         On September 11, 2025, Ms. Alvardo Ambrocio appeared at the San Francisco

5  Immigration Court with her breastfeeding infant for a routine hearing. During the hearing, the

6  government moved to dismiss Ms. Alvarado Ambrocio's asylum case. The immigration judge

7  continued the hearing for ten days to allow Ms. Alvarado Ambrocio to file a response. Before Ms.

8  Alvarado Ambrocio exited the courtroom, two attorneys warned her that ICE agents were waiting

9  outside to arrest her. With Ms. Alvarado Ambrocio's consent, the attorneys negotiated with ICE

10  on her behalf, securing an agreement that ICE would not detain her that day. Instead, ICE imposed

11  monitoring requirements on Ms. Alvardo Ambrocio, requiring that she present in person every six

12  months. While the ICE agents permitted Ms. Alvarado Ambrocio to leave the immigration court,

13  they did not state whether they would arrest her after her next immigration-court hearing on

14  October 16, 2025. Ms. Alvarado Ambrocio fears that she will be detained when she next appears

15  in immigration court.

16         Ms. Garcia and Ms. Alvarado Ambrocio, with representation of counsel, filed a petition for

17  a writ of habeas corpus and *ex parte* motion for a temporary restraining order on September 19,

18  2025. Among other claims, they contend that Ms. Garcia's arrest and detention does, and Ms.

19  Alvarado Ambrocio's arrest and detention would, violate the Due Process Clause of the Fifth

20  Amendment, both substantively (because defendants allegedly have no valid interest in detaining

21  petitioners) and procedurally (because defendants have not or would not provide pre-detention

22  bond hearings). The defendants are Sergio Albarran, Field Office Director for the San Francisco

23  ICE field office; Marcos Charles, Acting Executive Associate Director of ICE's Enforcement and

24  Removal Operations ("ERO") Division; Thomas Giles, Assistant Director for ICE ERO field

25  operations; Monica Burke, Acting Assistant Director of ICE's Custody Management Division;

26  Todd Lyons, Acting Director of ICE; Kristi Noem, Secretary of DHS; ICE; DHS; Sirce Owen,

27  Acting Director of the Executive Office for Immigration Review ("EOIR"); Pamela Bondi,

28  Attorney General of the United States; EOIR; the Department of Justice; and the United States of

1    America.

2                                    **LEGAL STANDARDS**

3        The standard for issuing a temporary restraining order is largely identical to the standard

4    for issuing a preliminary injunction. *See Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir.

5    2017). Petitioners seeking such relief must establish that (1) they are "likely to succeed on the

6    merits"; (2) they are "likely to suffer irreparable harm in the absence of preliminary relief"; (3)

7    "the balance of equities tips in [their] favor"; and (4) "an injunction is in the public interest."

8    *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). "[I]f a plaintiff can only show that

9    there are 'serious questions going to the merits'—a lesser showing than likelihood of success on

10   the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply

11   in the plaintiff's favor and the other two *Winter* factors are satisfied.'" *All. for the Wild Rockies v.*

12   *Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709

13   F.3d 1281, 1291 (9th Cir. 2013)). The final two factors "merge when the Government is the

14   opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

15       Although the substantive standards for both motions are similar, the timeframe for a

16   temporary restraining order is different. While a preliminary injunction remains in effect pending

17   final resolution of the litigation, "a TRO 'should be restricted to … preserving the status quo and

18   preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing

19   and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting

20   *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70*, 415

21   U.S. 423, 439 (1974)).

22       Federal Rule of Civil Procedure 65(b)(1) allows a temporary restraining order to be issued

23   without notice to the opposing party—i.e., *ex parte*—only if "specific facts in an affidavit or a

24   verified complaint clearly show that immediate and irreparable injury, loss, or damage will result

25   to the movant before the adverse party can be heard in opposition" and "the movant's attorney

26   certifies in writing any efforts made to give notice and the reasons why it should not be required."

27

28

United States District Court
Northern District of California

United States District Court
Northern District of California

1

**ANALYSIS**

2          As an initial matter, Ms. Garcia has satisfied the requirements for issuance of an *ex parte*

3    order. The affidavit of petitioners' counsel demonstrates that Ms. Garcia will suffer immediate and

4    irreparable injury, loss, or damage by virtue of her continued detention before respondents can be

5    heard in opposition, and that counsel attempted to contact Civil Division chief Pamela Johann of

6    the United States Attorney's Office for the Northern District of California on September 19, 2025.

