CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division

DOUGLAS JOHNS (CABN 314798)
Assistant United States Attorney

      60 South Market Street, Suite 1200
      San Jose, California 95113
      Telephone: (415) 846-8947
      FAX: (408) 535-5081
      Douglas.Johns@usdoj.gov

Attorneys for Defendants-Respondents

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARMEN ARACELY PABLO SEQUEN, YULISA ALVARADO AMBROCIO, MARTIN HERNANDEZ TORRES, and LIGIA GARCIA,<br><br>    Plaintiffs,<br><br>  v.<br><br>SERGIO ALBARRAN, MARCOS CHARLES, THOMAS GILES, MONICA BURKE, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY, TODD M. LYONS, SIRCE E. OWEN, PAMELA BONDI, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION AND REVIEW, UNITED STATES OF AMERICA,<br><br>    Defendants. | CASE NO. 25-cv-06487-PCP<br><br>**DEFENDANTS' NOTICE OF FILING OF CERTIFIED ADMINISTRATIVE RECORD**<br><br>Honorable P. Casey Pitts<br>United States District Judge |

1        Defendants herewith file a copy of the Administrative Record of the memorandum issued by

2    U.S. Immigration and Customs Enforcement dated May 27, 2025, and titled, "Civil Immigration

3    Enforcement Actions In or Near Courthouses," which is at issue in this litigation. The Certification and

4    Index of that Administrative Record are also attached to this Notice. Defendants and Plaintiffs stipulate

5    that Defendants can use the certification of administrative record filed in the case of *African*

6    *Communities Together, et al. v. Todd Lyons, et al.*, No. 25-cv-06366-PKC (S.D.N.Y Nov. 4, 2025).

7    DATED: December 19, 2025                Respectfully submitted,

8

9                                        CRAIG H. MISSAKIAN
                                    United States Attorney

10                                       */s/ Douglas Johns*

11                                       DOUGLAS JOHNS
                                    Assistant United States Attorney

12                                       *Attorneys for Respondents-Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   DEFENDANTS' NOTICE OF FILING OF CERTIFIED ADMINISTRATIVE RECORD
    25-CV-06487-PCP

AFRICAN COMMUNITIES TOGETHER, *et al.*,

                        *Plaintiffs*,

        v.

TODD LYONS, *et al.*,

                        *Defendants.*

25 Civ. 6366 (PKC)

## CERTIFICATION OF ADMINISTRATIVE RECORD

I, Brian Kennedy, pursuant to 28 U.S.C. §1746, declare under penalty of perjury as follows:

1.      I am the Assistant Director for the Office of Regulatory Affairs and Policy ("ORAP") for U.S. Immigration and Customs Enforcement ("ICE" or the "Agency"). I have held this position since May 27, 2025. In this capacity, I lead the ORAP in establishing regulations and polices impacting ICE through coordination with departmental and interagency partners; collaborating with internal and external stakeholders to identify, develop, and effectively communicate ICE's strategic and organization policies; maintaining responsibility for developing ICE regulations and managing the Agency's regulatory process; and overseeing ICE's strategic planning functions. Prior to this current position, I was the Policy Director for the U.S. House Committee on Homeland Security from February 2023 to May 2025. I have also held a position as Senior Advisor to the Director of ICE for the Student Exchange Visitor

Program from August 2020 until January 2021. In total, I have over 13 years of regulatory and policy experience with the House of Representatives and the Senate and ICE.

    2.       The facts attested to herein are based upon my personal knowledge or upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

    3.       The documents listed in the accompanying Administrative Record Index and contained in the files annexed hereto, constitute to the best of my knowledge and belief, a true and complete copy of all non-privileged documents and materials considered by ICE in issuing the May 27, 2025 Memorandum, titled *Civil Immigration Enforcement Actions in or Near Courthouses.*

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 4th day of November, 2025 in Washington, D.C.

BRIAN P
KENNEDY

Digitally signed by BRIAN P
KENNEDY
Date: 2025.11.04 11:33:52 -05'00'

Brian Kennedy
Assistant Director
Office of Regulatory Affairs and Policy
U.S. Immigration and Customs Enforcement

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AFRICAN COMMUNITIES TOGETHER, and THE DOOR,

        *Plaintiffs*,

   v.

TODD LYONS, *et al.*,

        *Defendants*.

Civil Action No. 25 Civ. 6366 (PKC)

**UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT ADMINISTRATIVE RECORD FOR MAY 27, 2025 MEMORANDUM: CIVIL IMMIGRATION ENFORCEMENT ACTIONS IN OR NEAR COURTHOUSES**

## INDEX TO CERTIFIED ADMINISTRATIVE RECORD

| DOCUMENT | PAGE |
|---|---|
| 1. Memorandum from Acting Director Todd Lyons, *Civil Immigration Enforcement Actions in or Near Courthouses* (May 27, 2025) | **1-3** |
| 2. Memorandum from Acting Associate Commissioner James Puleo, *Enforcement Activities at Schools, Places of Worship, or at funerals or other religious ceremonies* (May 17, 1993) | **4-6** |
| 3. Memorandum from Director John Torres and Director Marcy M. Forman, *Interim Guidance Relating to Officer Procedure Following Enactment of VAWA 2005* (Jan. 22, 2007) | **7-11** |
| 4. Memorandum from Director Marcy M. Forman*, Enforcement Actions at Schools* (Dec. 26, 2007) | **12** |
| 5. Memorandum from Assistant Secretary Julie L. Myers, *Field Guidance on Enforcement Actions or Investigative Activities At or Near Sensitive Community Locations* (July 3, 2008) | **13-14** |
| 6. Memorandum from Director John Morton, *Enforcement Actions at or Focused on Sensitive Locations* (Oct. 24, 2011) | **15-17** |

| | |
|---|---|
| 7. Memorandum from CBP Deputy Commissioner, David Aguilar, *U.S. Customs and Border Protection Enforcement Actions at or Near Certain Community Locations* (Jan. 18, 2013) | **18-19** |
| 8. Email from Assistant Director of Field Operations, Jon Gurule, *Reminder: Enforcement Actions at or Near Courthouses* (Oct. 21, 2015) | **20** |
| 9. Civil Immigration Enforcement Actions Inside Courthouses, Dir. No. 11072.1 (Jan. 10, 2018) | **21-24** |
| 10. Memorandum from ICE Acting Director Tae Johnson and CBP Acting Commissioner Troy Miller, *Civil Immigration Enforcement Actions in or near Courthouses* (Apr. 27, 2021) | **25-27** |
| 11. Email from Acting Director Tae Johnson, *Joint Memo Providing Interim Guidance on Civil Immigration Enforcement In or Near Courthouses* (April 27, 2021). | **28** |
| 12. Memorandum from DHS Secretary, Alejandro Mayorkas, *Guidelines for Enforcement Actions in or Near Protected Areas* (Oct. 27, 2021) | **29-33** |
| 13. Email from Acting Director Tae Johnson, *Department Guidance for Enforcement Action at Protected Areas* (October 27, 2021) | **34** |
| 14. *Implementation of Section 1367 Protections for Noncitizen Victims of Crime*, Dir. No. 10036.2 (Mar.16, 2022). | **35-49** |
| 15. Memorandum from DHS Acting Secretary Benjamine C. Huffman, *Enforcement Actions in or Near Protected Areas* (Jan. 20, 2025). | **50** |
| 16. Memorandum from Acting Director Caleb Vitello, *Interim Guidance: Civil Immigration Enforcement Actions in or near Courthouses* (Jan. 21, 2025) | **51-53** |
| 17. Email from Acting Director Caleb Vitello, *Issuance of Interim Policy Guidance for Civil Immigration Enforcement Actions in or near Courthouses* (Jan. 21, 2025). | **54-55** |

Policy Number: 11072.4

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, DC 20536


U.S. Immigration and Customs Enforcement

May 27, 2025

MEMORANDUM FOR:     All ICE Employees

FROM:     Todd M. Lyons
Acting Director

SUBJECT:     Civil Immigration Enforcement Actions In or Near Courthouses

---

Purpose

This memorandum provides guidance governing U.S. Immigration and Customs Enforcement (ICE) civil immigration enforcement actions in or near courthouses. The January 21, 2025, *Interim Guidance: Civil Immigration Enforcement Actions in or near Courthouses* memorandum from Acting ICE Director Caleb Vitello is superseded by this guidance.

This guidance is effective immediately and remains in effect until superseded.

Background

Federal, state, and local law enforcement agencies routinely engage in enforcement activities in or near courthouses because many individuals appear in courthouses for unrelated criminal or civil violations. Individuals entering courthouses are typically screened by law enforcement personnel to search for weapons and other contraband. Accordingly, when ICE engages in civil immigration enforcement actions in or near courthouses it can reduce safety risks to the public, targeted alien(s), and ICE officers and agents. Finally, enforcement activities in or near courthouses are often required when jurisdictions refuse to cooperate with ICE, including when such jurisdictions refuse to honor immigration detainers and transfer aliens directly to ICE custody.

Implementation

For purposes of this guidance, a civil immigration enforcement action is any action taken by an ICE officer or agent to apprehend, arrest, interview, or search an alien in connection with

enforcement of administrative immigration violations. This policy does not apply to criminal immigration enforcement actions inside courthouses.

*Aliens Subject to Enforcement Actions*

Generally, ICE's civil immigration enforcement actions in or near courthouses include actions against targeted aliens, including but not limited to:

- National security or public safety threats;
- Specific aliens with criminal convictions;
- Gang members;
- Aliens who have been ordered removed from the United States but have failed to depart; and/or
- Aliens who have re-entered the country illegally after being removed.

Other aliens encountered during a civil immigration enforcement action in or near a courthouse, such as family members or friends accompanying the target alien to court appearances or serving as a witness in a proceeding, may be subject to civil immigration enforcement action on a case-by-case basis considering the totality of the circumstances.[1]

*Procedures*

ICE officers or agents may conduct civil immigration enforcement actions in or near courthouses when they have credible information that leads them to believe the targeted alien(s) is or will be present at a specific location.

Additionally, civil immigration enforcement actions in or near courthouses should, to the extent practicable, continue to take place in non-public areas of the courthouse, be conducted in collaboration with court security staff, and utilize the court building's non-public entrances and exits. When practicable, ICE officers and agents will conduct civil immigration enforcement actions against targeted aliens discreetly to minimize their impact on court proceedings.

*Non-Criminal or Specialized Courts*

ICE officers and agents should generally avoid enforcement actions in or near courthouses, or areas within courthouses that are wholly dedicated to non-criminal proceedings (e.g., family court, small claims court). When an enforcement action in the above situations is operationally necessary, the approval of the respective Field Office Director (FOD), Special Agent in Charge (SAC), or his or her designee is required prior to conducting the enforcement action.

---

[1] ICE officers and agents will make enforcement determinations on a case-by-case basis in accordance with federal law and consistent with U.S. Department of Homeland Security and ICE policy.

AR-2

Civil Immigration Enforcement Actions In or Near Courthouses
Page 3 of 3

*Responsibilities*

Each FOD or SAC, in consultation with OPLA, must ensure that all employees under their supervision comply with this policy by providing guidance to officers and agents on the approval process and procedures for civil immigration enforcement actions in or near courthouses within their area of responsibility. This includes ensuring all civil immigration enforcement actions in or near courthouses are properly documented[2] and recorded in the applicable ICE system of record, which can be searched and validated.

As with any planned enforcement action, ICE officers and agents should exercise sound judgment when enforcing federal law and make substantial efforts to avoid unnecessarily alarming the public or disrupting court operations. ICE officers and agents will make every effort to limit their time at courthouses while conducting civil immigration enforcement actions.

No Private Right

This memorandum provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

---

[2] ICE officers and agents will document the physical address of planned civil immigration enforcement actions in accordance with standard procedures for completing operational plans, noting that the target address is a courthouse.

SUPERSEDED BY POLICY #10029.2 "Enforcement Actions at or Focused on Sensitive Locations" (OCTOBER 24, 2011)



# Memorandum

HQ 807-P

| Subject | Date |
|---|---|
| Enforcement Activities at Schools, Places of Worship, or at funerals or other religious ceremonies. | MAY 17 1993 |

| To | From |
|---|---|
| District Directors<br>Chief Patrol Agents | Office of Operations |

## POLICY:

It is a policy of the Service to attempt to avoid apprehension of persons and to tightly control investigative operations on the premises of schools, places of worship, funerals and other religious ceremonies.

## PROCEDURES:

Enforcement operations which are likely to involve apprehensions on the premises of schools, places of worship, or at funerals or other religious ceremonies require advance written approval by the District Director or Chief Patrol Agent. Such actions are reportable under Operations Instructions (OI) 103.1(g) pertaining to reporting of incidents and unusual matters. Approval of an operation by a field office manager does not substitute for required headquarters authorizations for actions requiring such approval, e.g., 511 cases.

The Assistant District Directors, OIC, or Deputy Chief Patrol Agent, may approve inspections of records; preliminary investigative activities related to a specific individual or individuals which will not entail contact with the person under investigation; and similar activities at such locations when apprehensions will not be made.

