Mark L. Hejinian (SBN 281417)
ef-mlh@cpdb.com
Marcia V. Valente (SBN 321852)
ef-mvv@cpdb.com
David C. Beach (SBN 226972)
ef-dcb@cpdb.com
Charmaine G. Yu (SBN 220579)
ef-cgy@cpdb.com
Evan G. Campbell (SBN 342223)
ef-egc@cpdb.com
Darien Lo (SBN 347244)
ef-dxl@cpdb.com
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA  94104
Telephone: (415) 391-4800

Neil K. Sawhney (SBN 300130)
nsawhney@aclunc.org
Lauren M. Davis (SBN 357292)
ldavis@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

Marissa Hatton (SBN 348678)
mhatton@lccrsf.org
Andrew Ntim (SBN 347084)
antim@lccrsf.org
Jordan Wells (SBN 326491)
jwells@lccrsf.org
Nisha Kashyap (SBN 301934)
nkashyap@lccrsf.org
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9444

Laura Victoria Sanchez (SBN 253736)
laura@carecensf.org
Tala Berardi Hartsough (SBN 230204)
tala@carecensf.org
CARECEN SF
3101 Mission Street, Suite 101
San Francisco, CA  94110
Telephone: (415) 642-4402

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CARMEN ARACELY PABLO SEQUEN, YULISA ALVARADO AMBROCIO, and LIGIA GARCIA,<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO ALBARRAN, MARCOS CHARLES, THOMAS GILES, MONICA BURKE, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY, TODD M. LYONS, SIRCE E. OWEN, PAMELA BONDI, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION AND REVIEW, UNITED STATES OF AMERICA<br><br>Defendants. | Case No. 5:25-CV-06487-PCP-NC<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**<br><br>[*Filed concurrently with Request for Judicial Notice in support of Notice of Motion for Partial Summary Judgment (12H Waiver and Courthouse Arrests)*]<br><br>Judge: Hon. P. Casey Pitts<br>Date:  N/A<br>Time:  N/A<br>Crtrm.: 8<br><br>Trial Date:        None Set |

008561.0134 4935-3316-4939.6

Case No. 5:25-CV-06487-PCP-NC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................3

INTRODUCTION......................................................................................................................3

BACKGROUND.........................................................................................................................4

LEGAL STANDARD .................................................................................................................6

ARGUMENT ..............................................................................................................................6

    I.    The 12-Hour Waiver Memo is Reviewable Under the APA ....................................6

        A.    The 12-Hour Waiver Memo is Final Agency Action.....................................6

        B.    The 12-Hour Waiver Memo is Not Committed to Agency Discretion by Law ..........................................................................................................7

        C.    Plaintiffs Do Not Have Another Adequate Remedy ....................................9

    II.    The 12-Hour Waiver Memo is Arbitrary and Capricious .........................................9

        A.    The 12-Hour Waiver Memo Fails to Consider Existing Alternatives..........10

        B.    The 12-Hour Waiver Memo is Internally Inconsistent ................................14

        C.    The 12-Hour Waiver Memo Fails to Consider the Constitutional and Humanitarian Consequences of Extending Detention in Holding Facilities, or Compliance with Other Long-term Detention Policies...........14

    III.    The 12-Hour Waiver Memo is Not in Accordance with Law.................................17

    IV.    The 12-Hour Waiver Memo Should Be Vacated....................................................17

CONCLUSION ........................................................................................................................19

008561.0134 4935-3316-4939.6

i

Case No. 5:25-CV-06487-PCP-NC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. U. S. Forest Serv.*,
907 F.3d 1105 (9th Cir. 2018) ............................................................................................... 17

*Alliance for the Wild Rockies v. Petrick*,
68 F.4th 475 (9th Cir. 2023) .................................................................................................... 9

*Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*,
926 F.3d 1061 (9th Cir. 2019) ................................................................................................. 9

*Am. Wild Horse Pres. Campaign v. Perdue*,
873 F.3d 914 (D.C. Cir. 2017) ................................................................................................ 9

*Bautista v. Santacruz*,
No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025) .................... 17

*Biden v. Texas*,
597 U.S. 785 (2022) ................................................................................................................. 7

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ................................................................................................................. 8

*California v. Ross*,
362 F. Supp. 3d 727 (N.D. Cal. 2015) ..................................................................................... 7

*Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*,
524 F. Supp. 3d 919 (N.D. Cal. 2021) ................................................................................. 9, 10

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) ................................................................................................................. 7

*Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*,
137 F.4th 932 (9th Cir. 2025) .................................................................................................. 7

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*,
603 U.S. 799 (2024) ............................................................................................................... 17

*Ctr. for Biological Diversity v. Haaland*,
998 F.3d 1061 (9th Cir. 2021) ............................................................................................... 11

*Demirel v. Fed. Det. Ct. Philadelphia*,
No. 25-5488, 2025 WL 3218243 (E.D. Pa. Nov. 18, 2025) .................................................. 12

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ................................................................................................ 7, 10, 12, 13

*Encino Motorcars, LLC v. Navarro*,
   579 U.S. 211 (2016) ................................................................................................ 9, 13

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ...................................................................................................... 9

*Garro Pinchi v. Noem*,
   5:25-CV-05632-PCP, ECF No. 88 ............................................................................... 15

*Heckler v. Chaney*,
   470 U.S. 821 (1985) ...................................................................................................... 8

*Immigrant Defs. L. Ctr. v. Noem*,
   145 F.4th 972 (9th Cir. 2025) ..................................................................................... 13

*Kapa'a v. Trump*,
   794 F. Supp. 3d 793 (D. Haw. 2025) .......................................................................... 17

*Kidd v. Mayorkas*,
   734 F. Supp. 3d 967 (C.D. Cal. 2024) ........................................................................ 16

*Lincoln v. Vigil*,
   508 U.S. 182 (1993) ...................................................................................................... 7

*Mercado v. Noem*,
   No. 25-CV-6568 (LAK), 2025 WL 2658779 (S.D.N.Y. Sept. 17, 2025) ................ 14, 16