7          Ms. Alvarado Ambrocio, however, has not satisfied the requirements for issuance of an *ex*

8    *parte* order, as the record does not demonstrate that she will suffer immediate injury, loss, or

9    damage in the time before defendants could respond to her motion. Ms. Alvarado Ambrocio is not

10   presently detained, and her affidavit suggests that the date on which she next faces a risk of

11   detention is October 16, 2025, when she is next scheduled to appear in immigration court. Indeed,

12   Ms. Alvarado Ambrocio has remained out of custody throughout the week between her last

13   appearance in immigration court and the filing of petitioners' motion for a temporary restraining

14   order, suggesting that no arrest is imminent. For the same reason, Ms. Alvardo Ambrocio has not

15   established a likelihood of irreparable harm in the absence of *ex parte* injunctive relief—the

16   second *Winter* factor. The Court therefore denies the requested temporary restraining order as to

17   Ms. Alvarado Ambrocio and will instead consider her request for interim injunctive relief after

18   defendants have had an opportunity to respond.

19         With respect to the showing required to justify Ms. Garcia's requested relief, she has

20   demonstrated a likelihood of success on the merits of her claim that her ongoing detention violates

21   her procedural due process rights under the Due Process Clause of the Fifth Amendment.[2] The

22   Court recently considered that issue under comparable circumstances in *Pablo Sequen v. Kaiser*,

23   No. 25-CV-06487-PCP, __ F. Supp. 3d __, 2025 WL 2650637 (N.D. Cal. Sept. 16, 2025). For the

24   reasons explained in far greater detail therein, a noncitizen like Ms. Garcia who was conditionally

25   released into the United States has a significant liberty interest in remaining out of immigration

26

27   _____
     [2] Ms. Garcia asks the Court to prohibit her detention under any circumstances, contending that the
     government has no valid interest to justify her detention. Because the relief granted herein

28   obviates any immediate need for the Court to address this substantive due-process issue, the Court
     will not do so at this time.

5

United States District Court
Northern District of California

1    custody. *Id.* at \*5. Because Ms. Garcia has resided in the United States for 18 months—certainly

2    long enough to "begin[] to develop … ties" and become "a part of our population"—the Fifth

3    Amendment's due process protections apply to that liberty interest. *Id.* at \*5 (first quoting *Landon*

4    *v. Plasencia*, 459 U.S. 21, 32–33 (1982); and then quoting *Yamataya v. Fisher*, 189 U.S. 86, 100–

5    01 (1903)). The statutory procedures potentially available to Ms. Garcia do not satisfy that

6    constitutional mandate. Even assuming that she will receive a post-arrest bond hearing before an

7    immigration judge, there remains a substantial risk that the government is erroneously depriving

8    Ms. Garcia of her liberty for so long as she remains detained given that the available record

9    suggests that she is neither a flight risk nor a danger to the public *See id.* at \*8; *Zadvydas v. Davis*,

10   533 U.S. 678, 690 (2001). Given the apparent lack of a valid basis for Ms. Garcia's detention and

11   the limited cost of providing a custody hearing in immigration court, the government has at most a

12   minimal countervailing interest in her continued detention. *See Pablo Sequen*, __ F. Supp. 3d. __,

13   2025 WL 2650637 at \*8; *Garro Pinchi v. Noem*, No. 5:25-cv-05632, __ F.Supp.3d __, 2025 WL

14   2084921, at \*6 (N.D. Cal. July 24, 2025). Taken together, the strength of Ms. Garcia's liberty

15   interest, the high likelihood of erroneous deprivation, and the government's minimal

16   countervailing interest demonstrate that Ms. Garcia is likely to succeed on the merits of her

17   procedural due-process claim. *See Pablo Sequen*, __ F. Supp. 3d. __, 2025 WL 2650637 at \*9;

18   *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

19         Ms. Garcia has also demonstrated a likelihood of irreparable injury in the absence of

20   temporary relief due to her ongoing and likely unconstitutional deprivation of liberty. "The loss or

21   threatened infringement upon [constitutional] rights for even minimal periods of time

22   unquestionably constitutes irreparable injury." *Cuviello v. City of Vallejo*, 944 F.3d 816, 832 (9th

23   Cir. 2019) (citation modified). "When an alleged deprivation of a constitutional right is involved,

24   most courts hold that no further showing of irreparable injury is necessary." *Baird v. Bonta*, 81

25   F.4th 1036, 1042 (9th Cir. 2023) (citation modified). "[I]t follows inexorably from [the Court's]

26   conclusion" that Ms. Garcia "will likely be deprived of [her] physical liberty unconstitutionally in

27   the absence of the injunction ... that [she] ha[s] also carried [her] burden as to irreparable

28   harm." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017).