For purposes of this policy, the term "schools" includes pre-schools; primary, secondary, and post-secondary schools (including colleges and universities); and other institutions of learning such as vocational or trade schools. "Places of worship" includes such institutions as churches, temples, and synagogues. "Other religious ceremonies" include grave site ceremonies and rosaries. The requirement for advance approval of operations in such locations should not be construed as tolerance for violations of the law by or on the premises of such institutions.

In determining the appropriateness of a proposed action, District Directors and Chief Patrol Agents shall consider the following:

SUPERSEDED BY POLICY #10029.2 "Enforcement Actions at or Focused on Sensitive Locations" (OCTOBER 24, 2011)

AR-4

The availability of alternative measures which would achieve the enforcement objective (e.g., making the arrest off the premises);

The importance of the enforcement objective in the context of Service priorities;

Measures which can be taken to minimize the impact on operation of the school or place of worship;

Whether the action has been requested or approved by managers of the institution involved.

Exceptions to this policy, e.g., local agreements to cover a specific situation or institution, must be approved in writing by the Associate Commissioner for Enforcement. Headquarters may also direct exceptions in such unusual situations as a declared national emergency by Presidential Executive Order or National Security Council directive, e.g., a mass alien influx or alien registration action.

When situations arise that do not permit written authorization prior to entry onto the premises of schools or places of worship, officers are expected to exercise good judgement concerning the appropriate action to take. Some situations will require the officer to proceed; in other instances entry onto the premises will not be appropriate. If exigent circumstances require a deviation from this policy, the matter must be reported immediately by the District Director or Chief Patrol Agent to the appropriate Assistant Commissioner. All field office managers must ensure that enforcement officers are well versed in and able to apply the criteria for exigent circumstances stated in the Service manual on *The Law of Arrest, Search, and Seizure for Immigration Officers* (M-69). Reports should explain the exigency requiring the officer's action, any steps which were taken to secure supervisory authorization in the absence of written approval (e.g., oral approval from supervisor), the seriousness of the suspected violation, whether the facility was in operation (e.g., were classes in session), and other pertinent facts.

Where operations covered by this policy are planned in advance, the general practice for Border Patrol officers requires that the operation will be conducted in plain clothes. However, under exigent circumstances, one of the factors that officers should consider is the likelihood that they will be identified as law enforcement officers; in such instances, the absence of a uniform may mitigate against continuing a pursuit.

SUPERSEDED BY POLICY #10029.2 "Enforcement Actions at or Focused on Sensitive Locations" (OCTOBER 24, 2011)

SUPERSEDED BY POLICY #10029.2 "Enforcement Actions at or Focused on Sensitive Locations" (OCTOBER 24, 2011)

Page 3
District Directors
Chief Patrol Agents

This directive does not affect the scope of authority of Service officers under the Immigration and Nationality Act, but is directed to the operational implementation of such authority. The requirement for approval in advance of such operations and actions on such premises should not be construed as an indication of tolerance for any violations of the law by anyone at or in charge of a school or a place of worship. This directive is an internal statement of procedure which does not confer any benefits upon nor impose any requirements upon anyone other than Service officers as a part of a uniform exercise of delegated authority.

James A. Puleo /for
Acting Associate Commissioner

Enclosure

SUPERSEDED BY POLICY #10029.2 "Enforcement Actions at or Focused on Sensitive Locations" (OCTOBER 24, 2011)



**U.S. Immigration and Customs Enforcement**

JAN 2 2 2007

MEMORANDUM FOR:    Field Office Directors and Special Agents in Charge

FROM:    Director John P. Torres
Office of Detention and Removal Operations

Director Marcy M. Forman
Office of Investigations

SUBJECT:    <u>Interim Guidance Relating to Officer Procedure Following
Enactment of VAWA 2005.</u>

Purpose

The Violence Against Women and Department of Justice Reauthorization Act of 2005
(VAWA 2005), which became effective on January 5, 2006, expanded various protections for
aliens seeking immigration benefits as crime victims and amended various sections of the
Immigration and Nationality Act (INA). As a result, operational units of U.S. Immigration and
Customs Enforcement (ICE) will be required to follow new procedures when taking certain
actions in cases involving aliens eligible to apply for VAWA benefits or T or U nonimmigrant
status. This interim guidance explains how VAWA 2005 affects the current operating
procedures of the Office of Investigations (OI) and the Office of Detention and Removal
Operations (DRO).

Background

Congress passed the Violence Against Women Act (VAWA) of 1994 as a response to growing
concerns over gender-related violence. VAWA provides that abused spouses, children, and
parents of U.S. citizens or lawful permanent residents can "self-petition" to obtain lawful
permanent residence. These provisions allow certain battered aliens to file for an immigrant
visa in order to seek safety and independence from the abuser without the abuser's permission.

Congress subsequently passed the Victims of Trafficking and Violence Protection Act of 2000,
which reauthorized the VAWA provisions of 1994 and created two new nonimmigrant
categories: T status and U status. T nonimmigrant status is available to victims of "severe
forms of trafficking" who are physically present in the United States or a port of entry as a
result of that trafficking. U nonimmigrant status is available to aliens who have "suffered
substantial physical or mental abuse" as a result of certain criminal acts. Victims eligible for
VAWA benefits or T or U nonimmigrant status may seek benefits through separate
applications submitted to the Vermont Service Center of U.S. Citizenship and Immigration

SUBJECT: VAWA GUIDANCE
Page 2

Services (USCIS). This memorandum provides interim guidance concerning the expanded confidentiality protections of the VAWA 2005 and the legislation's requirement that ICE issue a certificate of compliance in certain circumstances.

Discussion

A. Definition of "VAWA Self-Petitioner"

VAWA 2005 added INA § 101(a)(51), which defines "VAWA self-petitioner" as an alien, or a child of the alien, who qualifies for relief under several provisions of the Act and generally requires that the victim be abused, battered, or subjected to human trafficking or severe mental or physical abuse. A self-petition allows the victim the opportunity to adjust status without the abuser's assistance. ICE employees should become familiar with the categories of VAWA self-petitioners and the many ways in which battered victims may adjust their status. For purposes of this interim guidance, if an officer believes there is any credible evidence that the alien may be eligible for VAWA benefits or T or U nonimmigrant status, the requirements of 8 U.S.C. § 1367, described below, must be followed along with standard operating procedure.

B. Use of Information from Prohibited Sources and Confidentiality

Section 1367(a) of Title 8 of the United States Code, as amended by VAWA 2005, prevents ICE employees from making an adverse determination of admissibility or deportability of an alien using information furnished *solely* by certain people associated with the battery or extreme cruelty, such as the abuser or a member of the abuser's family living in the same household as the victim. For purposes of this interim guidance, an adverse determination of admissibility or deportability would include placing an alien in removal proceedings or making civil arrests relating to an alien's violation of the immigration laws. Section 1367(a) also generally prohibits ICE employees from disclosing any information about a VAWA, T, or U beneficiary to anyone, especially those who might use the information to the alien's detriment, *i.e.,* an abuser who may wish to have the victim removed from the United States.

Information provided *solely* by prohibited sources must be independently corroborated. Examples of prohibited sources include: the abuser in the case of a VAWA petitioner, the human trafficker in the case of a T status applicant, or the perpetrator of substantial physical or mental abuse in the case of a U status applicant. In such cases, ICE employees cannot rely solely on these sources when making an adverse determination of admissibility or deportability. This prohibition is important to note because ICE officers sometimes receive information from upset or disgruntled spouses, abusers, traffickers, or family members. An arrest based on such information would not violate § 1367 if, according to existing standard operating procedures, the ICE officer independently verifies the information (*e.g.,* through an immigration database) prior to making the arrest. To avoid a possible violation of § 1367, ICE officers must verify the information provided from these prohibited sources. For example, if the abuser husband calls ICE and states that his alien wife is in the United States after being ordered removed, ICE must independently verify the prior removal and note such corroboration on Form I-213 (Record of Inadmissible/Deportable Alien).

Section 1367 does not prevent ICE officers from making arrests of aliens believed to be in the United States illegally if the information provided by a prohibited source is independently verified. Likewise, § 1367 does not prevent ICE officers from arresting aliens who have applied for benefits under VAWA or the T or U nonimmigrant categories. Instead, § 1367 prevents ICE officers from making adverse determinations of admissibility or deportability based on information provided "solely" by a prohibited source. Simply stated, ICE officers must independently verify information and check databases at their disposal to determine the existence of any pending victim-based applications for immigration benefits. ICE officers are also reminded to consider the sources of their information and be aware that there is a possibility that the caller may be involved in an abusive or violent relationship with the alien who is the subject of the call. Accordingly, if the source of the independently verifiable information is likely an abuser or someone acting in the abuser's capacity, the ICE officer should consider using prosecutorial discretion.

This interim guidance also reminds ICE employees that they are generally prohibited from "permit[ing] use by or disclosure to anyone (other than a sworn officer or employee of [DHS])" of any information which relates to an alien who is the beneficiary of an application for relief under victim based benefits (VAWA, T or U nonimmigrant status).[1] If ICE employees know that an alien has sought such victim-based benefits, they are generally prohibited from disclosing any information to a third party. In enacting this nondisclosure provision, Congress sought to prevent, with limited exceptions, disclosure of *any information* relating to beneficiaries of applications for VAWA benefits (battered spouses or children) or for T or U nonimmigrant status, including the fact that they have applied for benefits. The disclosure of certain information is permitted in limited circumstances. Those circumstances include disclosure for legitimate law enforcement purposes, statistical purposes, and benefit granting or public benefit purposes. *See* 8 U.S.C. § 1367(b) (listing exceptions to general nondisclosure rule). In short, ICE employees must not reveal any information concerning an alien's T, U, or VAWA application unless an exception to the general nondisclosure requirement applies. The nondisclosure limitation ends when the application for relief is denied and all opportunities for appeal of the denial have been exhausted.

C. Sensitive Location Certificate of Compliance Requirement

VAWA 2005 added new INA § 239(e), which requires the completion of a certificate of compliance in certain cases. INA § 239(e) states, in relevant part:

(1) In general
In cases where an enforcement action leading to a removal proceeding was taken against an alien at any of the locations specified in paragraph (2), the Notice to Appear shall include a statement that the provisions of section 384 of the IIRIRA of 1996 (8 U.S.C. § 1367) have been complied with.

(2) Locations

---

[1] For additional information concerning the non-disclosure of information relating to VAWA beneficiaries, please see *Memorandum of Paul W. Virtue, INS Acting Executive Associate Commissioner, Non-Disclosure and Other Prohibitions Relating to Battered Aliens: IIRIRA § 384,* May 5, 1997.

The locations specified in this paragraph are as follows:
(A) At a domestic violence shelter, a rape crisis center, supervised visitation center, family justice center, a victim services, or victim services provider, or a community-based organization.[2]
(B) At a courthouse (or in connection with that appearance of the alien at a courthouse) if the alien is appearing in connection with a protection order case, child custody case, or other civil or criminal case relating to domestic violence, sexual assault, trafficking, or stalking in which the alien has been battered or subject to extreme cruelty or if the alien is described in subparagraph (T) or (U) of section 101(a)(15) of this title [8 U.S.C. § 1101(a)(15)].

This provision applies to all apprehensions occurring on or after February 5, 2006.

Section 239(e) requires ICE to certify that the agency has independently verified the inadmissibility or deportability of an alien that was encountered at these specified sensitive locations. In practical terms, when ICE officers encounter aliens at these sensitive locations and ultimately issue a Notice To Appear, the officers must ensure that they have independently verified the inadmissibility or deportability of that alien and must not permit any unauthorized disclosure of information about the alien.

The file must bear information adequately alerting the officer or agent who is preparing the NTA that the INA 239(e) certification requirement could be implicated. Moreover, in complying with 8 U.S.C. § 1367, the file must bear sufficient information to permit the issuing officer or agent to make a reliable assessment that, in fact, the prohibited source and nondisclosure provisions of § 1367 have been complied with. Accordingly, ICE officers or agents must record on the Form I-213 whether the alien was encountered at a sensitive location, whether information related to the alien's admissibility or deportability was supplied by a prohibited source, whether and how such information was independently verified, and an acknowledgement that, if applicable, the nondisclosure requirements have been complied with.

The certificate of compliance requirements reflects congressional intent that ICE proceed cautiously when making an arrest or otherwise physically encountering an alien at one of the sensitive locations without objective evidence that the alien is in the United States in violation of the immigration laws and that victims of battery, abuse, trafficking, and extreme cruelty be protected. In this regard, ICE officers encountering such individuals are to verify information through use of all databases at their disposal, including CLAIMS. For INA § 239(e) purposes,

---

[2] A community based organization means an organization that:
>  (A) focuses primarily on domestic violence, dating violence, sexual assault, or stalking;
>  (B) has established a specialized culturally specific program that addresses domestic violence, dating violence, sexual assault, or stalking;
>  (C) has a primary focus on underserved populations (and includes representatives of these populations) and domestic violence, dating violence, sexual assault, or stalking; or
>  (D) obtains expertise, or shows demonstrated capacity to work effectively, on domestic violence, dating violence, sexual assault, and stalking through collaboration.

*See* 42 U.S.C. § 13925(a)(3) (2006).