*Mont. Wildlife Fed'n v. Haaland*,
   127 F.4th 1 (9th Cir. 2025) ......................................................................................... 17

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983) ................................................................................... 9, 12, 13, 15

*Nat'l Parks Conservation Ass'n v. E.P.A.*,
   788 F.3d 1134 (9th Cir. 2015) .................................................................................... 13

*Nat'l Urb. League v. Ross*,
   489 F. Supp. 3d 939 (N.D. Cal. 2020), *order clarified*, *Nat'l Urb. League v. Ross*, 491 F. Supp. 3d 572 (N.D. Cal. 2020) ............................................................................................. 14

*New York v. United States Dep't of Energy*,
   No. 6:25-CV-01458-MTK, 2025 WL 3140578 (D. Or. Nov. 10, 2025) ..................... 17

*Ohio v. Envt'l Prot. Agency*,
   603 U.S. 279 (2024) .................................................................................................... 13

*Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*,
   625 F.3d 1092 (9th Cir. 2010) .................................................................................... 11

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

008561.0134 4935-3316-4939.6                    iii                    Case No. 5:25-CV-06487-PCP-NC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

*Perdomo v. Noem*,
    No. 2:25-CV-05605-MEMF-SP, 2025 WL 3192939 (C.D. Cal. Nov. 13, 2025).................. 14

*Pinnacle Armor, Inc. v. United States*,
    648 F.3d 708 (9th Cir. 2011).................................................................................................. 7

*Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*,
    128 F.4th 1089 (9th Cir. 2025)............................................................................................... 6

*Rhode Island v. Trump*,
    No. 1:25-CV-128-JJM-AEM, 2025 WL 3251113 (D.R.I. Nov. 21, 2025)............................ 17

*Scholl v. Mnuchin*,
    494 F. Supp. 3d 661 (N.D. Cal. 2020) .................................................................................. 5

*Thompson v. City of Los Angeles*,
    885 F.2d 1439 (9th Cir. 1989), *overruled on other grounds by Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010)....................................................................................... 14

*Torres v. United States Dep't of Homeland Sec.*,
    411 F. Supp. 3d 1036 (C.D. Cal. 2019)............................................................................. 6, 12

**Statutes & Rules**

5 U.S.C.
    § 551(13) .............................................................................................................................. 5
    § 701(a)(2)............................................................................................................................ 7
    § 704.................................................................................................................................. 5, 8
    § 706.......................................................................................................................... 1, 16, 17
    § 706(2)(A)................................................................................................................*passim*
    § 706(2)(B) ......................................................................................................................... 16
    §§ 706(2)(B)-(D) ................................................................................................................ 16

Fed. R. Civ. P.
    56 ........................................................................................................................... 1, 16, 17

**Other Authorities**

Fifth Amendment ......................................................................................................................... 1, 7

*Jonathan R. Siegel, Admin. Conf. of the U.S., Sourcebook of Federal Judicial Review Statutes*
    (Mar. 17, 2021) at 15......................................................................................................... 16

*Set Aside*, Black's Law Dictionary (12th ed. 2024)...................................................................... 17

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
(12H WAIVER)**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

Plaintiff Ligia Garia, on behalf of herself and the Detention Class, (the "Plaintiffs") hereby move this Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 and the Administrative Procedure Act, 5 U.S.C. § 706.[1]

Plaintiffs seek an order holding unlawful and setting aside Immigration and Customs Enforcement's June 24, 2025, Memorandum titled **"Nationwide Hold Room Waiver"** (the "12-Hour Waiver Memo"), which purports to waive ICE's longstanding twelve-hour limit on detention in holding facilities and authorizes detention in hold rooms for up to seventy-two hours.

First, Plaintiffs seek summary judgment on their claim that the 12-Hour Waiver Memo is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) because ICE issued it without reasoned decision making, without considering alternatives, without addressing conflicts with existing ICE detention standards, and without considering the constitutional and humanitarian consequences of prolonged detention in facilities not designed or equipped for overnight or multi-day confinement.

Second, Plaintiffs seek summary judgment on their claim that the 12-Hour Waiver Memo is not in accordance with law in violation of 5 U.S.C. § 706(2)(A) because it necessarily results in unconstitutional conditions of confinement, including forced floor-sleeping and deprivation of basic necessities, in violation of the Fifth Amendment.

Plaintiffs respectfully request that the Court vacate the 12-Hour Waiver Memo in full.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the administrative record, all pleadings and papers on file in this action, any matters of which the Court may take judicial notice, and any other matters the Court deems proper.

/ / /

/ / /

/ / /

---

[1] The parties have stipulated to forego oral argument. *See* ECF No. 168.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

DATED:  January 29, 2026

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

By:      /s/ Marissa Hatton
MARISSA HATTON
ANDREW NTIM
JORDAN WELLS
NISHA KASHYAP
Attorneys for Plaintiffs

DATED:  January 29, 2026

CARECEN SF

By:      /s/ Laura Victoria Sanchez
LAURA VICTORIA SANCHEZ
TALA BERARDI HARTSOUGH
Attorneys for Plaintiffs

DATED:  January 29, 2026

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA

By:      /s/ Neil K. Sawhney
NEIL K. SAWHNEY
LAUREN M. DAVIS
Attorneys for Plaintiffs

DATED:  January 29, 2026

COBLENTZ PATCH DUFFY & BASS LLP

By:      /s/ Mark Hejinian
MARK L. HEJINIAN
MARK L. HEJINIAN
MARCIA V. VALENTE
DAVID C. BEACH
CHARMAINE G. YU
EVAN G. CAMPBELL
DARIEN LO
Attorneys for Plaintiffs

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Defendant Immigration and Customs Enforcement ("ICE") upended decades-long policy and violated the Administrative Procedure Act when it arbitrarily extended the length of time people could be detained in its short-term holding facilities from twelve hours to three days. For years, ICE policies expressly limited detention in hold rooms to twelve hours, instructing field offices to empty hold rooms at the end of each day and barring the use of beds, bedding, or any other sleeping apparatus in hold rooms. ICE itself has acknowledged that its hold rooms are neither intended nor equipped for longer-term detention. Nevertheless, in June 2025, ICE issued a Memorandum titled "Nationwide Hold Room Waiver," waiving this longstanding twelve-hour limit in *one* of ICE's detention policies. As a result, ICE has held countless individuals for days in barebones holding cells which lack the equipment or facilities necessary to meet detained individuals' basic human needs.