United States District Court
Northern District of California

1   The final two *Winter* factors, the balance of the equities and public interest, merge because

2   the government is the opposing party. These factors also weight heavily in favor of granting a

3   temporary restraining order. "Because public interest concerns are implicated when a

4   constitutional right has been violated, all citizens have a stake in upholding the Constitution,

5   meaning it is always in the public interest to prevent the violation of a party's constitutional

6   rights." *Baird*, 81 F.4th at 1042 (citation modified). Further, "the Ninth Circuit has recognized that

7   'the costs to the public of immigration detention are staggering.'" *Jorge M. F. v. Wilkinson*, No.

8   21-CV-01434, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (citation modified) (quoting

9   *Hernandez*, 872 F.3d at 996). And where Ms. Garcia is suffering irreparable harm while in

10   detention, the potential harm to the government—at worst, a short delay in detaining Ms. Garcia

11   until it makes the requisite showing of necessity before a neutral decisionmaker—is minimal.

12   *See id.* at *3; *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14,

13   2025). In any case, enjoining the government from constitutional violations does not impose harm

14   "in any legally cognizable sense." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1983).

15   Finally, Ms. Garcia's immediate release is required to return her to the status quo. The

16   "status quo" refers to the state of the parties' relationship "before the action challenged in the

17   complaint occurred." *Youth 71Five Ministries v. Williams*, No. 24-101, __ F.4th __, 2025 WL

18   2385151, at *5 (Aug. 18, 2025). Here, that is the moment prior to Ms. Garcia's likely illegal

19   detention. *See Pablo Sequen*, __ F. Supp. 3d __, 2025 WL 2650637, at *4 n.2; *Kuzmenko v.*

20   *Phillips*, No. 25-CV-00663, 2025 WL 779743, at *2 (E.D. Cal. Mar. 10, 2025) (granting a

21   temporary restraining order requiring immediate release of the petitioner back to home

22   confinement from custody, as a restoration of the status quo).

23   Because Ms. Garcia satisfies all of the requirements for temporary injunctive relief and

24   such relief is necessary to restore the status quo, her motion for a temporary restraining order is

25   granted. *See Pablo Sequen v. Kaiser*, No. 25-CV-06487-PCP, 2025 WL 2203419, at *3 (N.D. Cal.

26   Aug. 1, 2025) (collecting similar cases). And because "there is no realistic likelihood of harm to

27   the [respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th

28   Cir. 2003), no security is needed to ensure that respondents will be reimbursed for "costs and

7

1    damages sustained by … hav[ing] been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

2    The Court exercises its discretion under Rule 65(c) to dispense with the filing of bond. *Jorgensen*,

3    320 F.3d at 919.

**CONCLUSION**

5         For the foregoing reasons, it is hereby **ORDERED** that petitioners' motion for a temporary

6    restraining order as to Ms. Garcia is **GRANTED** to preserve the status quo pending further

7    briefing and a hearing on this matter. Defendants are **ORDERED** to immediately release Ms.

8    Garcia from custody and are **ENJOINED AND RESTRAINED** from re-detaining Ms. Garcia

9    without providing her with a pre-deprivation hearing before a neutral decisionmaker. Should

10   defendants choose to conduct such a hearing, defendants are **ORDERED** to provide Ms. Garcia

11   with reasonable advance notice of the time and place of the hearing.

12        Petitioners' motion for a temporary restraining order as to Ms. Alvarado Ambrocio is

13   **DENIED**. Her request will instead be construed as a motion for preliminary injunctive relief and

14   will be considered after defendants have had an opportunity to respond.

15        This Order shall remain in effect until October 2, 2025 at 5:00pm. The Amended

16   Complaint and Petition for Writ of Habeas Corpus (Dkt. No. 32), Motion for Temporary

17   Restraining Order (Dkt. No. 34), and this Order **SHALL** be served on defendants such that they

18   receive actual notice as soon as possible. Petitioners shall file proof of service or a status report by

19   no later than September 22, 2025. Defendants shall provide a status report confirming the release

20   of Ms. Garcia by no later than September 22, 2025 at 5:00pm.

21        Defendants are **ORDERED TO SHOW CAUSE** why a preliminary injunction should not

22   issue in favor of both Ms. Garcia and Ms. Alvarado Ambrocio on September 30, 2025 at 1:00pm.

23   The hearing will be held in-person in Courtroom 8 of this Court's San José courthouse, located at

24   280 S. 1st Street, San José, CA 95113. Defendants shall file a response to petitioners' motion by

25   no later than September 24, 2025. Any reply shall be filed by September 28, 2025.

26        **IT IS SO ORDERED.**

27

28

United States District Court
Northern District of California

1

Dated: September 19, 2025

2

3

P. Casey Pitts
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

9