ICE officers must then issue a certificate of compliance if the alien was encountered at a sensitive location and ICE issued a Notice To Appear. The certificate of compliance must be completed by an officer or agent authorized to issue Notices To Appear after reviewing the information contained on the I-213 and confirming the prohibited source information was independently verified. *See* 8 C.F.R. § 239.1 (2006). The certificate may simply state: "I certify that, to the best of my knowledge and belief, section 384 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (8 U.S.C. § 1367) has been complied with." The certificate of compliance language may be typed or printed on the NTA. Failure to complete a certificate of compliance may subject the officer and ICE to civil penalties and disciplinary action for violating 8 U.S.C. § 1367.

ICE officers are discouraged from making arrests at these sensitive locations absent clear evidence that the alien is not entitled to victim-based benefits. Aliens encountered at rape crisis centers, domestic violence centers, or any of the sensitive locations noted in INA § 239(e) are likely to be genuine VAWA self-petitioners. While INA § 239(e) does not prohibit arrests of aliens at sensitive locations, it is clear that Congress intended that cases of aliens arrested at such locations be handled properly given that they may ultimately benefit from VAWA's provisions. ICE officers should consider prosecutorial discretion in cases of aliens encountered at sensitive locations unless exigent circumstances exist. Examples of exigent circumstances include criminal activity, fraud, terrorism, or where there are extraordinary reasons for arresting aliens at sensitive locations.

If an officer is unsure whether a particular personal encounter or apprehension requires a certification of compliance under INA § 239(e), the officer should consult the local Office of Chief Counsel (OCC). If time does not permit, the officer should consult his or her immediate supervisor for assistance.

Questions about the information provided in this memorandum may be directed to the local OCC or to the Enforcement Law Division (202-514-2895). Specific victim assistance questions may be directed to Susan Shriner, ICE Victim-Witness Coordinator, at 202-616-8737.

*Office of Investigations*

**U.S. Department of Homeland Security**
425 I Street, NW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

**DEC 2 6 2007**

| | |
|---|---|
| MEMORANDUM FOR: | All Assistant Directors<br>All Special Agents in Charge<br>All Deputy Assistant Directors |
| FROM: | Marcy M. Forman<br>Director, Office of Investigations |
| SUBJECT: | Enforcement Actions at Schools |

The presence of our law enforcement agents conducting investigative activity at schools, or in venues where children's activities occur, has always been a point of particular sensitivity, especially given the public's interest in ICE's mission. Accordingly, it is important to emphasize that great care and forethought be applied before undertaking any investigative or enforcement type action at or near schools, other institutions of education, and *venues* generally where children and their families may be present.

Accordingly, the following policy is immediately effective.

When an enforcement action or investigative activity includes possibility of detention or questioning of subjects at the above listed sites, the first line supervisor shall generate a request memorandum seeking approval from the Special Agent in Charge. The memorandum must be reviewed and approved by the Special Agent in Charge prior to the anticipated activity and notification must be made to the appropriate Headquarters Operations Manager.

This policy does not apply to cases or investigations involving situations where no enforcement activity is contemplated, such as requesting information from school officials, retrieving records, or otherwise routine non-enforcement activity. This policy also does not apply to terrorism-related investigations, cases of public safety or other cases that can be articulated. However, when time and circumstances permit, offices are required to provide appropriate notice to Headquarters of any enforcement action at any of the above listed sensitive locations.

All employees should be cognizant of the sensitivity of engaging in arrests or other enforcement activities at areas where children are present, such as educational institutions. Exercising common sense and good judgment will prevent situations that would negatively impact our ability to protect the safety and security of the Homeland.

A formal Directive is currently being drafted. This memorandum will serve as the interim policy regarding enforcement activities at schools. Your cooperation in implementing this policy is appreciated.

SUPERSEDED BY POLICY #10029.2 "Enforcement Actions at or Focused on Sensitive Locations" (OCTOBER 24, 2011)

AR-12



**U.S. Immigration
and Customs
Enforcement**

July 3, 2008

MEMORANDUM FOR:     All Field Office Directors
                               All Special Agents in Charge

FROM:                          Julie L. Myers
                               Assistant Secretary

SUBJECT:                <u>Field Guidance on Enforcement Actions or Investigative Activities
At or Near Sensitive Community Locations</u>

ICE personnel should refrain from conducting enforcement actions or investigative activities at
or near sensitive community locations such as schools, places of worship, and funerals or other
religious ceremonies, except in limited circumstances as set forth within this memorandum.
Such restraint strikes a balance between our law enforcement responsibilities and the public's
confidence in the way ICE executes its mission.

Precedent for this approach is clear. Under Immigration and Naturalization Service (INS) Policy
HQ 807-P, <u>Enforcement Activities at Schools, Places of Worship, or at funerals or other
religious ceremonies</u> (May 17, 1993), law enforcement personnel were directed to:

> *"[A]ttempt to avoid apprehension of persons and to tightly control investigative
> operations on the premises of schools, places of worship, funerals and other
> religious ceremonies."*

ICE policies are in place to ensure that our personnel conduct enforcement operations in a
manner that is safe and respectful of all persons. This policy was recently reinforced in a
December 26, 2007 Memorandum from Marcy M. Forman, Director, Office of Investigations,
entitled <u>Enforcement Actions at Schools</u>. This field guidance clearly states that ICE views these
actions with particular sensitivity:

> *"[I]t is important to emphasize that great care and forethought be applied before
> undertaking any investigative or enforcement type action at or near schools, other
> institutions of education, and venues generally where children and their families
> may be present."*

Policies governing ICE Office of Detention and Removal (DRO) Fugitive Operations Teams
have similarly discouraged enforcement actions in these sensitive locations. Furthermore, all of
our enforcement actions have been, and should continue to be, thoroughly planned, reviewed,
and approved by senior field office personnel so that both the public's safety and our national
security are guaranteed.

AR-13

While ICE policies and procedures do not specifically preclude enforcement actions or
investigative activities at the aforementioned locations, the direction of INS HQ807-P remains in
effect.

Consistent with these policies, including INS HQ807-P, there may be specific situations
requiring ICE personnel to act at or near sensitive locations. Such situations would include those
involving terrorism-related investigations, matters of public safety, or actions where no
enforcement activity is involved, such as requesting information from school officials, retrieving
records, or otherwise routine, non-enforcement activity. Any such case must be raised to the
appropriate Headquarters program office prior to any action or, in exigent circumstances, as soon
as practicable. Moreover, personnel are reminded to be cognizant of the impact of their activity,
exercise good judgment and act with an appropriate level of compassion in light of the location
while exercising their authority in such circumstances.

This policy should not be construed as an indication of tolerance for any violations of the law by
anyone at or in charge of any of these sensitive locations. A formal ICE Policy Directive
providing policy and procedures for these enforcement actions and/or investigative activities will
be issued in the near future.

SUPERSEDED BY POLICY #10029.2 "Enforcement Actions at or Focused on Sensitive Locations" (OCTOBER 24, 2011)

*Office of the Director*

**U.S. Department of Homeland Security**
500 12th Street, SW
Washington, D.C. 20536



**U.S. Immigration
and Customs
Enforcement**

OCT 2 4 2011

MEMORANDUM FOR:     Field Office Directors
                    Special Agents in Charge
                    Chief Counsel

FROM:               John Morton
                    Director

SUBJECT:            Enforcement Actions at or Focused on Sensitive Locations

Purpose

This memorandum sets forth Immigration and Customs Enforcement (ICE) policy regarding
certain enforcement actions by ICE officers and agents at or focused on sensitive locations. This
policy is designed to ensure that these enforcement actions do not occur at nor are focused on
sensitive locations such as schools and churches unless (a) exigent circumstances exist, (b) other
law enforcement actions have led officers to a sensitive location as described in the *"Exceptions
to the General Rule"* section of this policy memorandum, or (c) prior approval is obtained. This
policy supersedes all prior agency policy on this subject.[1]

Definitions

The enforcement actions covered by this policy are (1) arrests; (2) interviews; (3) searches; and
(4) for purposes of immigration enforcement only, surveillance. Actions not covered by this
policy include actions such as obtaining records, documents and similar materials from officials
or employees, providing notice to officials or employees, serving subpoenas, engaging in Student
and Exchange Visitor Program (SEVP) compliance and certification visits, or participating in
official functions or community meetings.

The sensitive locations covered by this policy include, but are not limited to, the following:

---

[1] Memorandum from Julie L. Myers, Assistant Secretary, U.S. Immigration and Customs Enforcement, "Field
Guidance on Enforcement Actions or Investigative Activities At or Near Sensitive Community Locations" 10029.1
(July 3, 2008); Memorandum from Marcy M. Forman, Director, Office of Investigations, "Enforcement Actions at
Schools" (December 26, 2007); Memorandum from James A. Puleo, Immigration and Naturalization Service (INS)
Acting Associate Commissioner, "Enforcement Activities at Schools, Places of Worship, or at funerals or other
religious ceremonies" HQ 807-P (May 17, 1993). This policy does not supersede the requirements regarding arrests
at sensitive locations put forth in the Violence Against Women Act, see Memorandum from John P. Torres, Director
Office of Detention and Removal Operations and Marcy M. Forman, Director, Office of Investigations, "Interim
Guidance Relating to Officer Procedure Following Enactment of VAWA 2005 (January 22, 2007).

- schools (including pre-schools, primary schools, secondary schools, post-secondary schools up to and including colleges and universities, and other institutions of learning such as vocational or trade schools);
- hospitals;
- churches, synagogues, mosques or other institutions of worship, such as buildings rented for the purpose of religious services;
- the site of a funeral, wedding, or other public religious ceremony; and
- a site during the occurrence of a public demonstration, such as a march, rally or parade.

This is not an exclusive list, and ICE officers and agents shall consult with their supervisors if the location of a planned enforcement operation could reasonably be viewed as being at or near a sensitive location. Supervisors should take extra care when assessing whether a planned enforcement action could reasonably be viewed as causing significant disruption to the normal operations of the sensitive location. ICE employees should also exercise caution. For example, particular care should be exercised with any organization assisting children, pregnant women, victims of crime or abuse, or individuals with significant mental or physical disabilities.

<u>Agency Policy</u>

*General Rule*

Any planned enforcement action at or focused on a sensitive location covered by this policy must have prior approval of one of the following officials: the Assistant Director of Operations, Homeland Security Investigations (HSI); the Executive Associate Director (EAD) of HSI; the Assistant Director for Field Operations, Enforcement and Removal Operations (ERO); or the EAD of ERO. This includes planned enforcement actions at or focused on a sensitive location which is part of a joint case led by another law enforcement agency. ICE will give special consideration to requests for enforcement actions at or near sensitive locations if the only known address of a target is at or near a sensitive location (e.g., a target's only known address is next to a church or across the street from a school).

*Exceptions to the General Rule*

This policy is meant to ensure that ICE officers and agents exercise sound judgment when enforcing federal law at or focused on sensitive locations and make substantial efforts to avoid unnecessarily alarming local communities. <u>The policy is not intended to categorically prohibit lawful enforcement operations when there is an immediate need for enforcement action as outlined below.</u> ICE officers and agents may carry out an enforcement action covered by this policy without prior approval from headquarters when one of the following exigent circumstances exists:

- the enforcement action involves a national security or terrorism matter;
- there is an imminent risk of death, violence, or physical harm to any person or property;

- the enforcement action involves the immediate arrest or pursuit of a dangerous felon, terrorist suspect, or any other individual(s) that present an imminent danger to public safety; or
- there is an imminent risk of destruction of evidence material to an ongoing criminal case.

When proceeding with an enforcement action under these extraordinary circumstances, officers and agents must conduct themselves as discretely as possible, consistent with officer and public safety, and make every effort to limit the time at or focused on the sensitive location.

If, in the course of a planned or unplanned enforcement action that is not initiated at or focused on a sensitive location, ICE officers or agents are subsequently led to or near a sensitive location, barring an exigent need for an enforcement action, as provided above, such officers or agents must conduct themselves in a discrete manner, maintain surveillance if no threat to officer safety exists and immediately consult their supervisor prior to taking other enforcement action(s).

Dissemination

Each Field Office Director, Special Agent in Charge, and Chief Counsel shall ensure that the employees under his or her supervision receive a copy of this policy and adhere to its provisions.

Training

Each Field Office Director, Special Agent in Charge, and Chief Counsel shall ensure that the employees under his or her supervision are trained (both online and in-person/classroom) annually on enforcement actions at or focused on sensitive locations.

No Private Right of Action

Nothing in this memorandum is intended to and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

This memorandum provides management guidance to ICE officers exercising discretionary law enforcement functions, and does not affect the statutory authority of ICE officers and agents, nor is it intended to condone violations of federal law at sensitive locations.



U.S. Customs and
Border Protection

Deputy Commissioner

MEMORANDUM FOR:    See Distribution

FROM:              David V. Aguilar
                   Deputy Commissioner

SUBJECT:           U.S. Customs and Border Protection Enforcement Actions at or
                   Near Certain Community Locations

The presence of U.S. Customs and Border Protection (CBP) Officers and Agents conducting enforcement activities at or near schools, places of worship, and certain other community locations has been a sensitive issue. Accordingly, careful consideration and planning must be undertaken, as outlined herein, in relation to enforcement actions conducted at or near these establishments.