The 12-Hour Waiver Memo must be vacated in full because it is arbitrary and capricious and not in accordance with the law. ICE issued the 12-Hour Waiver Memo without (i) considering any alternatives to holding people for days in rooms not designed or equipped for that purpose, (ii) identifying, let alone reconciling, the facial inconsistencies the 12-Hour Waiver Memo creates with other existing ICE detention policies; or (iii) acknowledging or planning for the constitutional and humanitarian consequences of overnight and multi-day detention in rooms meant to be used for less than twelve hours. The 12-Hour Waiver Memo also is contrary to law because it necessarily creates unconstitutional conditions of confinement; individuals are held overnight in rooms where ICE prohibits the use of beds or bedding, resulting in forced floor-sleeping in violation of individuals' due process rights.

As set forth in Plaintiffs' contemporaneously-filed motion for final class certification, Plaintiff Ligia Garcia seeks to represent a Detention Class consisting of all persons who are now or will be detained in a holding cell in ICE's San Francisco Field Office, a class which the Court previously provisionally certified with Ms. Garcia as a provisional class representative. Plaintiffs respectfully request an order fully vacating the 12-Hour Waiver Memo.

008561.0134 4935-3316-4939.6

3

Case No. 5:25-CV-06487-PCP-NC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

## BACKGROUND

Defendant ICE maintains "Holding Facilit[ies]" with "Hold Rooms" in which ICE places "individuals awaiting removal, transfer, EOIR [immigration court] hearings, medical treatment, intra-facility movement, or other processing into or out of the facility." *See* ECF No. 65-1 § 2.6(I), at 16. Pursuant to ICE's detention standards, the 2011 Performance-Based National Detention Standards ("2011 PBNDS"), "[n]o detainee shall be confined in a Hold Room for more than 12 hours." *Id.* at § 2.6(II)(2). To that end, ICE's detention standards preclude ICE from putting beds or mattresses in hold rooms. *Id.* at § 2.6(V)(A)(5) ("Bunks, cots, beds and other sleeping apparatus are not permitted inside Hold Rooms.").

These requirements date back to ICE's inception. "When [ICE] was formed, the agency operated its detention system under a set of National Detention Standards (NDS) that had been issued in September 2000."[2] These 2000 NDS state that "the maximum aggregate time an individual may be held in a hold room is 12 hours," and prohibit "bunks/cots/beds and other makeshift sleeping apparatus" in hold rooms.[3]

Consistent with the 2011 PBNDS, on September 22, 2014, ICE's Office of Enforcement and Removal Operations ("ERO") issued Policy No. 11087.1, which also limited use of holding facilities to 12-hours or less, "[a]bsent exceptional circumstances." ECF No. 65-2 § 4.1(2)(a). Ten years later, on January 31, 2024, ERO published Policy No. 11087.2, "Operations of ERO Holding Facilities," ("11087.2") AR-12.[4] Like its predecessor, Policy No. 11087.2 limits use of holding facilities to 12 hours or less. In relevant part, Policy 11087.2 states that a holding facility contains hold rooms[5] that are primarily used for "short-term confinement." AR-13. "Short-term is defined as a period not to exceed 12 hours, absent exceptional circumstances." AR-13 n.3. Policy

---

[2] Pltf's Req. for Judicial Notice, Ex. A.

[3] Pltf's Req. for Judicial Notice, Ex. B.

[4] All references to "AR" are to the administrative record filed by Defendants. *See* ECF No. 145.

[5] Policy No. 11087.2 defines a "Hold Room" to mean "[a] holding cell, cell block, or other secure enclosure within a holding facility." AR-13.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

11087.2 also states that "no detainee should be housed in a holding facility for longer than 12 hours," and instructs ERO officers to "empty holding facilities upon the conclusion of daily operations[.]" AR-18.

In the midst of the Trump Administration's mass immigration arrest and detention campaign, on June 24, 2025, ICE issued a Memorandum titled "Nationwide Hold Room Waiver," suspending section 5.1 of Directive 11087.2, which limited holding facility detention to twelve hours. AR-1. The 12-Hour Waiver Memo allows ICE to detain immigrants in holding facilities "for up to, but not exceeding, 72 hours, absent exceptional circumstances." AR-2. The waiver applies to "all holding facilities operated by ERO, located in ERO field offices, or jointly operated by ERO and Homeland Security Investigations (HSI) in shared offices" AR-1 n1. The waiver is "effective immediately." *Id.*

The 12-Hour Waiver Memo contains only three paragraphs of discussion. The Memo references President Trump's executive orders issued on January 20, 2025, and states:

"As a result of increased enforcement efforts, ERO's average daily population has significantly increased to over 54,000. This increase has put additional strain on finding and coordinating transfers of aliens to available beds within the required timeline detailed in Directive 11087.2. Further, ERO field offices no longer have the option to discretionarily release aliens, nor decline to take aliens into custody from our counterparts in Homeland Security Investigations (HSI) or U.S. Customs and Border Protection (CBP). **As a result of these constraints, ERO field offices have had to resort to holding aliens in holding facilities beyond than the 12-hour limit.**"

AR-2 (emphasis added). The 12-Hour Waiver Memo does not include operational guidance to field offices regarding what changes may need to be made to holding facilities to prepare them for long-term use. Nor does it address the conflict created between the 12-Hour Waiver Memo—which extends detention time up to seventy-two hours—and ICE's own governing detention standards and decades-long policies, which expressly prohibit overnight detention and detention of more than twelve hours in holding facilities. Instead, it makes the cursory statement that "[a]ll other Hold Room and hold facilities requirements continue to apply." *Id.* Because all other requirements continue to apply, ICE continues to bar the use of beds, bedding, and other sleeping apparatus in hold rooms, necessarily leading to inhumane and unconstitutional conditions of

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

confinement. *See* ECF No. 65-1 § 2.6(V)(A)(5), at 17.