The following establishments should be considered to be within the context of this policy:

- schools, including pre-schools, primary schools, secondary schools, post-secondary schools, vocational or trade schools, and colleges and universities;
- places of worship, including places where funerals, weddings, or other public religious ceremonies are taking place;
- community centers; and
- hospitals.

CBP personnel should consult their supervisors for guidance when an enforcement action is being contemplated or planned at or near a location not specifically listed above but that may be similar in nature, description, or function. In assessing the appropriateness of a proposed action, supervisors should consider alternative measures that could achieve the enforcement objective without causing significant disruption to the normal activities or operations at the identified location, including the importance of the enforcement objective in furthering CBP's mission.

When CBP enforcement actions or investigative activities are likely to lead to an apprehension at or near such locations, written approval by the Chief Patrol Agent, Director of Field Operations, Director of Air and Marine Operations or the Internal Affairs Special Agent in Charge is required. The Deputy to these offices may approve the inspection of records, preliminary investigative activities, and similar activities at these locations where apprehensions are not likely to be made.

This policy does not summarily preclude enforcement actions at the listed locations. When situations arise that call for enforcement actions at or near the above-mentioned establishments without prior written approval, Agents and Officers are expected to exercise sound judgment and

AR-18

common sense while taking appropriate action. Exigent circumstances, including matters related to national security, terrorism, or public safety, requiring an Agent or Officer to enter these establishments, must be reported immediately through the respective chain of command, as applicable.

This policy does not limit or otherwise apply to CBP operations that are conducted at or near the international border (including the functional equivalent of the border), or CBP operations that bear nexus to the border including, for example, but not limited to smuggling interdiction efforts that result in transportation to a hospital, custodial monitoring of injured aliens in CBP custody that require hospitalization, or a controlled delivery from the border that concludes in close proximity of one of the aforementioned locations.

This CBP policy guidance memorandum, which may be modified, superseded, or rescinded by CBP at any time without notice, is not intended to, does not, and may not be relied upon to create, any right or benefit, substantive or procedural, for any party.


Distribution:   Assistant Commissioner, Office of Air and Marine
                Assistant Commissioner, Office of Field Operations
                Assistant Commissioner, Office of Internal Affairs
                Chief, Office of Border Patrol
                Chief Counsel

*This message is sent on behalf of Jon Gurule, Assistant Director for Field Operations:*

**To:**           **Field Office Directors and Deputy Field Office Directors**

**Subject:**      **Reminder: Enforcement Actions at or Near Courthouses**

This message serves as a reminder for important guidance concerning ERO enforcement actions at courthouses. ***Please ensure immediate distribution to all ERO officers within your AOR.***

- Enforcement actions at or near courthouses will only be undertaken against:

  - Priority #1(a): aliens engaged in or suspected of terrorism or espionage, or who otherwise pose a danger to national security;
  - Priority #1(c): aliens convicted of an offense for which an element was active participation in a criminal street gang, as defined in the November 20, 2014 Johnson memorandum;
  - Priority #1(d): aliens convicted of an offense classified as a felony in the convicting jurisdiction, other than a state or local offense for which an essential element was the alien's immigration history;
  - Priority #1(e): aliens convicted of an "aggravated felon," as that term is defined in section 101(a)(43) of the *Immigration and Nationality Act* at the time of the conviction.

- Enforcement actions at or near courthouses will only take place against specific, targeted aliens, rather than individuals who may be "collaterally" present, such as family members or friends who may accompany the target alien to court appearances or functions.

- Enforcement actions at or near courthouses will, wherever practicable: (1) take place outside public areas of the courthouse; (2) be conducted in collaboration with court security staff; and (3) utilize the court building's non-public entrances and exits.

Questions regarding this guidance may be directed to the Field Operations Staff Officer assigned to your AOR.

NOTICE: This communication may contain privileged or otherwise confidential information. If you are not an intended recipient or believe you have received this communication in error, please do not print, copy, retransmit, disseminate, or otherwise use this information.  Please inform the sender that you received this message in error and delete the message from your system.

AR-20

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**Directive Number 11072.1**: Civil Immigration Enforcement Actions Inside Courthouses

| | |
|---|---|
| **Issue Date:** | January 10, 2018 |
| **Effective Date:** | January 10, 2018 |
| **Superseded:** | None |
| **Federal Enterprise Architecture Number:** | 306-112-002b |

1. **Purpose/Background.** This Directive sets forth U.S. Immigration and Customs Enforcement (ICE) policy regarding civil immigration enforcement actions inside federal, state, and local courthouses. Individuals entering courthouses are typically screened by law enforcement personnel to search for weapons and other contraband. Accordingly, civil immigration enforcement actions taken inside courthouses can reduce safety risks to the public, targeted alien(s), and ICE officers and agents. When practicable, ICE officers and agents will conduct enforcement actions discreetly to minimize their impact on court proceedings.

   Federal, state, and local law enforcement officials routinely engage in enforcement activity in courthouses throughout the country because many individuals appearing in courthouses for one matter are wanted for unrelated criminal or civil violations. ICE's enforcement activities in these same courthouses are wholly consistent with longstanding law enforcement practices, nationwide. And, courthouse arrests are often necessitated by the unwillingness of jurisdictions to cooperate with ICE in the transfer of custody of aliens from their prisons and jails.

2. **Policy.** ICE civil immigration enforcement actions inside courthouses include actions against specific, targeted aliens with criminal convictions, gang members, national security or public safety threats, aliens who have been ordered removed from the United States but have failed to depart, and aliens who have re-entered the country illegally after being removed, when ICE officers or agents have information that leads them to believe the targeted aliens are present at that specific location.

   Aliens encountered during a civil immigration enforcement action inside a courthouse, such as family members or friends accompanying the target alien to court appearances or serving as a witness in a proceeding, will not be subject to civil immigration enforcement action, absent special circumstances, such as where the individual poses a threat to public safety or interferes with ICE's enforcement actions.[1]

---

[1] ICE officers and agents will make enforcement determinations on a case-by-case basis in accordance with federal law and consistent with U.S. Department of Homeland Security (DHS) policy. *See* Memorandum from John Kelly, Secretary of Homeland Security, *Enforcement of the Immigration Laws to Serve the National Interest* (Feb. 20, 2017); Memorandum from John Kelly, Secretary of Homeland Security, *Implementing the President's Border Security and Immigration Enforcement Improvements Policies* (Feb. 20, 2017).

AR-21

ICE officers and agents should generally avoid enforcement actions in courthouses, or areas within courthouses that are dedicated to non-criminal (e.g., family court, small claims court) proceedings. In those instances in which an enforcement action in the above situations is operationally necessary, the approval of the respective Field Office Director (FOD), Special Agent in Charge (SAC), or his or her designee is required.

Civil immigration enforcement actions inside courthouses should, to the extent practicable, continue to take place in non-public areas of the courthouse, be conducted in collaboration with court security staff, and utilize the court building's non-public entrances and exits.

Planned civil immigration enforcement actions inside courthouses will be documented and approved consistent with current operational plans and field operations worksheet procedures. Enforcement and Removal Operations (ERO) and Homeland Security Investigations (HSI) may issue additional procedural guidance on reporting and documentation requirements; such reporting and documentation shall not impose unduly restrictive requirements that operate to hamper or frustrate enforcement efforts.

As with any planned enforcement action, ICE officers and agents should exercise sound judgment when enforcing federal law and make substantial efforts to avoid unnecessarily alarming the public. ICE officers and agents will make every effort to limit their time at courthouses while conducting civil immigration enforcement actions.

This policy does not apply to criminal immigration enforcement actions inside courthouses, nor does it prohibit civil immigration enforcement actions inside courthouses.

**3.**     **Definition** The following definitions apply for the purposes of this Directive only.

**3.1.**     **Civil immigration enforcement action.** Action taken by an ICE officer or agent to apprehend, arrest, interview, or search an alien in connection with enforcement of administrative immigration violations.

**4.**     **Responsibilities.**

**4.1.**     The **Executive Associate Directors** for **ERO** and **HSI** are responsible for ensuring compliance with the provisions of this Directive within his or her program office.

**4.2.**     **ERO FODs** and **HSI SACs** are responsible for:

1) Providing guidance to officers and agents on the approval process and procedures for civil immigration enforcement actions at courthouses in their area of responsibility beyond those outlined in this Directive; and

2) Ensuring civil immigration enforcement actions at courthouses are properly documented and reported, as prescribed in Section 5.1 of this Directive.

AR-22

**4.3.** **ICE Officers and Agents** are responsible for complying with the provisions of this Directive and properly documenting and reporting civil immigration enforcement actions at courthouses, as prescribed in Section 5.1 of this Directive.[2]

**5.** **Procedures/Requirements.**

**5.1.** **Reporting Requirements.**

1) ICE officers and agents will document the physical address of planned civil immigration enforcement actions in accordance with standard procedures for completing operational plans, noting that the target address is a courthouse.[3]

2) Unless otherwise directed by leadership, there will be no additional reporting requirements in effect for this Directive.

**6.** **Recordkeeping.** ICE maintains records generated pursuant to this policy, specifically the Field Operations Worksheets (FOW) and Enforcement Operation Plan (EOP). ERO will maintain the FOW in accordance with the Fugitive Operations schedule DAA-0567-2015-0016. HSI will maintain EOPs in accordance with the Comprehensive Records Schedule N1-36-86-1/161.3. The EOPs will be maintained within the Investigative Case Files.

**7.** **Authorities/References.**

**7.1.** DHS Directive 034-06, *Department Reporting Requirements,* October 23, 2015.

**7.2.** DHS Instruction 034-06-001, Rev. 1, *Department Reporting Requirements*, March 28, 2017.

**8.** **Attachments.** None.

**9.** **No Private Right.** This document provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

---

[2] *See also* ICE Directive No. 10036.1, *Interim Guidance Relating to Officer Procedure Following Enactment of VAWA 2005* (Jan. 22, 2007), for additional requirements regarding civil immigration enforcement actions against certain victims and witnesses conducted at courthouses.
[3] ERO will use the Field Operations Worksheet and HSI will use the Enforcement Operation Plan.

AR-23

Thomas D. Homan
Deputy Director and
Senior Official Performing the Duties of the Director
**U.S. Immigration and Customs Enforcement**

AR-24


April 27, 2021

| | |
|---|---|
| MEMORANDUM FOR | U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT (ICE) |
| | U.S. CUSTOMS AND BORDER PROTECTION (CBP) |
| FROM: | Tae Johnson |
| | Acting Director |
| | U.S. Immigration and Customs Enforcement |
| | |
| | Troy Miller |
| | Acting Commissioner |
| | U.S. Customs and Border Protection |
| SUBJECT: | Civil Immigration Enforcement Actions in or near Courthouses |

**Purpose:** This memorandum provides interim guidance that governs our civil immigration enforcement actions in or near courthouses. It is effective immediately and will be replaced after the Secretary issues his final guidance after engaging with you.

This memorandum supersedes and revokes ICE Directive 11072.1, entitled "Civil Immigration Enforcement Inside Courthouses," that was issued on January 30, 2018.

### I. Core Principle

The courthouse is a place where the law is interpreted, applied, and justice is to be done. As law enforcement officers and public servants, we have a special responsibility to ensure that access to the courthouse – and therefore access to justice, safety for crime victims, and equal protection under the law – is preserved.

Executing civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses and, as a result, impair the fair administration of justice. At the same time, there may be legitimate need to execute a civil immigration enforcement action in or near a courthouse. This memorandum is designed to address these interests, which can sometimes be in tension with one another. It provides guidance as to when and how civil immigration enforcement actions can be executed in or near a courthouse so as not to unnecessarily impinge upon the core principle of preserving access to justice.

AR-25

## II.      Scope of this Memorandum

This memorandum does not apply to criminal immigration enforcement actions.[1]  It applies to any civil immigration enforcement action in or near a courthouse that involves an enforcement encounter between ICE or CBP personnel and an individual in the courthouse other than a courthouse official or employee.  It applies, for example, to civil apprehensions, service of subpoenas, searches, seizures, interviews, and surveillance.  It does not apply, for example, to the collection of records from court offices or participation in community meetings held in the courthouse.  This policy also does not apply to arrests that occur in jails connected to courthouses where the individual arrested is being released from the custody of state, local, or federal law enforcement partners at the conclusion of any criminal sentence.  This policy does not preclude arrests conducted at DHS facilities/offices regardless of their location.
For the purposes of this memorandum, a courthouse includes any municipal, county, state, federal, tribal, or territorial courthouse, including immigration courts.

"Near" the courthouse means in the close vicinity of the courthouse, including the entrance and exit of a courthouse, and in adjoining or related areas such as an adjacent parking lot or transportation point (such as a bus stop right outside a courthouse).  It does not include adjacent buildings or houses that are not part of the courthouse or otherwise are not used for court-related business.