## LEGAL STANDARD

The APA authorizes district courts to review final agency action. 5 U.S.C. § 704. A court must set aside an agency's final action if the action was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

"A motion for summary judgment may be used to seek judicial review of agency administrative decisions within the limitations of the APA." *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 672 (N.D. Cal. 2020) (*citing Nw. Motorcycle Ass'n v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). "Generally, the court should grant a motion for summary judgment if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (*citing* Fed. R. Civ. P. 56(a)). "Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Gill v. Dep't of Just.*, 246 F. Supp. 3d 1264, 1268 (N.D. Cal. 2017), *aff'd sub nom. Gill v. United States Dep't of Just.*, 913 F.3d 1179 (9th Cir. 2019) (*quoting Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769–70 (9th Cir. 1985)). "[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether the agency could reasonably have found the facts as it did." *Scholl*, 494 F. Supp. 3d at 673 (*citing Occidental Eng'g Co.*, 753 F.2d at 770)).

## ARGUMENT

### I.    The 12-Hour Waiver Memo is Reviewable Under the APA

#### A.    The 12-Hour Waiver Memo is Final Agency Action

The APA defines "agency action" as "the whole or a part of an agency rule, order . . . or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). The statutory definition of an agency rule is "broad," and "encompasses 'the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency.'" *Prutehi Litekyan: Save Ritidian v. United States Dep't of Airforce*, 128 F.4th 1089, 1107 (9th Cir.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500 · 415.391.4800 · Fax 415.989.1663

2025) ("*Prutehi Litekyan*") (citing 5 U.S.C. § 551(4)). "The definition of [agency] rule includes nearly every statement an agency may make." *Id.* (citation omitted).

The 12-Hour Waiver Memo plainly constitutes agency action as defined by the APA. It is a formal written statement issued by ICE's Assistant Director of Custody Management, "effective immediately" for one calendar year, applies to all ERO Holding Facilities "nationwide," and prescribes a policy whereby individuals may be held in ICE holding facilities for up to 72 hours, expressly abrogating a portion of a current policy. AR-1.

For agency action to be final, "two conditions must be satisfied. . . . First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Prutehi Litekyan*, 128 F. 4th at 1108 (citations omitted). "[S]econd, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (citations omitted). To determine if an agency's action is final, the Ninth Circuit "look[s] to factors such as whether the action amounts to a definitive statement of the agency's position, whether it has a direct and immediate effect on the day-to-day operations of the subject party, and if immediate compliance . . . is expected." *Id.* (citations omitted). The "finality element" is interpreted "in a pragmatic and flexible manner," with an emphasis on "the practical and legal effects of the agency action." *Id.* (citation omitted).

The 12-Hour Waiver Memo is final agency action. It was "effective immediately" nationwide upon issuance and directly impacted the day-to-day operations of the agency, allowing ICE to substantially increase the length of immigrants' detention in holding facilities. This undoubtedly resulted in practical and legal consequences for immigrants detained for more than 12 hours in ICE holding facilities. *See Torres v. United States Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1069 (C.D. Cal. 2019) ("The Court assumes that the rights of detainees and obligations of detention contract facilities would flow from any agency action regarding detention standards compliance and enforcement."); *see also* ECF No. 155 at 14 (noting that agency action is final where agency began concretely implementing it).

## B.   The 12-Hour Waiver Memo is Not Committed to Agency Discretion by Law

Judicial review of the 12-Hour Waiver Memo is not subject to the narrow exception in

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

section 701(a)(2). In general, there is a "strong presumption that Congress intends judicial review of administrative action." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 718 (9th Cir. 2011) (citation omitted). Accordingly, Section 701(a)(2)'s bar on judicial review of agency action "committed to agency discretion by law" is a "very narrow exception." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971); *cf. Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) (explaining § 701(a)(2) applies in "rare circumstances" where "a court would have no meaningful standard against which to judge the agency's exercise of discretion") (*citing Heckler v. Chaney*, 470 U.S. 821, 830 (1985)).

Courts may look both to the Constitution and to "regulations, established agency policies, or judicial decisions" for a meaningful standard for judicial review. *California v. Ross*, 362 F. Supp. 3d 727, 745 (N.D. Cal. 2015) (citing *Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 868 (9th Cir. 2003)); *accord Pinnacle Armor Inc., 648 F.3d at 719.* Courts regularly and uniformly have held that agency policies governing discretion in the immigration context are subject to APA review. *See, e.g.*, *Biden v. Texas*, 597 U.S. 785, 798–807 (2022); *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 17–19 (2020). "Review is prohibited only where there is truly no law to apply." *Cmty. Legal Servs. in E. Palo Alto v. United States Dep't of Health & Hum. Servs.*, 137 F.4th 932, 942 (9th Cir. 2025) (citation omitted).

Here, there are meaningful standards for judicial review of the 12-Hour Waiver Memo. The Fifth Amendment and judicial decisions applying it to conditions of confinement, as well as ICE's own detention policies (e.g., 2011 PBNDS and Policy 11807.2), set standards against which the Court may assess the 12-Hour Waiver Memo. *See* ECF No. 155 at 16 (concluding that prior policies can provide a benchmark against which to measure agency action). Accordingly, the 12-Hour Waiver Memo does not present the rare circumstance where "there is truly no law to apply." *See Cmty. Legal Servs. in E. Palo Alto*, 137 F.4th at 942 (citation omitted).