## III.      Limited Circumstances for Courthouse Enforcement

A civil immigration enforcement action may be taken in or near a courthouse if (1) it involves a national security threat, or (2) there is an imminent risk of death, violence, or physical harm to any person, or (3) it involves hot pursuit of an individual who poses a threat to public safety, or (4) there is an imminent risk of destruction of evidence material to a criminal case.[2]

In the absence of hot pursuit, a civil immigration enforcement action also may be taken in or near a courthouse against an individual who poses a threat to public safety if: (1) it is necessary to take the action in or near the courthouse because a safe alternative location for such action does not exist or would be  too difficult to achieve the enforcement action at such a location, and (2) the action has been approved in advance by a Field Office Director, Special Agent in Charge, Chief Patrol Agent, or Port Director.[3]

---

[1] While this memorandum does not apply to criminal immigration enforcement actions, personnel should determine whether such an action truly needs to be taken in or near the courthouse given its potentially adverse impact upon access to justice.

[2] For purposes of determining whether an enforcement action pertains to an individual who is a national security or public safety enforcement and removal priority, department personnel are directed to consider the interim guidance issued by ICE Acting Director Tae Johnson on February 18, 2021, titled, "Interim Guidance: Civil Immigration Enforcement and Removal Priorities."

[3] DHS personnel shall continue to follow the certification compliance requirement in INA Section 239(e) and DHS Instruction 002-02-001.1, *Implementation of Section 1367 Information Provisions* when a noncitizen's appearance at a courthouse involves a protection order case, child custody case, or other civil or criminal case relating to domestic violence, sexual assault, human trafficking, or stalking in which the noncitizen has been battered or subject to extreme cruelty, or if the noncitizen may be eligible for T or U nonimmigrant status. Please refer to DHS Instruction 002-02-001.1, Section VI.A.3 for specific instructions for how DHS personnel shall comply with this requirement.

A "safe alternative location for such action" means one that is safe for DHS personnel, the subject of the enforcement action, and the public.

To the fullest extent possible, an enforcement action in the courthouse will be taken in a non-public area of the courthouse, outside of public view, be conducted in collaboration with courthouse security personnel, utilize the courthouse's non-public entrances and exits, and be conducted at the conclusion of the judicial proceeding that brought the individual to the courthouse.

## IV.        Training
Each Field Office Director, Special Agent in Charge, Chief Patrol Agent, and/or Port Director must ensure that all employees under his or her supervision are trained annually on this policy and that such training is documented and reviewed by agency counsel.

## V.        Reporting
Civil immigration enforcement actions that are planned or have been taken in or near a courthouse will be documented in relevant ICE or CBP electronic systems of record, which can be searched and validated.

ICE and CBP will each provide a monthly report to the Secretary, and to the Office for Civil Rights and Civil Liberties upon request, detailing all planned or executed civil immigration enforcement actions in or near courthouses, including the basis under this policy for each enforcement action.

## VI.        No Private Right of Action

The guidance set forth in this memorandum is not intended to, does not, and may not be relied upon to, create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

This memorandum provides management guidance to ICE and CBP personnel exercising discretionary law enforcement functions and does not affect the statutory authority of ICE or CBP employees. Nor is this memorandum to be construed as indicating tolerance for any violation of law in or near a courthouse.

# Joint Memo Providing Interim Guidance on Civil Immigration Enforcement In or Near Courthouses

🕐 4/27/2021    👥 To all ICE Employees

Earlier today, I jointly issued with U.S. Customs and Border Protection Acting Commissioner Troy Miller the attached *Civil Immigration Enforcement Actions in or near Courthouses* memorandum. This interim guidance is effective immediately and supersedes ICE Directive 11072.1, entitled "Civil Immigration Enforcement Inside Courthouses," that was issued on January 30, 2018.

The interim guidance is intended to balance the importance of preserving access to courts in the fair administration of justice with legitimate civil immigration enforcement interests.

This guidance will be updated when the Secretary issues his final guidance based on updated immigration enforcement priorities.

Thank you all for your exceptional work each and every day.

Tae D. Johnson
Acting Director
U.S. Immigration and Customs Enforcement

LEP



October 27, 2021

MEMORANDUM TO:    Tae D. Johnson
Acting Director
U.S. Immigration and Customs Enforcement

Troy A. Miller
Acting Commissioner
U.S. Customs and Border Protection

Ur M. Jaddou
Director
U.S. Citizenship and Immigration Services

Robert Silvers
Under Secretary
Office of Strategy, Policy, and Plans

Katherine Culliton-González
Officer for Civil Rights and Civil Liberties
Office of Civil Rights and Civil Liberties

Lynn Parker Dupree
Chief Privacy Officer
Privacy Office

FROM:    Alejandro N. Mayorkas
Secretary

SUBJECT:    **Guidelines for Enforcement Actions in or Near Protected Areas**

This memorandum provides guidance for ICE and CBP enforcement actions in or near areas that require special protection. It is effective immediately.

This memorandum supersedes and rescinds John Morton's memorandum entitled, "Enforcement Actions at or Focused on Sensitive Locations" (number 10029.2, dated October 24, 2011), and David Aguilar's memorandum entitled, "U.S. Customs and Border Protection Enforcement Actions at or Near Certain Community Locations" (dated January 18, 2013).

1

## I.     Foundational Principle

In our pursuit of justice, including in the execution of our enforcement responsibilities, we impact people's lives and advance our country's well-being in the most fundamental ways.  It is because of the profound impact of our work that we must consider so many different factors before we decide to act.  This can make our work very difficult.  It is also one of the reasons why our work is noble.

When we conduct an enforcement action – whether it is an arrest, search, service of a subpoena, or other action – we need to consider many factors, including the location in which we are conducting the action and its impact on other people and broader societal interests.  For example, if we take an action at an emergency shelter, it is possible that noncitizens, including children, will be hesitant to visit the shelter and receive needed food and water, urgent medical attention, or other humanitarian care.

To the fullest extent possible, we should not take an enforcement action in or near a location that would restrain people's access to essential services or engagement in essential activities.  Such a location is referred to as a "protected area."

This principle is fundamental.  We can accomplish our enforcement mission without denying or limiting individuals' access to needed medical care, children access to their schools, the displaced access to food and shelter, people of faith access to their places of worship, and more.  Adherence to this principle is one bedrock of our stature as public servants.

## II.    Protected Areas

Whether an area is a "protected area" requires us to understand the activities that take place there, the importance of those activities to the well-being of people and the communities of which they are a part, and the impact an enforcement action would have on people's willingness to be in the protected area and receive or engage in the essential services or activities that occur there.  It is a determination that requires the exercise of judgment.

The following are some examples of a protected area.  The list is not complete.  It includes only examples:

- A school, such as a pre-school, primary or secondary school, vocational or trade school, or college or university.

- A medical or mental healthcare facility, such as a hospital, doctor's office, health clinic, vaccination or testing site, urgent care center, site that serves pregnant individuals, or community health center.

- A place of worship or religious study, whether in a structure dedicated to activities of faith (such as a church or religious school) or a temporary facility or location where such activities are taking place.

AR-30

- A place where children gather, such as a playground, recreation center, childcare center, before- or after-school care center, foster care facility, group home for children, or school bus stop.

- A social services establishment, such as a crisis center, domestic violence shelter, victims services center, child advocacy center, supervised visitation center, family justice center, community-based organization, facility that serves disabled persons, homeless shelter, drug or alcohol counseling and treatment facility, or food bank or pantry or other establishment distributing food or other essentials of life to people in need.

- A place where disaster or emergency response and relief is being provided, such as along evacuation routes, where shelter or emergency supplies, food, or water are being distributed, or registration for disaster-related assistance or family reunification is underway.

- A place where a funeral, graveside ceremony, rosary, wedding, or other religious or civil ceremonies or observances occur.

- A place where there is an ongoing parade, demonstration, or rally.

We need to consider the fact that an enforcement action taken near – and not necessarily in – the protected area can have the same restraining impact on an individual's access to the protected area itself. If indeed that would be the case, then, to the fullest extent possible, we should not take the enforcement action near the protected area. There is no bright-line definition of what constitutes "near." A variety of factors can be informative, such as proximity to the protected area, visibility from the protected area, and people's behavioral patterns in and around the protected area. The determination requires an analysis of the facts and the exercise of judgment.

The fundamental question is whether our enforcement action would restrain people from accessing the protected area to receive essential services or engage in essential activities. Our obligation to refrain, to the fullest extent possible, from conducting a law enforcement action in or near a protected area thus applies at all times and is not limited by hours or days of operation.

Whether an enforcement action can be taken in or near a courthouse is addressed separately in the April 27, 2021 Memorandum from Tae Johnson, ICE Acting Director, and Troy Miller, CBP Acting Commissioner, entitled "Civil Immigration Enforcement Actions in or Near Courthouses," which remains in effect.

## III.    Exceptions and Limitation on Scope

The foundational principle of this guidance is that, to the fullest extent possible, we should not take an enforcement action in or near a protected area. The phrase "to the fullest extent possible" recognizes that there might be limited circumstances under which an enforcement action needs to be taken in or near a protected area. The following are some examples of such limited circumstances:

- The enforcement action involves a national security threat.

- There is an imminent risk of death, violence, or physical harm to a person.

- The enforcement action involves the hot pursuit of an individual who poses a public safety threat.

- The enforcement action involves the hot pursuit of a personally observed border-crosser.

- There is an imminent risk that evidence material to a criminal case will be destroyed.

- A safe alternative location does not exist.

This list is not complete. It includes only examples. Here again, the exercise of judgment is required.

Absent exigent circumstances, an Agent or Officer must seek prior approval from their Agency's headquarters, or as you otherwise delegate, before taking an enforcement action in or near a protected area. If the enforcement action is taken due to exigent circumstances and prior approval was therefore not obtained, Agency headquarters (or your delegate) should be consulted post-action. To the fullest extent possible, any enforcement action in or near a protected area should be taken in a non-public area, outside of public view, and be otherwise conducted to eliminate or at least minimize the chance that the enforcement action will restrain people from accessing the protected area.

Enforcement actions that are within the scope of this guidance include, but are not limited to, such actions as arrests, civil apprehensions, searches, inspections, seizures, service of charging documents or subpoenas, interviews, and immigration enforcement surveillance. This guidance does not apply to matters in which enforcement activity is not contemplated. As just one example, it does not apply to an Agent's or Officer's participation in an official function or community meeting.

This guidance does not limit an agency's or employee's statutory authority, and we do not tolerate violations of law in or near a protected area.

## IV.     Training and Reporting

Please ensure that all employees for whom this guidance is relevant receive the needed training. Each of your respective agencies and offices should participate in the preparation of the training materials.

Any enforcement action taken in or near a protected area must be fully documented in your Agency's Privacy Act-compliant electronic system of record in a manner that can be searched and validated. The documentation should include, for example, identification of the protected area; the reason(s) why the enforcement action was taken there; whether or not prior approval was obtained and, if not, why not; the notification to headquarters (or headquarters' delegate) that occurred after an action was taken without prior approval; a situational report of what

occurred during and immediately after the enforcement action; and, any additional information that would assist in evaluating the effectiveness of this guidance in achieving our law enforcement and humanitarian objectives.

## V.      Statement of No Private Right Conferred

This guidance is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

5

# Department Guidance for Enforcement Action at Protected Areas

🕐 10/27/2021   👥 To all ICE Employees

Today, the Secretary issued DHS's first-ever Department-wide policy to guide ICE and CBP civil immigration enforcement actions in or near protected areas, which replaces previous sensitive locations policies. Effective immediately, enforcement actions should not be taken in or near a location that would restrain people's access to essential services or engagement in essential activities.

This new policy supersedes and rescinds John Morton's memorandum entitled, "Enforcement Actions at or Focused on Sensitive Locations" (ICE Directive No. 10029.2, dated October 24, 2011), and David Aguilar's memorandum entitled, "U.S. Customs and Border Protection Enforcement Actions at or Near Certain Community Locations" (dated January 18, 2013). The April 27, 2021, Joint ICE and CBP Memorandum entitled "Civil Immigration Enforcement Actions in or Near Courthouses" remains in effect.

Please stay safe and be well.

Tae D. Johnson
Acting Director
U.S. Immigration and Customs Enforcement

### DHS GUIDELINES FOR ENFORCEMENT ACTIONS IN OR NEAR PROTECTED AREAS

AR-34

## U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

**ICE Directive 10036.2**:     **Implementation of Section 1367 Protections for Noncitizen Victims of Crime**

**Issue Date:**    March 16, 2022
**Superseded:**   ICE Policy No. 10036.1, Interim Guidance Relating to Officer
                        Procedure Following Enactment of VAWA 2005 (Jan. 22, 2007)

1. **Purpose/Background.** This Directive establishes U.S. Immigration and Customs Enforcement (ICE) policy for the identification and disclosure of information protected by 8 U.S.C. § 1367 ("Section 1367"), treatment of information received from prohibited sources, and required certifications when certain enforcement actions are taken at specified locations. Congress enacted these protections so that human traffickers, perpetrators, and abusers cannot use the immigration system to retaliate against their victims. The requirements and procedures described in this Directive protect noncitizen crime victims who are beneficiaries of pending or approved victim-based benefits, including T nonimmigrant status (T Visa), U nonimmigrant status (U Visa), Continued Presence, and relief or benefits under the Violence Against Women Act (VAWA). By carefully considering confidentiality requirements applicable to certain victims and sources of information about victims, ICE complies with the law and ensures that its activities will not contribute to their victimization when working with or encountered by law enforcement.