Defendants have previously argued that the 12-Hour Waiver Memo is unreviewable because it "is operational guidance that confers [Defendants] with discretion about how long to detain an alien." ECF No. 130 at 12. But that misunderstands the challenge here. Plaintiffs do not challenge any individualized decision to detain a particular individual for a certain period of time

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

008561.0134 4935-3316-4939.6                                                8                                       Case No. 5:25-CV-06487-PCP-NC

within 12 hours, a decision which is the result of "a complicated balancing of a number of factors which are peculiarly within [Defendants'] expertise." *Heckler, 470 U.S. at 831.* Plaintiffs instead challenge the decision to waive the 12-hour limit on temporary detention that had previously been the policy under ICE's own detention policies (e.g., 2011 PBNDS and Policy 11807.2). As explained, there are meaningful standards for judicial review of that agency decision to fundamentally change the outer temporal limits of temporary detention in hold rooms.

### C.     Plaintiffs Do Not Have Another Adequate Remedy

Judicial review of the 12-Hour Waiver Memo is permissible because plaintiffs do not have another adequate remedy under the law. Although section 704 of the APA limits judicial review to agency actions "for which there is no adequate remedy in a court," 5 U.S.C. § 704, the Supreme Court has stressed that section 704 "should not be construed to defeat the [APA's] central purpose of providing a broad spectrum of judicial review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). As explained in *Bowen v. Massachusetts*, the availability of other traditional remedies does not preclude judicial review under the APA. *See id.* at 904–05. Instead, where Congress created *specific* procedures for review of *specific* agency actions pursuant to a statute other than the APA, APA review is barred because it duplicates that process. *See id.*

There are no specific statutory processes or remedy that would apply here. Thus, as the Court previously concluded, there is no risk that "a legal remedy under the APA would impermissibly provide for duplicative review" of the 12-Hour Waiver Memo. ECF No. 158 at 17 (citing *Hyatt v. Off. of Mgmt. & Budget*, 908 F.3d 1165, 1173 (9th Cir. 2018) (quoting *City of Oakland v. Lynch*, 798 F.3d 1159, 1165 (9th Cir. 2015))).

## II.     The 12-Hour Waiver Memo is Arbitrary and Capricious

The APA requires courts to "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A). "[T]he touchstone of arbitrary and capricious review under the APA is reasoned decisionmaking." *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (citation omitted). "[A]n agency's action can only survive arbitrary or capricious review where it has 'articulate[d] a satisfactory explanation for its

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · Fax 415.989.1663

action including a 'rational connection between the facts found and the choice made.'" *Alliance for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023). "To be regarded as rational, an agency must also consider significant alternatives to the course it ultimately chooses." *Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.*, 524 F. Supp. 3d 919, 963 (N.D. Cal. 2021) (citing *Allied Local & Reg'l Mfrs. Caucus v. EPA*, 215 F.3d 61, 80 (D.C. Cir. 2000)).

Further, where an agency changes its previous position—including when it "abandons [a] decades-old practice"—it must (1) "display awareness that it is changing position," (2) "show that there are good reasons for the new policy," and (3) balance those good reasons against "engendered serious reliance interests." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 218, 221–22 (2016); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (alteration to prior agency position can require "more detailed justification than what would suffice for a new policy created on a blank slate"); *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017) ("A central principle of administrative law is that, when an agency decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it.").

Finally, even where an agency has explained its change in position, its action can be arbitrary and capricious when the agency has "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (citation omitted). To engage in "reasoned decisionmaking," agencies must "look at the costs as well as the benefits" of their actions. *Id.* at 52–54.

The 12-Hour Waiver Memo is an arbitrary and capricious change in policy because it (1) fails to consider existing alternatives; (2) is inconsistent with other ICE policies it expressly leaves in place; (3) entirely failed to consider important aspects of the problem or the humanitarian costs of ICE's actions, and therefore does not represent reasoned decision-making.

### A.    The 12-Hour Waiver Memo Fails to Consider Existing Alternatives

The 12-Hour Waiver Memo is arbitrary and capricious because it fails to consider alternatives within existing ICE policy to address detention capacity issues. When changing existing policy, an agency decision is arbitrary and capricious if it fails to consider alternatives that

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

preserve the status quo, including those "within the ambit of the existing policy." *Dep't of Homeland Sec.*, 591 U.S. at 30 (DHS memo violated the APA when it rescinded the Deferred Action for Childhood Arrivals program based on its provisions of federal benefits, as the "memorandum contain[ed] no discussion of forbearance [of deportation] or the option of retaining forbearance without benefits. [DHS Secretary] Duke entirely failed to consider that important aspect of the problem. That omission alone renders Acting Secretary Duke's decision arbitrary and capricious.") (citation omitted); *see also See Centro Legal de la Raza*, 524 F. Supp. 3d at 963 ("To be regarded as rational, an agency must also consider significant alternatives to the course it ultimately chooses.") (citation omitted).

The administrative record makes clear that ICE did not consider *any* existing alternatives to alleviate overcrowding, including discretionarily releasing immigrants, declining custody from HSI and CBP, releasing low-risk immigrants on ICE's Alternatives to Detention ("ATD") programs or otherwise simply not arresting more immigrants than ICE can detain in its long-term detention facilities. Here, in most cases, the government has previously determined that the class members were not a danger to the community or a flight risk, and were therefore appropriate for Release on Recognizance or the heightened requirements of an Order of Supervision. Therefore, many, if not all, of the class members would be well-suited to various ATD programs. Their temporary release under these programs would ease the burden on ICE detention facilities that are over capacity. As this Court previously observed, "it was clearly 'within the ambit' of ICE's prior 12-hour-limit on hold-room detention to manage capacity issues in detention facilities using other means, whether by taking fewer noncitizens into custody or by releasing noncitizens who could not be processed out of hold rooms within 12 hours." ECF No. 158 at 19.