2. **Policy.** ICE personnel are generally prohibited from using or disclosing information protected by Section 1367 to anyone other than an employee of DHS, Department of State (DOS), or the Department of Justice (DOJ), to include any information related to any noncitizen who has, or who ICE personnel has reason to believe may have, a pending or approved application for a T visa; U visa; Continued Presence; or VAWA-based benefit, including VAWA Cancellation of Removal.[1] Additionally, ICE personnel must verify any information provided by a prohibited source associated with the crime or abuse before acting upon it, regardless of whether an application is pending. Likewise, ICE personnel are required to complete the required certification for certain enforcement actions taken at specified locations, as defined by statute and discussed below.

2.1. **Confidentiality and Non-Disclosure.** Subject to limited exceptions, ICE personnel are prohibited by law from willfully using, publishing, or permitting disclosure of protected 1367 information to anyone other than a sworn officer or employee of DHS, DOS, or DOJ for legitimate agency functions. This includes confirming the identity of a noncitizen by acknowledging the existence of information or record(s). Information that cannot be disclosed also includes any information about a noncitizen contained in a DHS

---

[1] *See generally* paragraph (15)(T), (15)(U), or (51) of section 101(a) of the Immigration and Nationality Act (INA), 8 U.S.C. 1101(a)(15)(T), (U), (51), or section 240A(b)(2) of such Act, 8 U.S.C. 1229b(b)(2).

AR-35

database as well as information that has not yet been included in a database, such as the location of a beneficiary. The non-disclosure provision applies not only to the primary applicant, but also any beneficiaries listed on a pending or approved application. The non-disclosure provision applies until the application has been denied and all opportunities to appeal have been exhausted. The non-disclosure provision is retroactive, and thus, covers all records previously collected regardless of the noncitizen's current immigration status. Breaches of the confidentiality and non-disclosure provisions, or knowingly making a false certification under INA § 239 may result in disciplinary action and a civil penalty of not more than $5,000 for each violation.[2]

There are certain statutory exceptions to the non-disclosure provision, as described in section 5.2 of this Directive.

Section 1367 does not distinguish between types of information (e.g., Personally Identifiable Information) or categories of records (e.g., applications) but applies to all information related to a protected noncitizen, including records or other information that do not specifically identify the noncitizen as the beneficiary of a pending or approved T visa; U visa; Continued Presence; or VAWA-based benefit, including VAWA Cancellation of Removal.

**2.2.    Prohibited Sources.** ICE personnel must not make adverse determinations of noncitizen admissibility or removability based on information furnished solely by prohibited sources associated with the crime or abuse underlying the application (or potential application) for benefits, regardless of whether the noncitizen has yet to apply for a T visa; U visa; Continued Presence; or VAWA-based benefit, including VAWA Cancellation of Removal.[3] When ICE personnel receive adverse information about any victim of domestic violence, sexual assault, human trafficking, or a qualifying U visa crime— including and especially from a prohibited source—they must treat such information as inherently suspect and exercise all appropriate prosecutorial discretion with respect to investigating the credibility of the adverse information. Furthermore, ICE personnel receiving information solely from a prohibited source must not act on that information unless there is an independent source of corroboration. In addition, ICE personnel generally will not act on tips from an anonymous source against known noncitizen crime victims absent special circumstances or aggravating factors.

**2.3.    Specified Locations.** As required by INA § 239(e)(2), ICE personnel must complete a certification of compliance in all cases where enforcement actions are taken at specified locations leading to a noncitizen being placed in removal proceedings. In such cases, the Notice to Appear (NTA) must include a certification of compliance articulating that ICE

---

[2] Each unauthorized disclosure is treated as an individual violation.
[3] There are a number of ways ICE employees might receive "tips" from an abuser or an abuser's family, such as: a former spouse or family member calling ICE to report the victim as "illegal" or providing information to USCIS to rebut the basis for the victim's application, or a "landlord" (who may actually be a human trafficker) calling ICE to report that his "tenants" are undocumented.

AR-36

personnel complied with the Section 1367 non-disclosure and prohibited source provisions.

**2.4.    Required Training.** All ICE personnel who, through the course of their work, may come into contact with immigration information or records for noncitizens maintained in ICE systems, including ICE personnel who may disclose information on noncitizens, must complete the relevant prerequisite training courses. Relevant ICE personnel must complete the training when onboarding and as required thereafter.

**2.5.    Reporting Violations and Other Actions.** ICE personnel must report any suspected or confirmed unauthorized disclosure of protected Section 1367 information, use of uncorroborated information from a prohibited source, and/or failure to properly certify compliance for action at a specified location. Additionally, ICE personnel must report exceptions to disclosure, enforcement actions at specified locations, and enforcement actions taken after corroborating information from a prohibited source, as required by this Directive.

**3.    Definitions.** The following definitions apply for purposes of this Directive only.

**3.1.    Headquarters Responsible Officials (HROs).** Executive Associate Directors (EADs) of Enforcement and Removal Operations, Homeland Security Investigations, and Management and Administration (M&A); the Associate Director of the Office of Professional Responsibility (OPR); the Principal Legal Advisor[4]; and the Assistant Directors, Officers, or equivalent positions who report directly to the Director, Deputy Director, or Chief of Staff.

**3.2.    Field Responsible Official (FRO).** The highest-ranking official in any ICE field location. This includes Special Agents in Charge, Field Office Directors, Chief Counsel, ICE Attachés, and any other officials who have been designated, in writing, by the Director.

**3.3.    Disclosure.** Transmission, communication, allowing access to, sharing, or transferring of any information to any Federal, State, local, tribal, or territorial government; private-sector entity; or any foreign government, foreign person, or international organization; or any other individual.

**3.4.    ICE Personnel.** All ICE employees and contractors, designated immigration officers, special agents, and warrant service officers required to comply with the mandates set out in Section 1367 and this Directive.

**3.5.    Prohibited Source.** Individuals associated with the crime or abuse of a noncitizen who may provide adverse information regarding the admissibility or deportability of a

---

[4] This Directive applies to the Office of the Principal Legal Advisor (OPLA) to the extent it is not inconsistent with directives, policies, or formal guidance issued by the General Counsel of the Department of Homeland Security (DHS). DHS Delegation No. 0400.2, Delegation to the General Counsel (Sept. 14, 2004).

Implementation of Section 1367 Protections for Noncitizen Victims of Crime

3

AR-37

noncitizen.[5] Prohibited sources include: 1) a spouse or parent who engages in the proscribed mistreatment of noncitizen or subjected the noncitizen to extreme cruelty; 2) a member of the spouse's or parent's family residing in the same household as the noncitizen who has engaged in the proscribed mistreatment of the noncitizen or subjected the noncitizen to extreme cruelty when the spouse or parent consented to or acquiesced in such mistreatment or extreme cruelty; 3) a spouse or parent who engages in the aforementioned mistreatment of the noncitizen's child or subjected the noncitizen's child to extreme cruelty (unless the noncitizen actively participated in the mistreatment or extreme cruelty); 4) a member of the spouse's or parent's family residing in the same household as the noncitizen who has engaged is the aforementioned mistreatment of the noncitizen's child or subjected the noncitizen's child to extreme cruelty when the spouse or parent consented to or acquiesced in such mistreatment or extreme cruelty and the noncitizen did not actively participate in such mistreatment or extreme cruelty; 5) in the case of a noncitizen who is applying for a U visa, the perpetrator of the substantial physical or mental abuse and the criminal activity; and 6) in the case of a noncitizen who is applying for a T visa, has been granted Continued Presence, or is applying for immigration relief as a VAWA self-petitioner, the trafficker or perpetrator.

3.6. **Protected Section 1367 Information.** Any information relating to a noncitizen who has a pending or approved application for nonimmigrant or immigrant status as: 1) a victim of a severe form of human trafficking who generally is cooperating with law enforcement authorities (T visa, U visa, and Continued Presence); 2) a noncitizen who has suffered substantial physical or mental abuse as the result of qualifying criminal activity and who generally is cooperating in the investigation or prosecution of that activity (U visa); or 3) VAWA-protected noncitizens.

3.7. **Specified Locations.**[6] Locations specified in INA § 239(e)(2), where if an enforcement action leading to a removal proceeding was taken against a noncitizen at any of the locations specified below, the Notice to Appear shall include a statement that the provisions of Section 1367 have been complied with. The locations specified include: 1) domestic violence shelters; 2) rape crisis centers; 3) supervised visitation centers; 4) family justice centers; 5) victim services or victim services providers; 6) community-based organizations; and 7) courthouses (or in connection with the appearance of the noncitizen at a courthouse) *if* the noncitizen is appearing in connection with a protection order case, child custody case, or other civil or criminal case relating to domestic violence, sexual assault, trafficking, or stalking in which the noncitizen has been battered or subject to extreme cruelty or if the noncitizen is the beneficiary of a pending or approved T or U visa.

---

[5] For a current list of prohibited sources, see DHS Instruction No. 002-02-001, Rev. No. 00.1, Implementation of Section 1367 Information Provisions (Nov. 7, 2013; revised May 28, 2019).
[6] Specified locations, as defined by this Directive and INA § 239(e)(2), are separate and distinct from locations identified by ICE and DHS guidance governing enforcement actions at sensitive locations. *Compare* INA § 239(e), *with* ICE Directive No. 11072.1, Civil Immigration Enforcement Actions Inside Courthouses (Apr. 27, 2021), *and* Memorandum from Alejandro N. Mayorkas, Secretary of Homeland Security, to Tae D. Johnson, Acting Director, U.S. Immigration and Customs Enforcement, et al., *Guidelines for Enforcement Actions in or Near Protected Areas* (Oct. 27, 2021).

## 4. Responsibilities.

**4.1.** **HROs** are responsible for:

1) Ensuring overall compliance with this Directive within their respective Directorate or Program Office;

2) Developing and issuing implementation guidance specific to their Directorate or Program Office;

3) Within 30 days of issuance of this Directive identifying the relevant ICE personnel within their Directorate or Program Office who, based on responsibilities and duties, may access and use protected Section 1367 information maintained in ICE systems to ensure those designated ICE personnel take the required training upon onboarding and as required thereafter, and reporting this information to ICE learning management;

4) Reporting compliance with annual training requirements within their Directorate or Program Office;

5) Identifying the process for documenting authorized disclosures of protected Section 1367 information within their respective Directorate or Program Office that occur pursuant to the exceptions enumerated under section 5.2 of this Directive; and

6) Tracking and reporting to the ICE Office of Diversity and Civil Rights (ODCR) and the Office of Regulatory Affairs and Policy (ORAP), on a quarterly basis, the following:

    a) Enforcement actions that an FRO authorizes against noncitizen victims based on information corroborated from a prohibited source;

    b) Enforcement actions that an FRO authorizes against noncitizens at specified locations;

    c) Authorized disclosures based on the exceptions enumerated under Section 5.2; and

    d) Any other information as required by this Directive.

**4.2.** **FROs** are responsible for:

1) Implementing this Directive within their area(s) of responsibility;

AR-39

2) Adhering to all associated implementing guidance within their area(s) of responsibility;

3) Within 30 days of issuance of this Directive identifying the relevant ICE personnel within their field location who, based on responsibilities and duties, may access and use protected Section 1367 information maintained in ICE systems to ensure those designated ICE personnel take the required training upon onboarding and annually thereafter, and reporting this information to ICE learning management;

4) Reviewing and approving enforcement actions that may lead to a removal proceeding before they are taken against noncitizens with Section 1367 protections at specified locations,[7] including ensuring that such enforcement actions at specified locations are appropriately documented in the appropriate ICE system that allows for the tracking and reporting of such actions in accordance with this Directive;

5) Reporting compliance with annual training requirements;

6) Reporting suspected or confirmed violations of Section 1367 or INA § 239(e) in accordance with this Directive;

7) Reviewing and approving statutory and non-statutory exceptions to non-disclosure within their area(s) of responsibility, pursuant to DHS guidance and this Directive;

8) Ensuring that all authorized disclosures of Section 1367 records and all enforcement actions taken following corroborated prohibited source information are documented in an appropriate ICE system that allows for the tracking and reporting of such disclosures in accordance with this Directive and any implementation guidance covering their area(s) of responsibility; and

9) Tracking and reporting to their respective HRO:

   a) Enforcement actions that the FRO authorizes against noncitizen victims based on information corroborated from a prohibited source;

   b) Enforcement actions leading to a removal proceeding that the FRO authorizes against noncitizens at specified locations;

   c) Authorized disclosures based on the exceptions enumerated under Section 5.2; and

   d) Any other information as required by this Directive.

---

[7] A Field Office Director or Special Agent in Charge may delegate this approval authority to the Deputy Field Office Director or Deputy Special Agent in Charge, but no lower. Such delegations of authority must be made in writing and provided to the HRO.

Implementation of Section 1367 Protections for Noncitizen Victims of Crime

6

AR-40

**4.3.** **ORAP** is responsible for:

1) Coordinating with the Council on Combating Gender-Based Violence, as required, on updates or revisions to ICE's Section 1367 implementing policy; and

2) Consulting with Directorates and Program Offices on the development of the implementing guidance required by Section 5.1 of this Directive.