The 12-Hour Waiver Memo plainly states that overcrowding in detention centers—and thus the need for extended detention in short-term holding facilities—derives from ICE's self-imposed decision not to exercise its own enforcement discretion. The Memo states, without elaboration, that "ERO field offices no longer have the option to discretionarily release aliens, nor decline to take aliens into custody from our counterparts in Homeland Security Investigations (HSI) or U.S. Customs and Border Protection (CBP). As a result of these constraints, ERO field

008561.0134 4935-3316-4939.6

11

Case No. 5:25-CV-06487-PCP-NC

offices have had to resort to holding aliens in holding facilities beyond than the 12-hour limit." AR-2. This language in the 12-Hour Waiver Memo parrots the conclusory justification proffered by the Acting Field Office Director of ERO New York City (ERO NYC) when ERO NYC sought a waiver of the 12-hour hold room limit on February 20, 2025. *See* AR-40 ("ERO NYC, as with every AOR, no longer has the option to discretionarily release aliens, nor decline to take aliens into custody from our counterparts in HSI or CBP rather, under current directives, must temporarily house such individuals or [sic] hours or days, awaiting a determination from the acting ICE director."). Notably, neither the 12-Hour Waiver Memo itself nor the ERO NYC waiver request submitted four months earlier offers any explanation or cites any source for *why* ICE no longer may discretionarily release individuals or decline to take custody of individuals from HSI or CBP. Indeed, *nothing* in the administrative record actually limits ICE's discretion in this manner.

Although neither the 12-Hour Waiver Memo nor its administrative record identifies the source of the purported lack of discretion to release immigrants, Defendants have argued that the January 2025 Executive Orders ("EOs") foreclose discretionary release as an alternative. *See* ECF No. 106 at 31. This argument fails for multiple reasons.

First, neither the 12-Hour Waiver Memo itself nor its administrative record—including the prior waiver requests sought by ERO officers throughout the country—state that the EOs ban discretionary release. "[C]ourts may not accept . . . *post hoc* rationalizations for agency action." *Or. Nat. Desert Ass'n v. Bureau of Land Mgmt.*, 625 F.3d 1092, 1120 (9th Cir. 2010) (citation omitted); *see also Ctr. for Biological Diversity v. Haaland*, 998 F.3d 1061, 1068 (9th Cir. 2021) ("[A]n agency must provide its 'reasoned explanation' in a form that can adequately be examined on judicial review, not simply present arguments in its briefing how the decision might have been reached."). Thus, Defendants' "belated justifications" are insufficient; "[a]n agency must defend its actions based on the reasons it gave when it acted." *Dep't of Homeland Sec.*, 591 U.S. at 23–24.

Second, the EOs do not in fact ban discretionary release or purport to place limitations on the discretion of ERO offices to safely manage their daily detention capacity. The EOs urge

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

mandatory detention of immigrants until they are deported *only* "to the maximum extent authorized by law." AR-9; *see also* AR-5, 10. Accordingly, by the express terms of the EOs, mandatory detention is subject to legal constraints. The Constitution places well-established legal limits on the conditions of confinement, including civil immigration detention. Further, this Court and *hundreds* of other decisions have rejected the government's arguments in favor of mass mandatory detention. ECF No. 90 at 14 (collecting cases); *Demirel v. Fed. Det. Ct. Philadelphia*, No. 25-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025) (noting that, at the time of decision, "there [were] 288 district court decisions addressing the issue. In all but six, the Government's interpretation of the INA . . . was rejected.").

Nevertheless, in issuing the 12-Hour Waiver, ICE did not first undertake any assessment as to the lawful scope of the EOs' mandatory detention provisions or the impact that existing legal constraints have on the EOs' mandatory detention provisions. Instead in February and again in June, ICE simply assumed—without basis—that it no longer had *any* option to discretionarily release *anyone*. ICE thus "did not appear to appreciate"—or even consider—"the full scope of [its] discretion." *Dep't of Homeland Sec.*, 591 U.S. at 26; *see also State Farm*, 463 U.S. at 42–43 (holding that agency must consider relevant factors and "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.") (citation omitted).

Third, even if the EOs discourage discretionary release, they do not foreclose other existing alternatives, like simply not arresting more immigrants than the government can constitutionally and safely detain. The EOs do not *require* ICE to take more immigrants into custody than it has the capacity to hold in long-term detention, and nothing in the 12-Hour Waiver Memo or its administrative record identifies such a requirement. Instead, Defendants elected to facilitate overcrowding in long-term detention centers and then claimed no responsibility or control over it. *See Immigrant Defs. L. Ctr. v. Noem*, 145 F.4th 972, 993 (9th Cir. 2025) (finding likelihood of success on APA claim in part because "the government cannot actively facilitate a breakdown in ongoing or potential attorney-client relationships, and then claim no responsibility or control over it.") (cleaned up). Detention overcrowding that ICE itself has created is not a

"good reason[]" to "abandon its decades-old practice" of limiting holding facility detention to 12 hours. *See Encino Motorcars*, 579 U.S. at 221, 218.

ICE's failure to consider other existing alternatives to forcing immigrants to spend extended periods in ill-equipped short-term holding cells "alone renders [ICE's] decision arbitrary and capricious." *Dep't of Homeland Sec.*, 591 U.S. at 30.

### B.    The 12-Hour Waiver Memo is Internally Inconsistent

The 12-Hour Waiver Memo also is arbitrary and capricious because it contradicts and is incompatible with the agency's own policies governing ICE holding facilities. The 12-Hour Waiver Memo expressly provides that "[a]ll other hold room and hold facilities requirements continue to apply." AR-2. This includes the PBNDS, which expressly prohibit detention longer than 12 hours in holding facilities. ECF No. 65-1 § 2.6(II)(2), at 16. The PBNDS prohibition directly conflicts with the 12-Hour Waiver Memo's allowance for detention up to 72 hours. Neither the 12-Hour Waiver Memo nor its administrative record acknowledges this conflict or offers any guidance to ERO Field Offices on how to reconcile this direct contradiction. "[A]n internally inconsistent analysis is arbitrary and capricious." *Nat'l Parks Conservation Ass'n v. E.P.A.*, 788 F.3d 1134, 1141 (9th Cir. 2015); *see also Encino Motorcars*, 579 U.S. at 222 ("[U]nexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.") (citation omitted).