**4.4.** **ICE Personnel** are responsible for:

1) Protecting the confidentiality of protected Section 1367 information for noncitizen crime victims;

2) Treating information received from a prohibited source as inherently suspect, including finding an independent source for the information before acting on it, and in the absence of serious adverse factors, considering exercising favorable discretion to not pursue an action based on corroborated prohibited source information;

3) Adhering to Section 1367 and INA § 239(e) requirements regarding certain enforcement actions taken at specified locations, including but not limited to seeking FRO review and approval prior to taking enforcement actions that may lead to removal proceedings against noncitizens with Section 1367 protections at specified locations;

4) Reporting the following suspected or confirmed Section 1367 or INA § 239(e) violations in accordance with this Directive to their chain of command;

   a) The use of uncorroborated information from a prohibited source;

   b) The unauthorized disclosure of protected information; and

   c) The failure to properly certify compliance for an enforcement action leading to a removal proceeding against a noncitizen taken at a specified location; and

5) Timely completing all Section 1367 training requirements.

**4.5.** The **Office of Information Governance and Privacy (IGP)** is responsible for:

1) Providing guidance to ensure compliance with federal privacy laws and policies pertaining to Section 1367;

2) Consulting with Directorates and Program Offices on the development of the implementing guidance required by Section 5.1 of this Directive;

Implementation of Section 1367 Protections for Noncitizen Victims of Crime

AR-41

3) Reviewing and monitoring the execution of implementing guidance by Directorates and Program Offices required by Section 5.1 of this Directive for consistency and compliance with applicable law and policy, and reporting annually on Directorate and Program Office execution to the Office of the Director through ORAP;

4) Reporting suspected and confirmed Section 1367 violations to the DHS Office of Civil Rights and Civil Liberties (CRCL) and the DHS Privacy Office (PRIV);

5) Tracking and reporting suspected and confirmed Section 1367 violations in accordance with this Directive, including remedial measures or mitigations put in place in response to suspected or confirmed Section 1367 violations;

6) Handling the investigation, notification, and mitigation for Section 1367 non-disclosure violations; and

7) In coordination with the Office of the Principal Legal Advisor (OPLA), identifying the process for responding to third-party or other requests for information, such as Freedom of Information Act (FOIA) requests or ad hoc requests received from other federal agencies, to ensure compliance with disclosure prohibitions pursuant to Section 1367 and this Directive, as well as all applicable FOIA and information-sharing policies.

**4.6.**   The **Office of the Chief Information Officer (OCIO)** is responsible for:

1) Evaluating current and new information system(s) used by ICE personnel to perform their job responsibilities and ensuring all information systems are adequate to enable ICE personnel to uphold the statutory requirements of Section 1367, including warnings to readily identify noncitizens protected by Section 1367 provisions;

2) Ensuring that no record of a noncitizen with a pending or approved application subject to Section 1367 will appear in public systems; and

3) Implementing and incorporating the necessary security and privacy controls during the IT development to ensure that ICE IT systems maintain the capability to identify and filter Section 1367 records before the deployment of an IT system.

**4.7.**   The **Office of Professional Responsibility (OPR)** is responsible for:

1) Assessing and/or investigating any suspected violations of DHS or ICE policy relating to Section 1367, including but not limited to unauthorized disclosures or failure to corroborate information from a prohibited source; and

2) Evaluating whether any Section 1367 or INA § 239(e) violation was willful and potentially subject to the penalty clause under Section 1367(c).

**4.8.** **ODCR** is responsible for:

1) Reporting prohibited source and/or specified location violations to CRCL within 24 hours of receipt; and

2) Reporting disclosures of Section 1367-protected information pursuant to an exception, enforcement actions based on corroborated source information, and enforcement actions taken at specified locations to CRCL on a quarterly basis or upon request.

**4.9.** The **Office of Public Affairs** is responsible for reviewing all information to be publicly released to ensure that it does not contain Section 1367-protected information.

**5.** **Procedures/Requirements.**

**5.1.** **Implementing Guidance.** Within 12 months of issuance of this Directive, HROs, in appropriate consultation with OPLA, ORAP, and IGP, shall develop and issue implementing guidance consistent with this Directive and specific to how Section 1367 protections impact their Directorate or Program Office and personnel based on procedural workflows and internal operations. HROs will determine the form or framework (e.g., memorandum, standard operating procedure) suitable for the issuance of Section 1367 implementation guidance for their Directorate or Program Office. Implementation guidance must satisfy the following objectives to ensure operational effectiveness and compliance with legal, regulatory and policy requirements:

1) Identify and implement all processes and procedures specific to the Directorate or Program Office's mission and functions to comply with all sections of this Directive (e.g., reporting) as well as all statutory requirements;

2) Identify the relevant ICE personnel within their Directorate or Program Office who, based on their responsibilities and duties, may access Section 1367 information maintained in ICE systems;

3) Identify the information system(s) as well as the system mechanisms and warning identifiers (e.g., banner) used to notify the user that they are encountering Section 1367-protected records;

4) Identify reporting procedures in accordance with Sections 5.5 and 5.6 of this Directive; and

5) Identify in their implementing guidance all specific positions that are required to take the PALMS training, *Noncitizen Victims of Crime: Immigration Benefits and Confidentiality Provisions* (previously *Alien Victims of Crime: Immigration Benefits and Confidentiality Provisions*), or any successor training, and provide this list to the ICE Office of Leadership and Career Development (OLCD).

**5.2.** **Exceptions to Non-Disclosure.** There may be instances in which disclosure of protected Section 1367 information is mandated by court order or constitutional requirements,[8] or when disclosure is appropriate under one of the eight exceptions under 8 U.S.C. § 1367(b). ICE personnel are required to request FRO approval and coordinate with OPLA, as appropriate, prior to any disclosure, in order to determine if any of the following exceptions apply, or if disclosure is otherwise mandated by court order or constitutional requirements:

1) Disclosure in the same manner and circumstances as census information, which allows for the sharing of statistical compilations;

2) Disclosure to law enforcement officials to be used solely for a legitimate law enforcement purpose, provided that disclosure is made solely and in furtherance of the Department's or the recipient's legitimate law enforcement purpose;[9]

3) Disclosure in connection with judicial review of a determination in a manner that protects the confidentiality of such information;

4) Disclosure pursuant to a written waiver where adults who may be applicants or beneficiaries in the case have waived the disclosure restrictions by signing a waiver explicitly waiving Section 1367 protections;

5) Disclosure to Federal, State, and local public and private agencies providing benefits, to be used solely in making determinations of eligibility for welfare and public benefits under 8 U.S.C. § 1641(c);

6) Disclosure of closed cases, (e.g., application for relief has been denied and all opportunities for appeal have been exhausted) to the chairmen and ranking members of the House and/or Senate Committees on the Judiciary in their oversight capacities;

7) Disclosure to nonprofit, nongovernmental victim services providers with the prior written consent of the victim, for the sole purpose of assisting victims in obtaining victim services; and

8) Disclosure to elements of the U.S. Intelligence Community, other Federal departments or agencies possessing a counterterrorism function, or foreign governments to be used solely for a national security purpose, provided that disclosure is made in furtherance of the recipient's authorized National Intelligence or

---

[8] Examples of constitutional obligations necessitating disclosure include, but are not limited to, providing exculpatory and impeachment material that is relevant either to guilt or punishment of a criminal defendant in a federal criminal proceeding (*Brady* material) or that bears upon the credibility of a prosecution witness (*Giglio* material). In such cases, OPLA must be consulted before disclosure to DOJ or any state or local prosecutor is made.
[9] *See* DHS Instruction No. 215-01-002, Disclosure of Section 1367 Information to Law Enforcement Officials for Legitimate Law Enforcement Purposes (Jun. 18, 2016).

counterterrorism function and the information provided is used only for the authorized purpose for which it was provided.[10]

**5.3.** **Corroborating Information.** ICE personnel who receive information from the public about noncitizens must verify whether the information pertains to a Section 1367-protected noncitizen and determine if the information came from a prohibited source. Where information pertains to a Section 1367-protected noncitizen, the information must be corroborated from a source independent of the prohibited one.

1) <u>Evaluating Tips and Leads</u>. All tips and leads about noncitizens must be evaluated to determine if the information pertains to a noncitizen with Section 1367 protections, including:

   a) Affirmatively checking available databases to determine whether the noncitizen has a pending or approved application subject to Section 1367 protections;[11] and

   b) Not acting on anonymous tips against known noncitizen crime victims absent special circumstances or aggravating factors.

2) <u>Information from Prohibited Sources</u>. If ICE personnel receive actionable information that is suspected or determined to be solely from a prohibited source, or if ICE personnel cannot definitively state that the information did not come from a prohibited source, before taking any enforcement action ICE personnel must corroborate the information from an independent source and:

   a) Document in the Alien file, or appropriate electronic system of records, what information was received, from whom the information was received, whether and how the information was corroborated, and what adverse factors about the noncitizen exist to justify pursuing action in the case;

   b) Check for any relevant criminal background of the reporting individual for indications that the reporting individual is a prohibited source;

   c) Include this information when seeking FRO review and approval for enforcement actions or OPLA consultation regarding non-disclosure matters;

   d) If the FRO determines it is appropriate to pursue an action in the case and authorizes such action, the FRO shares details about the action with their HRO after such action is taken; and

---

[10] *See* DHS Instruction No. 215-01-001, Disclosure of Section 1367 Information to National Security Officials for National Security Purposes (Nov. 7, 2013).

[11] The lack of a pending or approved petition or application does not necessarily mean that the prohibited source provisions do not apply. ICE personnel must stay vigilant for indicia that a noncitizen may be a crime victim.

---

e) Take appropriate measures to ascertain any relationship between the reporting individual and the reported noncitizen and how the reported information was obtained.

3) <u>Exception</u>. The prohibited source restriction does not apply to a noncitizen who has been convicted of a crime listed in INA § 237(a)(2). ICE personnel should consult with OPLA to determine if this exception applies. Moreover, even where this exception applies, ICE personnel should endeavor to corroborate the information from an independent source prior to utilizing it where practicable.

**5.4. Required Certifications for Certain Enforcement Actions at Specified Locations.**
Where an enforcement action leading to a removal proceeding was taken against a noncitizen at a specified location, ICE personnel must certify that they independently verified the inadmissibility or removability of a noncitizen subject to Section 1367 protections. Accordingly, before issuing an NTA to a noncitizen as a result of an enforcement action taken at a specified location, ICE personnel must record the following information on the Form I-213, *Record of Deportable/Inadmissible Alien*:

1) The specified location where the enforcement action occurred;

2) Whether any information related to the noncitizen's admissibility or removability was provided by a prohibited source;

3) If information was provided by a prohibited source, whether and to what extent such information was independently verified; and

4) An acknowledgement of compliance with the Section 1367 requirements.[12]

Noncitizens encountered at specified locations may be beneficiaries of pending or approved applications for benefits; however, regardless of whether the noncitizen applied for or does not intend to apply for a victim-based application or petition, certain requirements apply. While INA § 239(e) does not prohibit arrests of noncitizens at specified locations, ICE personnel encountering noncitizens at such locations and considering an enforcement action that may lead to a removal proceeding must verify, to the fullest extent reasonably practicable, whether a particular noncitizen is a victim who falls within the protection of the Section 1367 provisions. In deciding whether to effectuate an arrest of a noncitizen subject to Section 1367 protections at a sensitive location, ICE personnel should adhere to all relevant DHS and ICE enforcement priorities and policies.[13]

---

[12] Such an acknowledgement should consist of the statement, if factually accurate: "I certify that, to the best of my knowledge and belief, I have complied with the provisions of 8 U.S.C. § 1367." If Section 1367 requirements were not followed, ICE personnel must immediately bring the issue to the attention of their supervisor.
[13] *See, e.g.*, ICE Directive No. 11072.1, Civil Immigration Enforcement Actions Inside Courthouses (Apr. 27, 2021), and Memorandum from Alejandro N. Mayorkas, Secretary of Homeland Security, to Tae D. Johnson, Acting Director, U.S. Immigration and Customs Enforcement, et al., *Guidelines for Enforcement Actions in or Near Protected Areas* (Oct. 27, 2021).

**5.5.    Reporting Violations.** All ICE personnel must report violations as follows:

1)  <u>Non-Disclosure Violation</u>. Non-disclosure violations are reported as, and in the same manner as, privacy incidents. ICE personnel must report any suspected or confirmed unauthorized disclosure of protected Section 1367 information within 24 hours of discovery to the ICE Security Operations Center (SOC) or the IT Help Desk. IGP must notify the Office of the Director, and will also notify the DHS Chief Privacy Officer and CRCL as soon as practicable, but in no event later than 24 hours after discovery of an unauthorized disclosure.

2)  <u>Prohibited Source and/or Specified Location Violation</u>. ICE personnel must report any suspected or confirmed violation of the use of information from a prohibited source and/or failure to properly certify compliance for an enforcement action at a specified location leading to a removal proceeding within 24 hours to their supervisor. Supervisors must report this information to their FRO, who must report it to their HRO. HROs are required to report such violations as soon as practicable to the Office of the Director and ODCR; ODCR will report all prohibited source and specified location violations to CRCL within 24 hours after receiving notification of the violation from the relevant HRO.