### C.    The 12-Hour Waiver Memo Fails to Consider the Constitutional and Humanitarian Consequences of Extending Detention in Holding Facilities, or Compliance with Other Long-term Detention Policies

An agency decision is arbitrary and capricious when it "entirely fail[s] to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43. Likewise, an agency decision is arbitrary and capricious if it is unreasonable or not reasonably explained. *Ohio v. Envt'l Prot. Agency*, 603 U.S. 279, 292 (2024). Here, the 12-Hour Waiver Memo fails to adequately contemplate—or even mention—(i) constitutional minimums for overnight detention and how extending detention in holding facilities under existing ICE regulations inevitably risks constitutional violations; (ii) the humanitarian repercussions of extended detention in holding facilities, absent requisite changes to accommodate human needs in overnight detention, and (iii)

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

compliance with ICE's own regulations for detention exceeding 12 hours.

First, neither the 12-Hour Waiver Memo nor its administrative record mention, let alone consider, the constitutional requirements for overnight detention. As courts have recognized, an agency's "constitutional and statutory obligations are 'important aspects' of the problem before them." *Nat'l Urb. League v. Ross*, 489 F. Supp. 3d 939, 982 (N.D. Cal. 2020), *order clarified*, *Nat'l Urb. League v. Ross*, 491 F. Supp. 3d 572, 575 (N.D. Cal. 2020) (citing *Oregon Nat. Resources Council v. Thomas*, 92 F.3d 792, 798 (9th Cir. 1996)). Yet the administrative record makes clear that ICE "entirely fail[ed] to consider" whether and how extending detention in the holding facilities *six-fold* would pass constitutional muster, or what changes were necessary to satisfy constitutional minimums for overnight or multi-day detention. For example, because the 12-Hour Waiver Memo left in place all other existing policies concerning holding facilities, including the PBNDS, "bunks, cots, beds and other sleeping apparatus are not permitted inside hold rooms." ECF No. 65-1 § 2.6(V)(A)(5), at 17. "Providing for overnight or multi-night detention in hold rooms while preserving a prohibition on 'sleeping apparatus' is not just likely but certain to lead to violations of noncitizens' due-process rights to be free from punitive conditions of confinement." ECF No. 158 at 21; *see also Thompson v. City of Los Angeles*, 885 F.2d 1439, 1448 (9th Cir. 1989), *overruled on other grounds by Bull v. City and County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (being forced to sleep on a concrete floor for two nights in county jail "unquestionably constitute[d] a cognizable [due process] claim"). Indeed, this Court and others have found that the conditions created by extended detention in temporary holding facilities likely violate the Constitution. *See, e.g.,* ECF No. 138 at 42; *Mercado v. Noem*, No. 25-CV-6568 (LAK), 2025 WL 2658779, at *28–29 (S.D.N.Y. Sept. 17, 2025) (granting preliminary injunction to remedy unconstitutional conditions in ICE holding facility in New York City); *Perdomo v. Noem*, No. 2:25-CV-05605-MEMF-SP, 2025 WL 3192939, at *14 (C.D. Cal. Nov. 13, 2025) (granting preliminary injunction to remedy unconstitutional deprivation of access to counsel in ICE holding facility in Los Angeles). ICE's complete failure to consider the constitutional import of extended detention in holding facilities designed for short-term detention alone renders the 12-Hour Waiver Memo arbitrary and capricious.

008561.0134 4935-3316-4939.6

15

Case No. 5:25-CV-06487-PCP-NC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

Second, the 12-Hour Waiver Memo and its administrative record also contain no discussion of the humanitarian repercussions of extended detention in holding facilities, let alone a plan for meeting the basic human needs of the individuals who are detained. To engage in "reasoned decisionmaking," agencies must "look at the costs as well as the benefits" of their actions. *State Farm*, 463 U.S. at 52–54. Until the 12-Hour Waiver was enacted, ICE's short-term hold facilities were designed and intended to be used for no "longer than 12 hours," and to be emptied "upon the conclusion of daily operations." AR-18. As ICE recently has acknowledged, field office hold rooms "are not equipped or intended to function as detention facilities for extended stays." *Garro Pinchi v. Noem*, 5:25-CV-05632-PCP, ECF No. 88 at 12, ¶ 7 (Declaration of Assistant Field Office Director in the San Francisco Field Office of Enforcement and Removal Operations). Yet neither the 12-Hour Waiver Memo nor its administrative record references the humanitarian "costs" of suddenly using short-term holding cells for multi-night detention.

The administrative record also evinces *no planning of any kind*—such as changes to the facilities or additional training for staff—in anticipation of confining people for six times longer than the facilities were intended for. Common sense—and ICE's own detention policies—indicate that individuals detained for multiple days will have more and different needs than individuals detained for less than 12 hours. Yet ICE did nothing to account for those needs, or instruct field offices on how to meet them, when it issued the 12-Hour Waiver. An abrupt change to detention policy made without any consideration of—or plan for addressing—the inevitable needs of the individuals who will be subject to it is not the product of reasoned decision-making.