**5.6.    Additional Reporting Requirements**. The following additional reporting requirements apply:

1)  <u>Disclosures under the Exceptions</u>: FROs approve disclosures and coordinate appropriately with OPLA, prior to any disclosure, in order to determine if any of the exceptions under Section 5.2 apply. The FRO is required to report to their HRO any authorized disclosures, who must report any authorized disclosures to ODCR. ODCR must report such authorized disclosures to the CRCL on a quarterly basis or upon request.

2)  <u>Enforcement Actions Based on Corroborated Source Information</u>: FROs approve actions based on corroborated source information. If the FRO authorizes such action, the FRO will report the action to their HRO, who will report the action to ODCR. ODCR must report any such actions to CRCL on a quarterly basis or upon request.

3)  <u>Certain Enforcement Actions Taken at Specified Locations</u>: FROs approve, in advance, an enforcement action leading to a removal proceeding against noncitizens with Section 1367 protections at specified locations. If the FRO authorizes such action, the FRO must report the action to their HRO, who will report it to ODCR. ODCR must report any such actions to CRCL on a quarterly basis or upon request.

**6.     Recordkeeping.** All documents created or received by ICE personnel must be maintained in accordance with a National Archives and Records Administration (NARA) General Records Schedule or an applicable DHS or ICE records schedule. If a schedule does not

AR-47

exist that covers the records, they are considered unscheduled. Unscheduled records cannot be destroyed or deleted until a schedule has been developed and approved by NARA.

**7.** **Authorities/References.**

**7.1.** Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002) (codified, as amended, in Title 6, United States Code).

**7.2.** Victims of Trafficking and Violence Protection Act of 2000, Pub. L. No. 106-386, 114 Stat. 1464 (2000).

**7.3.** Violence Against Women Act (VAWA) of 1994, Pub. L. No. 103-322, §§ 40001-40703, 108 Stat. 1796 (1994).

**7.4**. Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, 119 Stat. 2960 (2006).

**7.5.** Violence Against Women Reauthorization Act of 2013, Pub. L. No. 113-4, 127 Stat. 54 (2013).

**7.6.** 8 U.S.C. § 1229(e), Certification of Compliance with Restrictions on Disclosure.

**7.7.** 8 U.S.C. § 1367 (2013), Penalties for Disclosure of Information.

**7.8.** DHS Directive No. 002-02, Rev. No 00.1, Implementation of Section 1367 Information Provisions (Nov. 1, 2013; revised Apr. 29, 2019).

**7.9.** DHS Instruction No. 002-02-001, Rev. No. 00.1, Implementation of Section 1367 Information Provisions (Nov. 7, 2013; revised May 28, 2019).

**7.10.** DHS Directive No. 215-01, Disclosure of Section 1367 Information to National Security Officials for National Security Purposes (Nov. 6, 2013).

**7.11.** DHS Instruction No. 215-01-001, Disclosure of Section 1367 Information to National Security Officials for National Security Purposes (Nov. 7, 2013).

**7.12.** DHS Instruction No. 215-01-002, Disclosure of Section 1367 Information to Law Enforcement Officials for Legitimate Law Enforcement Purposes (Jun. 8, 2016).

**7.13.** DHS Instruction Guide 047-01-008, Privacy Incident Handling Guidance (Dec. 4, 2017).

**7.14.** Memorandum from Alejandro N. Mayorkas, Secretary of Homeland Security, to Tae D. Johnson, Acting Director, U.S. Immigration and Customs Enforcement, et al., *Guidelines for Enforcement Actions in or Near Protected Areas* (Oct. 27, 2021).

**7.15.**  ICE Directive No. 11072.1, Civil Immigration Enforcement Actions Inside Courthouses (Apr. 27, 2021).

**7.16.**  ICE Directive No. 10076.1, Prosecutorial Discretion: Certain Victims, Witnesses, and Plaintiffs (Jun. 17, 2011).

**8.**  **Attachments.** None.

**9.**  **No Private Right.** This Directive provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

Tae D. Johnson
**Acting Director**
**U.S. Immigration and Customs Enforcement**

AR-49



January 20, 2025

MEMORANDUM FOR:     Caleb Vitello
                    Acting Director
                    U.S. Immigration and Customs Enforcement

                    Pete R. Flores
                    Senior Official Performing the Duties of the Commissioner
                    U.S. Customs and Border Protection

FROM:               Benjamine C. Huffman
                    Acting Secretary

SUBJECT:            Enforcement Actions in or Near Protected Areas

---

This memorandum addresses Immigration and Customs Enforcement (ICE) and Customs and
Border Protection (CBP) enforcement actions in or near areas that the Department of Homeland
Security (DHS) previously determined require special protection. It is effective immediately.
This memorandum supersedes and rescinds Alejandro Mayorkas's October 27, 2021
memorandum entitled, Guidelines for Enforcement Actions in or Near Protected Areas.

Our brave men and women in uniform put their lives on the line every day to advance the rule of
law and keep our people safe. As part of that work, officers frequently apply enforcement
discretion to balance a variety of interests, including the degree to which any law enforcement
action occurs in a sensitive location.

Going forward, law enforcement officers should continue to use that discretion along with a
healthy dose of common sense. It is not necessary, however, for the head of the agency to create
bright line rules regarding where our immigration laws are permitted to be enforced. The
Director of ICE and the Commissioner of CBP may wish to issue further guidance to assist
officers in exercising appropriate enforcement discretion.

This memorandum is not intended to, does not, and may not be relied upon to create any right or
benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or
criminal matter.

Policy Number: 11072.3

*Office of the Director*

**U.S. Department of Homeland Security**
500 12ᵗʰ Street, SW
Washington, DC 20536



**U.S. Immigration
and Customs
Enforcement**

MEMORANDUM FOR:     All ICE Employees

FROM:     Caleb Vitello
Acting Director

SUBJECT:     Interim Guidance: Civil Immigration Enforcement Actions
in or near Courthouses

---

Purpose

This memorandum provides interim guidance governing U.S. Immigration and Customs
Enforcement (ICE) civil immigration enforcement actions in or near courthouses. In accordance
with Memorandum from the Acting Secretary of Homeland Security Benjamine Huffman,
*Enforcement Actions in or Near Protected Areas* (Jan. 20, 2025),[1] the April 27, 2021, *Civil
Immigration Enforcement Actions in or near Courthouses* memorandum from Acting ICE
Director Tae Johnson and Acting U.S. Customs and Border Protection Commissioner Troy
Miller is now rescinded for ICE and is superseded by this interim guidance.

This guidance is effective immediately and remains in effect until superseded.

Background

Federal, state, and local law enforcement agencies routinely engage in enforcement activities in
or near courthouses because many individuals appear in courthouses for unrelated criminal or
civil violations. Individuals entering courthouses are typically screened by law enforcement
personnel to search for weapons and other contraband. Accordingly, when ICE engages in civil
immigration enforcement actions in or near courthouses it can reduce safety risks to the public,
targeted alien(s), and ICE officers and agents. Finally, enforcement activities in or near
courthouses are often required when jurisdictions refuse to cooperate with ICE, including when
such jurisdictions refuse to honor immigration detainers and transfer aliens directly to ICE
custody.

---

[1] The Acting Secretary's Memorandum also supersedes and rescinds Alejandro Mayorkas's October 27, 2021
memorandum entitled, *Guidelines for Enforcement Actions in or Near Protected Areas.*

<u>Implementation</u>

For purposes of this guidance, a civil immigration enforcement action is any action taken by an ICE officer or agent to apprehend, arrest, interview, or search an alien in connection with enforcement of administrative immigration violations. This policy does not apply to criminal immigration enforcement actions inside courthouses.

*Aliens Subject to Enforcement Actions*

Generally, ICE's civil immigration enforcement actions in or near courthouses include actions against targeted aliens, including but not limited to:

- National security or public safety threats;
- Specific aliens with criminal convictions;
- Gang members;
- Aliens who have been ordered removed from the United States but have failed to depart; and/or
- Aliens who have re-entered the country illegally after being removed.

Other aliens encountered during a civil immigration enforcement action in or near a courthouse, such as family members or friends accompanying the target alien to court appearances or serving as a witness in a proceeding, may be subject to civil immigration enforcement action on a case-by-case basis considering the totality of the circumstances.[2]

*Procedures*

ICE officers or agents may conduct civil immigration enforcement actions in or near courthouses when they have credible information that leads them to believe the targeted alien(s) is or will be present at a specific location, and where such action is not precluded by laws imposed by the jurisdiction in which the enforcement action will take place. ICE officers or agents must coordinate with the relevant local Office of the Principal Legal Advisor (OPLA) office before conducting enforcement actions in or near courthouses to determine whether jurisdiction-specific legal limitations apply.

Additionally, civil immigration enforcement actions in or near courthouses should, to the extent practicable, continue to take place in non-public areas of the courthouse, be conducted in collaboration with court security staff, and utilize the court building's non-public entrances and exits. When practicable, ICE officers and agents will conduct civil immigration enforcement actions against targeted aliens discreetly to minimize their impact on court proceedings.

---

[2] ICE officers and agents will make enforcement determinations on a case-by-case basis in accordance with federal law and consistent with U.S. Department of Homeland Security and ICE policy.

*Non-Criminal or Specialized Courts*

ICE officers and agents should generally avoid enforcement actions in or near courthouses, or areas within courthouses that are wholly dedicated to non-criminal proceedings (e.g., family court, small claims court). When an enforcement action in the above situations is operationally necessary, the approval of the respective Field Office Director (FOD), Special Agent in Charge (SAC), or his or her designee is required prior to conducting the enforcement action.

*Responsibilities*

Each FOD or SAC, in consultation with OPLA, must ensure that all employees under their supervision comply with this policy by providing guidance to officers and agents on the approval process and procedures for civil immigration enforcement actions in or near courthouses within their area of responsibility. This includes ensuring all civil immigration enforcement actions in or near courthouses are properly documented[3] and recorded in the applicable ICE system of record, which can be searched and validated.

As with any planned enforcement action, ICE officers and agents should exercise sound judgment when enforcing federal law and make substantial efforts to avoid unnecessarily alarming the public or disrupting court operations. ICE officers and agents will make every effort to limit their time at courthouses while conducting civil immigration enforcement actions.

<u>No Private Right</u>

This memorandum provides only internal ICE policy guidance, which may be modified, rescinded, or superseded at any time without notice. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter. Likewise, no limitations are placed by this guidance on the otherwise lawful enforcement or litigative prerogatives of ICE.

---

[3] ICE officers and agents will document the physical address of planned civil immigration enforcement actions in accordance with standard procedures for completing operational plans, noting that the target address is a courthouse.

# Issuance of Interim Policy Guidance for Civil Immigration Enforcement Actions in or near Courthouses

🕐 1/21/2025    👥 To all ICE Employees

On January 21, 2025, I signed an interim policy guidance memorandum entitled _Civil Immigration Enforcement Actions in or near Courthouses_. In accordance with Memorandum from the Acting Secretary of Homeland Security Benjamine Huffman, _Enforcement Actions in or Near Protected Areas_ (Jan. 20, 2025), the April 27, 2021, _Civil Immigration Enforcement Actions in or near Courthouses_ memorandum from Acting ICE Director Tae Johnson and Acting U.S. Customs and Border Protection Commissioner Troy Miller is now rescinded for ICE and is superseded by this interim guidance.

The interim guidance is effective immediately and remains in effect until superseded. ICE officers or agents may conduct civil immigration enforcement actions in or near courthouses when they have credible information that leads them to believe the targeted alien(s) is or will be present at a specific location, and where such action is not precluded by laws imposed by the jurisdiction in which the enforcement action will take place. A civil immigration enforcement action is any action taken by an ICE officer or agent to apprehend, arrest, interview, or search an alien in connection with enforcement of administrative immigration violations. ICE officers or agents must coordinate with the relevant local Office of the Principal Legal Advisor (OPLA) office before conducting civil enforcement actions in or near courthouses to determine whether jurisdiction-specific legal limitations apply.

Additionally, civil immigration enforcement actions in or near courthouses should, to the extent practicable, continue to take place in non-public areas of the courthouse, be conducted in collaboration with court security staff, and utilize the court building's non-public entrances and exits. When practicable, ICE officers and agents will conduct civil immigration enforcement actions against targeted aliens discreetly to minimize their impact on court proceedings.

ICE officers and agents should generally avoid enforcement actions in or near courthouses, or areas within courthouses, that are wholly dedicated to non criminal proceedings (e.g., family court, small claims court). When an enforcement action in

the above situations is operationally necessary, the approval of the respective Field Office Director (FOD), Special Agent in Charge (SAC), or his or her designee is required prior to conducting the enforcement action.

I encourage all ICE employees in receipt of this guidance to review it and consult with their supervisory chain of command with questions, and for supervisors to consult with their senior leadership, the ICE Office of the Principal Legal Advisor, and the ICE Office of Regulatory Affairs and Policy as needed through their chain of command and Directorate or Program Office leadership.

Thank you for your continued commitment and perseverance.


Caleb Vitello
Acting Director
U.S. Immigration and Customs Enforcement

**Attachment:**

- [Interim Guidance: Civil Immigration Enforcement Actions in or Near Courthouses](#)