Finally, the 12-Hour Waiver Memo fails to consider whether ICE detention standards applicable to multi-day detention should apply to holding facilities, now that individuals will be detained therein for up to 72 hours. For multi-day extended detention, the PBNDS set additional requirements, including bedding, linens, towels, personal hygiene items, and medical and mental health screenings. *See e.g.,* ECF No. 65-1 §§ 2.1(II)(3), 4.5(V)(D), (G) at 5, 22. Despite permitting individuals to be detained for up to three days, the 12-Hour Waiver makes no mention of whether the existing multi-day detention standards are applicable to holding facilities, let alone how field offices should implement them.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

### III.   The 12-Hour Waiver Memo is Not in Accordance with Law

The 12-Hour Waiver also is "not in accordance with law," which is an independent basis for setting aside the policy under section 706. 5 U.S.C. § 706(2)(A). As outlined above, the 12-Hour Waiver left in place "[a]ll other hold room and hold facilities requirements," (AR-2), including the prohibition on beds, bedding, and sleeping apparatus in hold rooms. As this Court previously noted, "[p]roviding for overnight or multi-night detention in hold rooms while preserving a prohibition on 'sleeping apparatus' is not just likely *but certain* to lead to violations of noncitizens' due-process rights to be free from punitive conditions of confinement." ECF No. 158 at 21 (emphasis added); *see also Kidd v. Mayorkas*, 734 F. Supp. 3d 967, 984 (C.D. Cal. 2024) (granting summary judgment on APA claim where plaintiffs sufficiently established constitutional violation "resulting from agencies' policy and practice").[6] Defendants' desire to implement policies favoring mass arrests and eschewing discretionary release authority cannot justify violating constitutional rights. *See Mercado*, 2025 WL 2658779, at *36 ("Defendants have chosen to use the [ICE ERO hold rooms] as a *de facto* medium term detention facility while failing to comply with the Constitution and their own nationwide standards governing detention facilities. The logistical difficulties defendants invoke flow from that their [*sic*] own decisions."). Because the 12-Hour Waiver Memo necessarily engenders constitutional violations, it must be set aside as not in accordance with law.

### IV.   The 12-Hour Waiver Memo Should Be Vacated

Vacatur of the 12-Hour Waiver Memo is the appropriate and presumptive remedy. The APA mandates that courts *must* "hold unlawful and set aside agency action" that is "arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. 706(2)(A). To "set aside" agency action is "to annul or vacate" it.  *Set Aside*, Black's Law Dictionary (12th ed. 2024). Thus,

---

[6] Although the court in *Kidd* analyzed the alleged constitutional violation under section 706(2)(B) ("contrary to constitutional right"), its analysis is nevertheless relevant to Plaintiffs' argument under section 706(2)(A) ("not in accordance with law"), given the overlap between the statutory subsections. *See Jonathan R. Siegel, Admin. Conf. of the U.S., Sourcebook of Federal Judicial Review Statutes* (Mar. 17, 2021) at 15 (noting redundancy between "not in accordance with law," and section 706(2)(B)-(D)).

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
(12H WAIVER)**

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

vacatur is the presumptive remedy for unlawful agency action under section 706. *See All. for the Wild Rockies v. U. S. Forest Serv.*, 907 F.3d 1105, 1121 (9th Cir. 2018) ("*vacatur* of an unlawful agency action normally accompanies a remand" because "[o]rdinarily when a regulation is not promulgated in compliance with the APA, the regulation is invalid") (emphasis in original); *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025) ("[w]here a court holds an agency action unlawful, vacatur and remand is the default remedy under the APA"); *see also Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 830–31 (2024) (Kavanaugh, J., concurring) (opining that the APA authorizes vacatur of unlawful agency actions, and cataloguing decisions affirmed by the Supreme Court and D.C. Circuit decisions that vacated agency actions rather than merely enjoining the enforcement of rules against specific plaintiffs).

Accordingly, this Court should order vacatur in full of the 12-Hour Waiver Memo. *See, e.g., Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987, at *22 (C.D. Cal. Dec. 18, 2025) ("The relief the Court can grant as mandated by the APA is to 'set aside agency action' that it finds not in accordance with law. § 706(2)(A). As discussed above, that remedy is found in vacatur. Vacatur necessarily follows from a declaration that an agency policy is unlawful."); *Kapa'a v. Trump*, 794 F. Supp. 3d 793, 823 (D. Haw. 2025) (providing that with respect to section 706, "Ninth Circuit precedent . . . authorizes universal vacatur of unlawful agency action and treats it as the presumptive remedy"); *New York v. United States Dep't of Energy*, No. 6:25-CV-01458-MTK, 2025 WL 3140578, at *16–17 (D. Or. Nov. 10, 2025) (vacating policy "in full pursuant to the APA" under section 706); *Rhode Island v. Trump*, No. 1:25-CV-128-JJM-AEM, 2025 WL 3251113, at *17 (D.R.I. Nov. 21, 2025) (finding that proper remedy under section 706 is "to vacate [agency] actions in their entirety").

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court hold unlawful and set aside the 12-Hour Waiver Memo.

DATED: January 29, 2026

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

By:    */s/ Marissa Hatton*

MARISSA HATTON
ANDREW NTIM
JORDAN WELLS
NISHA KASHYAP
Attorneys for Plaintiffs

DATED: January 29, 2026

CARECEN SF

By:    */s/ Laura Victoria Sanchez*

LAURA VICTORIA SANCHEZ
TALA BERARDI HARTSOUGH
Attorneys for Plaintiffs

DATED: January 29, 2026

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA

By:    */s/ Neil K. Sawhney*

NEIL K. SAWHNEY
LAUREN M. DAVIS
Attorneys for Plaintiffs

DATED: January 29, 2026

COBLENTZ PATCH DUFFY & BASS LLP

By:    */s/ Mark Hejinian*

MARK L. HEJINIAN
MARCIA V. VALENTE
DAVID C. BEACH
CHARMAINE G. YU
EVAN G. CAMPBELL
DARIEN LO
Attorneys for Plaintiffs

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

008561.0134 4935-3316-4939.6

19

Case No. 5:25-CV-06487-PCP-NC

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (12H WAIVER)**

## <u>ATTESTATION</u>

I, Mark L. Hejinian, am the ECF user whose identification and password are being used to file the foregoing document. In compliance with LR 5-1(i)(3), I hereby attest that all parties have concurred in this filing.

DATED:  January 29, 2026                    COBLENTZ PATCH DUFFY & BASS LLP


By:    */s/ Mark L. Hejinian*
       MARK L. HEJINIAN
       Attorneys for Plaintiffs

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663