Mark L. Hejinian (SBN 281417)
ef-mlh@cpdb.com
Marcia V. Valente (SBN 321852)
ef-mvv@cpdb.com
David C. Beach (SBN 226972)
ef-dcb@cpdb.com
Charmaine G. Yu (SBN 220579)
ef-cgy@cpdb.com
Evan G. Campbell (SBN 342223)
ef-egc@cpdb.com
Darien Lo (SBN 347244)
ef-dxl@cpdb.com
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA  94104
Telephone: (415) 391-4800

Marissa Hatton (SBN 348678)
mhatton@lccrsf.org
Andrew Ntim (SBN 347084)
antim@lccrsf.org
Jordan Wells (SBN 326491)
jwells@lccrsf.org
Nisha Kashyap (SBN 301934)
nkashyap@lccrsf.org
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9444

Neil K. Sawhney (SBN 300130)
nsawhney@aclunc.org
Lauren M. Davis (SBN 357292)
ldavis@aclunc.org
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

Laura Victoria Sanchez (SBN 253736)
laura@carecensf.org
Tala Berardi Hartsough (SBN 230204)
tala@carecensf.org
CARECEN SF
3101 Mission Street, Suite 101
San Francisco, CA  94110
Telephone: (415) 642-4402

Attorneys for Plaintiffs

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

| | |
|---|---|
| CARMEN ARACELY PABLO SEQUEN, YULISA ALVARADO AMBROCIO, and LIGIA GARCIA,<br><br>         Plaintiffs,<br><br>       v.<br><br>SERGIO ALBARRAN, MARCOS CHARLES, THOMAS GILES, MONICA BURKE, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY, TODD M. LYONS, SIRCE E. OWEN, PAMELA BONDI, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION AND REVIEW, UNITED STATES OF AMERICA<br><br>         Defendants. | Case No. 5:25-CV-06487-PCP-NC<br><br>**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (COURTHOUSE ARRESTS)**<br><br>Judge: Hon. P. Casey Pitts<br>Date:  N/A<br>Time:  N/A<br>Crtrm.: 8<br><br><br>Trial Date:      None Set |

008561.0134 4899-5269-9787.10

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION ...................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .........................................................3

I.      INTRODUCTION..........................................................................................3

II.     BACKGROUND............................................................................................4

III.    ARGUMENT .................................................................................................7

    A.    The Agencies' Courthouse Arrest Polices Are Subject to District Court Review Pursuant to the APA Via This Motion for Summary Judgment ...........................................................................................7

    B.    The Agencies' Courthouse Arrest Polices Are Arbitrary and Capricious.........................................................................................8

        1.    The ICE Courthouse Arrest Policy Is Arbitrary and Capricious.............................................................................9

            a.    The ICE Courthouse Arrest Policy Fails to Consider the Chilling Effect of Courthouse Arrests.............................9

            b.    The ICE Courthouse Arrest Policy Lacks a Reasoned Explanation as to Immigration Courts .................................12

            c.    The ICE Courthouse Arrest Policy Fails to Consider the Serious Reliance Interests Created by Its Prior Policy...................................................................................14

        2.    The EOIR Courthouse Arrest Policy is Arbitrary and Capricious.............................................................................15

            a.    The EOIR Courthouse Arrest Policy Lacks a Reasoned Explanation ......................................................15

            b.    The EOIR Courthouse Arrest Policy Fails to Address Key Considerations Underlying the Prior Policy.................18

            c.    The EOIR Courthouse Arrest Policy Fails to Consider the Serious Reliance Interests Created by Its Prior Policy...................................................................................19

    C.    The Court Should Hold Unlawful and Set Aside the Agencies' Courthouse Arrest Policies...................................................................20

IV.     CONCLUSION .............................................................................................22

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663
Coblentz Patch Duffy & Bass LLP

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Petrick,*
    68 F.4th 475 (9th Cir. 2023) ........................................................................................... 8

*Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue,*
    926 F.3d 1061 (9th Cir. 2019) ........................................................................................ 8

*Am. Wild Horse Pres. Campaign v. Perdue,*
    873 F.3d 914 (D.C. Cir. 2017) .................................................................................... 9, 12

*Bennett v. Spear,*
    520 U.S. 154 (1997) ........................................................................................................ 8

*Board of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.,*
    474 U.S. 361 (1986) ...................................................................................................... 20

*Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.,*
    524 F. Supp. 3d 919 (N.D. Cal. 2021) .......................................................................... 19

*Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.,*
    603 U.S. 799 (2024) (Kavanaugh, J., concurring) ........................................................ 20

*DHS. v. Regents of Univ. of Cal.,*
    591 U.S. 1 (2020) ................................................................................................... *passim*

*E. Bay Sanctuary Covenant v. Biden,*
    993 F.3d 640 (9th Cir. 2021) ........................................................................................ 20

*Encino Motorcars, LLC v. Navarro,*
    579 U.S. 211 (2016) .................................................................................................... 9, 15

*F.C.C. v. Fox Television Stations, Inc.,*
    556 U.S. 502 (2009) .................................................................................... 9, 10, 14, 15

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021) ...................................................................................................... 18

*Garro Pinchi v. Noem,*
    No. 25-cv-05632-PCP, 2025 WL 3691938 (N.D. Cal. Dec. 19, 2025) ..................... 12, 19

*H.F.S.R. v. Francis,*
    No. 1:26-cv-238, 2026 WL 160542 (N.D. Ga. Jan. 20, 2026) ....................................... 21

*Immigr. Defs. L. Ctr. v. Noem,*
    145 F.4th 972 (9th Cir. 2025) ........................................................................................ 21

*Kapa'a v. Trump*,
794 F. Supp. 3d 793 (D. Haw. 2025) ........................................................................................... 20

*Make the Rd. N.Y. v. Noem*,
No. 25-cv-190, 2025 WL 2494908 (D.D.C. Aug. 29, 2025) ....................................................... 21

*Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) ................................................................................................................. 9, 11

*New York v. ICE*,
466 F.Supp.3d 439 (S.D.N.Y. 2020) ........................................................................................... 11

*Ng Fung Ho v. White*,
259 U.S. 276, 42 S. Ct. 492, 66 L. Ed. 938 (1922) ...................................................................... 7

*Salcedo Aceros v. Kaiser*,
No. 25-cv-06924-EMC, 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025) ...................................... 11

*Saravia v. Sessions*,
280 F. Supp. 3d 1168 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d
1137 (9th Cir. 2018) ........................................................................................................... 4, 12, 13

*Scholl v. Mnuchin*,
494 F. Supp. 3d 661 (N.D. Cal. 2020) .......................................................................................... 7

*Matter of Sugay*,
17 I. & N. Dec. 637 (BIA 1981).................................................................................................... 12

*Thakur v. Trump*,
No. 25-cv-04737-RFL, 2025 WL 1734471 ............................................................................ 14, 19

*United States v. U.S. Dist. Court for E. Dist. of Mich.*,
407 U.S. 297 (1972) ..................................................................................................................... 15

*Velazquez-Hernandez v. ICE*,
500 F. Supp. 3d 1132 (S.D. Cal. 2020) ......................................................................................... 11

*Whitman v. American Trucking Ass'ns*,
531 U.S. 457 (2001) ..................................................................................................................... 20

*Youngberg v. Romeo*,
457 U.S. 307, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982) ................................................................ 7

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**Statutes & Rules**

5 U.S.C.
    § 301 ............................................................................................................................ 16
    § 551(4) ......................................................................................................................... 8
    § 551(13) ....................................................................................................................... 8
    § 704 .............................................................................................................................. 7
    § 706 .............................................................................................................................. 1
    § 706(2)(A) ............................................................................................................. *passim*

6 U.S.C. § 521 .................................................................................................................... 16

8 U.S.C.
    § 1103(g) ..................................................................................................................... 16
    § 1229(a)(1) ................................................................................................................. 10
    § 1229a(b)(5)(A) ......................................................................................................... 10
    § 1229a(b)(7) .............................................................................................................. 10

Fed. R. Civ. P. 56 ..................................................................................................... 1, 20, 21

Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 471, 701, 116 Stat. 2135, 2205, 2219. 5

**Other Authorities**

8 C.F.R.
    § 1003.0(b) .................................................................................................................. 16
    § 1003.0(b)(1)(i), (iii) .................................................................................................. 16
    § 1003.20(b) ................................................................................................................ 21
    § 1236.1(c)(8) ............................................................................................................. 13
    § 1240.10 ..................................................................................................................... 10
    § 1240.11(a)(2) ........................................................................................................... 10

Angela Irvine et al., *The Chilling Effect of ICE Courthouse Arrests: How Immigration and Customs Enforcement (ICE) Raids Deter Immigrants from Attending Child Welfare, Domestic Violence, Adult Criminal, and Youth Court Hearings* (Oct. 2019), https://www.immigrantdefenseproject.org/wp-content/uploads/ice.report.exec_summ.5nov2019.pdf ........................................................ 18

Authority of the Secretary of Homeland Security; Delegations of Authority; Immigration Laws, 68 FR 10922-01 (Mar. 6, 2003) ...................................................................................... 5

Memorandum from Acting ICE Director Todd Lyons, "Utilizing Form I-205, Warrant of Removal" (dated May 12, 2025) available at https://s3.documentcloud.org/documents/26499371/dhs-ice-memo-1-21-26.pdf .................. 11

William Blackstone, *Commentaries on the Laws of England* 289 (1768) ................................... 11

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**NOTICE OF MOTION AND MOTION**

**TO ALL PA7RTIES AND TO THEIR ATTORNEYS OF RECORD:**

Plaintiffs Carmen Aracely Pablo Sequen, Yulisa Alvarado Ambrocio, and Ligia Garcia on behalf of themselves and the Courthouse Arrest Class, (the "Plaintiffs") hereby move this Court for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 and the Administrative Procedure Act, 5 U.S.C. § 706.[1]

Plaintiffs seek an order holding unlawful and setting aside Defendants' 2025 policies authorizing civil immigration arrests at immigration courthouses, including Immigration and Customs Enforcement Policy Nos. 11072.3 and 11072.4 (the "ICE Courthouse Arrest Policy") and Executive Office for Immigration Review ("EOIR") Operating Policies and Procedures Memorandum 25-06 ("OPPM 25-06") (collectively, the "Courthouse Arrest Policies").

First, Plaintiffs seek summary judgment on their claim that the Courthouse Arrest Policies are arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) because Defendants abandoned decades-long policy and practice without reasoned decision making, failed to consider the predictable chilling effect on access to immigration court, failed to account for serious reliance interests engendered by the prior policies, and offered explanations that are internally inconsistent, illogical, and unsupported by the administrative record.

Second, Plaintiffs seek summary judgment on their claim that the Courthouse Arrest Policies are arbitrary and capricious because Defendants failed to reconcile the policies with the purposes and structure of the immigration laws, including Congress's strong interest in ensuring noncitizens' attendance and participation in removal proceedings.

Plaintiffs respectfully request that the Court vacate and set aside the Courthouse Arrest Policies pursuant to 5 U.S.C. § 706(2)(A).

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the administrative records, all pleadings and papers on file in this action, any matters of which the Court may take judicial notice, and any other matters

---

[1] The parties have stipulated to forego oral argument. *See* ECF No. 168.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

the Court deems proper.

DATED:  January 29, 2026

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

By:  /s/ Marissa Hatton
MARISSA HATTON
ANDREW NTIM
JORDAN WELLS
NISHA KASHYAP
Attorneys for Plaintiffs

DATED:  January 29, 2026

CARECEN SF

By:  /s/ Laura Victoria Sanchez
LAURA VICTORIA SANCHEZ
TALA BERARDI HARTSOUGH
Attorneys for Plaintiffs

DATED:  January 29, 2026

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA

By:  /s/ Neil K. Sawhney
NEIL K. SAWHNEY
LAUREN M. DAVIS
Attorneys for Plaintiffs

DATED:  January 29, 2026

COBLENTZ PATCH DUFFY & BASS LLP

By:  /s/ Mark Hejinian
MARK L. HEJINIAN
MARCIA V. VALENTE
DAVID C. BEACH
CHARMAINE G. YU
EVAN G. CAMPBELL
DARIEN LO
Attorneys for Plaintiffs

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

On behalf of a class of immigrants who suddenly face a cruel Hobson's choice—appear in immigration court for their hearings and face immediate arrest and detention, or forsake their asylum claims and American dreams and receive *in absentia* removal orders—Plaintiffs seek an order setting aside Immigration and Customs Enforcement ("ICE") and Executive Office for Immigration Review ("EOIR") policies adopted in 2025 that, in a stark break from past practice, have converted immigration courthouses into dragnet enforcement sites.[2] These policies betray the basic American promise of a fair day in court, and they do so without offering a reasoned explanation or accounting for important considerations, such as the obvious chilling effect that courthouse arrests have on noncitizens' pursuit of their claims in immigration court.

This Court already found that these policies are likely arbitrary and capricious, and it accordingly stayed them within ICE's San Francisco Area of Responsibility under Section 705 of the Administrative Procedure Act ("APA") pending a final judgment. ECF No. 155 ("Stay Order") at 38. *Cf.* 5 U.S.C. § 705 ("to the extent necessary" in APA challenges to agency action, authorizing courts to "preserve status or rights" pending a final decision on whether to invalidate the agency action). The since-filed administrative records do nothing to disturb this Court's analysis of the policies' legal deficiencies. They evince no concern for prior policies' "core" animating principle of avoiding a chill on access to immigration court, and they offer no reconciliation of the incoherent and illogical justifications this Court previously analyzed. *See* Stay Order at 24-27 (explaining ICE's rationales describe *non*-immigration courthouse arrests but fail to explain a basis for expanding courthouse arrests at *immigration* courthouses); *id.* at 27-31 (explaining EOIR's disclaimer of authority to limit courthouse arrests is internally inconsistent and legally unsupported). Thus, the administrative records only serve to confirm that the Court

---

[2] Contemporaneously with this motion, Plaintiffs are filing a motion seeking to certify a class of "all persons who have an immigration court hearing in a proceeding on EOIR's non-detained docket in an immigration courthouse in ICE's San Francisco Field Office Area of Responsibility."

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

should "hold unlawful and set aside" the policies as arbitrary and capricious. 5 U.S.C. § 706(2)(A).

## II.    BACKGROUND

Prior to last year, ICE did not conduct mass arrests at immigration courthouses. Nothing in the administrative record, published court decisions, or the parties' submissions in this case indicate otherwise. *Accord* Stay Order at 4-5 (reviewing unrebutted evidence), at 27 (collecting cases). For good reason: Immigrants whose cases are on the non-detained immigration court docket already have been determined by DHS not to pose a danger or flight risk warranting detention. *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). And, by virtue of voluntarily showing up for their immigration court dates, they continue to demonstrate compliance with the immigration process.

The only ICE courthouse arrest policy that has even adverted to the prospect of arrest at immigration court was an April 27, 2021, Department of Homeland Security ("DHS") memorandum *restricting* ICE arrests at courthouses of all kinds. ICE-AR-26.[3] That memorandum (hereinafter "ICE's 2021 guidance") precluded ICE agents from conducting "civil immigration enforcement action . . . in or near a courthouse" except in limited circumstances, *i.e.*, "a national security threat," "an imminent risk of death, violence, or physical harm to any person," the "hot pursuit of an individual who poses a threat to public safety," or the "imminent risk of destruction of evidence material to a criminal case." ICE-AR-26. In the absence of "hot pursuit," the policy permitted ICE to make civil arrests against "an individual who poses a threat to public safety" only if (1) it was "necessary to take the action in or near the courthouse because a safe alternative location for such action does not exist or would be too difficult to achieve the enforcement action at such a location," *and* (2) "the action [was] approved in advance by a Field Office Director,

---

[3] References to "ICE-AR" are to the administrative record for the memorandum issued by ICE, dated May 27, 2025, and titled, "Civil Immigration Enforcement Actions In or Near Courthouses," *See* ECF No. 146. References to "EOIR-AR" are to the administrative record for EOIR's Policy Memorandum ("PM") 25-06, "Cancellation of Operating Policies and Procedures Memorandum 23-01." *See* ECF No. 163.

Special Agent in Charge, Chief Patrol Agent, or Port Director." *Id.* The "core principle[]" underlying the policy was that "[e]xecuting civil immigration enforcement actions in or near a courthouse may chill individuals' access to courthouses, and as a result, impair the fair administration of justice." ICE-AR-25. DHS therefore limited arrests at courthouses of all kinds "so as not to unnecessarily impinge upon the core principle of preserving access to justice." *Id.*

On December 11, 2023, EOIR issued Operating Policies and Procedures Memorandum 23-01 ("OPPM 23-01"), which, absent the exigent circumstances outlined in ICE's 2021 guidance, prohibited civil immigration enforcement actions in or near an immigration court. EOIR-AR-1-3. In OPPM 23-01, EOIR articulated four reasons for its policy: (1) that courthouse enforcement actions would "inevitably produce a 'chilling effect' on noncitizens who appear before our immigration courts;" (2) that such arrests would "disincentivize noncitizens from appearing for their hearings," hindering the agency's efficiency and mission; (3) that such enforcement actions "may create safety risks for those who may be present during such enforcement actions, including children and adults appearing for hearings, [Office of the Chief Immigration Judge] employees, and other building or facilities personnel"; and (4) that a policy against courthouse immigration enforcement would "reinforce the separate and distinct roles of DHS and [EOIR]."[4] EOIR-AR-2.

Then, in rapid succession in January 2025, DHS and EOIR abandoned the 2021 ICE Guidance and OPPM 23-01, and the decades-long prohibition on arrests at immigration courts that they reflected. On January 21, 2025, then-acting ICE Director Caleb Vitello issued interim guidance to ICE that superseded the 2021 ICE Guidance. ICE-AR-51-53 ("ICE Interim

---

[4] Created in 1983, EOIR is a "quasi-judicial" entity housed within the Department of Justice to conduct "immigration judicial review." Pltf's Req. for Judicial Notice, Ex. C. In 2002, Congress created even greater separation between the two agencies, moving enforcement responsibilities into the newly created DHS and keeping the immigration court system with the DOJ. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, §§ 471, 701, 116 Stat. 2135, 2205, 2219; *see also* Authority of the Secretary of Homeland Security; Delegations of Authority; Immigration Laws, 68 FR 10922-01 (Mar. 6, 2003) (describing shift as part of "separating DHS enforcement and services functions from Department of Justice adjudication functions as envisioned by the Act").

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Guidance"). The ICE Interim Guidance broadly authorized ICE agents to conduct civil immigration enforcement actions—including arrests, interviews, and searches—in or near courthouses. ICE-AR-52. It listed categories of "target[s]," but expressly stated that civil immigration enforcement actions are "not limited to" the listed groups. *Id.* It also expressly condoned enforcement against "family members or friends accompanying the target [noncitizen] to court appearances or serving as a witness in a proceeding." *Id.* The ICE Interim Guidance stated that such arrests should be made "on a case-by-case basis considering the totality of the circumstances," but provided no instructions as to relevant considerations. *Id.* This carte blanche arrest authority constituted a marked reversal of longstanding ICE policies and practices limiting such arrests to special circumstances.

On May 27, 2025, ICE issued a final version of the ICE Interim Guidance, labeled Policy No. 11072.4. ICE-AR-1-3 ("Final ICE Courthouse Arrest Policy"). The Final ICE Courthouse Arrest Policy, which took immediate effect, is identical to the ICE Interim Guidance, other than removing a provision preventing courthouse arrests where such arrests would violate local law. The ICE Interim Guidance and Final ICE Courthouse Arrest Policy are collectively referred to herein as the "ICE Courthouse Arrest Policy."

Although the ICE Courthouse Arrest Policy instructs officers generally to *avoid* arrests near "non-criminal" courthouses, ICE-AR-2, which naturally would encompass immigration courthouses, ICE reads that limitation as inapplicable to immigration courthouse arrests. *See* Stay Order at 26-27. The administrative record does not shed any light on this interpretation, nor does it reflect any consideration of the effects of ICE arrests at immigration courthouses specifically.

One week after the issuance of the ICE Interim Guidance, EOIR issued OPPM 25-06, "Cancellation of Operating Policies and Procedures Memorandum 23-01" (hereinafter "EOIR Courthouse Arrest Policy" or "OPPM 25-06"), which rescinds OPPM 23-01.[5] The EOIR Courthouse Arrest Policy asserts that, because ICE had changed its policy regarding courthouse

---

[5] Defendants apparently inadvertently omitted the challenged policy from the administrative record. A true and correct copy was attached as Exhibit E to ECF No. 95.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

arrests, "there is no longer a basis to maintain" the prior EOIR policy limiting immigration enforcement actions in or near immigration courts. OPPM 25-06 at 1. The policy also states—without elaboration other than a citation to all of Title 8—that OPPM 23-01 was *ultra vires*, ostensibly because EOIR lacks authority to "prohibit DHS from conducting any action it is otherwise lawfully authorized to take." OPPM 25-06 at 2. Finally, the EOIR Courthouse Arrest Policy summarily dismisses the prior policy's concern for chilling effect, offering only the cursory assertion that it was "vague," "unspecified," and "contrary to logic." *Id.* The Policy instead states, without explanation, that individuals with valid immigration claims have "no reason to fear any enforcement action by DHS." *Id.*

In the wake of Defendants' new policies, noncitizens must face an impossible choice between accessing immigration courts to pursue immigration relief, at the risk of arrest and detention, or missing their court hearings, abandoning their immigration cases, and receiving a deportation order. Either path can lead to devastating consequences. *See Ng Fung Ho v. White*, 259 U.S. 276, 284, 42 S. Ct. 492, 66 L. Ed. 938 (1922) (explaining that deportation may result in the loss "of all that makes life worth living"); *Youngberg v. Romeo*, 457 U.S. 307, 316, 102 S. Ct. 2452, 73 L. Ed. 2d 28 (1982) ("Liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action.") (cleaned up).

## III.   ARGUMENT

### A.   The Agencies' Courthouse Arrest Polices Are Subject to District Court Review Pursuant to the APA Via This Motion for Summary Judgment

APA review is available for "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. "A motion for summary judgment may be used to seek judicial review of agency administrative decisions within the limitations of the APA." *Scholl v. Mnuchin*, 494 F. Supp. 3d 661, 672 (N.D. Cal. 2020) (citation omitted). If the Court finds that Plaintiffs are entitled to judgment as a matter of law based on the record in this case, the APA instructs the Court to "hold unlawful and set aside [the] agency action[s]." 5 U.S.C. § 706(2)(A).

As this Court has concluded, the ICE Courthouse Arrest Policy and the EOIR Courthouse

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Arrest Policy "unquestionably" comprise final agency actions. Stay Order at 13. They are "agency statement[s] of general or particular applicability and future effect designed to implement . . . policy or describ[e] . . . procedure, or practice requirements of an agency." *See* 5 U.S.C. § 551(4) (defining a "rule," which comprises an "agency action" under 5 U.S.C. § 551(13)). And they are final in that they "mark the 'consummation' of the agenc[ies'] decisionmaking process," immediately rescinding and replacing predecessor policies and putting into motion concrete "legal consequences": thousands of arrests, including of the putative class representatives in this action. *See Bennett v. Spear*, 520 U.S. 154, 177-78 (1997); *see also* Stay Order at 13-14 (explaining that the policies are final in that they broadly authorized ICE agents to make arrests at immigration courthouses, with immediate effects on day-to-day agency operations); *accord* ICE-AR-54-55 (Jan. 21, 2025, email from Acting ICE Director Caleb Vitello instructing that "[t]he interim guidance is effective immediately"). Moreover, the January 2025 ICE Interim Guidance "'is subject to review on the review of the final agency action'" that superseded it, *i.e.*, upon this Court's review of the Final ICE Courthouse Arrest Policy. Stay Order at 12 (quoting 5 U.S.C. § 704). Finally, there is no other adequate remedy. *See* Stay Order at 17. Thus, the APA authorizes review of the ICE Courthouse Arrest Policy and the EOIR Courthouse Arrest Policy.

## B.    The Agencies' Courthouse Arrest Polices Are Arbitrary and Capricious

The APA instructs a district court to "hold unlawful and set aside" an agency action that the court finds is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). "[T]he touchstone of arbitrary and capricious review under the APA is 'reasoned decisionmaking.'" *Altera Corp. & Subsidiaries v. Comm'r of Internal Revenue*, 926 F.3d 1061, 1080 (9th Cir. 2019) (citation omitted). "[A]n agency's action can only survive arbitrary or capricious review where it has 'articulate[d] a satisfactory explanation for its action including a "rational connection between the facts found and the choice made."' *All. for the Wild Rockies v. Petrick*, 68 F.4th 475, 493 (9th Cir. 2023). When an agency has "entirely failed to consider an important aspect of the problem," it must be set aside. *Id.* at 492 (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

(1983)). Rational decisionmaking requires agencies to consider "the costs as well as the benefits" of their actions. *State Farm*, 463 U.S. at 52-54.

Further, where an agency changes its previous position—including when it "abandons [a] decades-old practice"—it must (1) "display awareness that it is changing position," (2) "show that there are good reasons for the new policy," and (3) balance those good reasons against "engendered serious reliance interests." *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 218, 221-22 (2016); *see also F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (alteration to prior agency position can require "more detailed justification than what would suffice for a new policy created on a blank slate"); *Am. Wild Horse Pres. Campaign v. Perdue*, 873 F.3d 914, 923 (D.C. Cir. 2017) ("A central principle of administrative law is that, when an agency decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it.").

### 1. The ICE Courthouse Arrest Policy Is Arbitrary and Capricious

The ICE Courthouse Arrest Policy is arbitrary and capricious because it (i) ignores the "core principle" animating its prior policy, *i.e.*, the predictable chilling effect of immigration courthouse arrests on noncitizens' access to immigration court; (ii) relies on implausible and illogical reasoning while simultaneously failing to display any awareness of the sea change it would create in ICE arrest practices around *immigration* courthouses specifically; and (iii) does not consider the existence of serious reliance interests, let alone balance any purportedly good reasons for the policy change against those interests.

### a. The ICE Courthouse Arrest Policy Fails to Consider the Chilling Effect of Courthouse Arrests

The ICE Courthouse Arrest Policy utterly fails to consider an important aspect of the problem: "the chilling effect of widespread immigration-courthouse arrests on noncitizens' participation in removal proceedings." Stay Order at 21. This glaring omission evidences a lack of reasoned decisionmaking.

*First*, preserving access to justice was the "core principle" animating the prior policy and practice, narrowly limiting courthouse arrests. ICE-AR-25 (prior policy explaining that law

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

enforcement has a "special responsibility to ensure [] access to the courthouse," and citing chilling effect that courthouse arrests would have on "access to courthouses and . . . the fair administration of justice."). Indeed, discounting the concern underlying ICE's prior policy necessitated "more detailed justification than what would suffice for a new policy created on a blank slate." *Fox Television Stations,* 556 U.S. at 515. Yet the administrative record demonstrates that the agency did not even attempt to engage with the likely chilling effect of the new policy, let alone meaningfully address and explain it.

*Second*, the Immigration and Nationality Act (INA), the statute from which ICE derives its arrest authority, "reflects a fundamental concern with ensuring noncitizens' appearance and participation in immigration proceedings." Stay Order at 23; *see also id.* ("In the immigration context, the agency's 'approach must be tied, even if loosely, to the purposes of the immigration laws or the appropriate operation of the immigration system.'") (citing *Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 992 (9th Cir. 2025) (quoting *Judulang v. Holder*, 565 U.S. 42, 55 (2011))). The predictable absenteeism caused by chilling access to immigration court undermines the balance Congress and implementing regulations have struck in creating procedures to provide noncitizens with notice and an opportunity to be heard in person regarding their removability and relief from removal. *See, e.g.*, 8 U.S.C. § 1229(a)(1) (requiring detailed written notice); 8 C.F.R. § 1240.10 (requiring immigration judge to advise noncitizen of their rights and explain removal charges in non-technical terms); 8 C.F.R. § 1240.11(a)(2) (requiring immigration judge to inform noncitizen of "apparent eligibility to apply for any of the benefits enumerated in this chapter" and to "afford the alien an opportunity to make application during the hearing"). This system encourages immigration court attendance; it also discourages absenteeism through the *in absentia* removal statute, under which missing a single court hearing "shall" result in a final order of removal. 8 U.S.C. § 1229a(b)(5)(A). *See also* 8 U.S.C. § 1229a(b)(7) (entry of in absentia order causes ten-year bar on seeking discretionary relief from removal). At bottom, the chilling effect of immigration courthouse arrests is in deep tension with congressional objectives reflected in the

INA.[6] *Accord Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, at *14 (N.D. Cal. Sept. 12, 2025) (observing that ICE courthouse arrest activity "has thrown into turmoil the steady enforcement of immigration law through repeated, highly public arrests in courtroom hallways.").

*Third*, the *raison d'être* for the time-honored common law privilege against civil arrest in or near court is to defend against deterring voluntary participation in court proceedings and to protect the fair administration of justice. 3 William Blackstone, *Commentaries on the Laws of England* 289 (1768). There are strong arguments that this common-law privilege applies to civil immigration arrests, but even if it does not, ICE—having litigated against that proposition in multiple courts, *e.g.*, *Velazquez-Hernandez v. ICE*, 500 F. Supp. 3d 1132, 1137 (S.D. Cal. 2020); *New York v. ICE*, 466 F.Supp.3d 439 (S.D.N.Y. 2020)—was certainly on notice that removing limits on civil arrests at immigration courts would chill attendance.

Despite all of this, the ICE Courthouse Arrest Policy is silent on this "important aspect of the problem." *State Farm*, 463 U.S. at 43, 51. *See* Stay Order at 21 ("ICE's 2025 policies say nothing about these chilling effects."). The administrative record is likewise devoid of any consideration of chill. *See, e.g.*, ICE-AR-54-55 (Jan. 21, 2025, email from Acting ICE Director Caleb Vitello). Under the APA, however, the agency was dutybound to consider the chilling effect: "ICE cannot choose to ignore the 'costs' of its new policies—chilling the participation of noncitizens in their removal proceedings—and consider only the policies' purported 'benefits' for immigration enforcement." Stay Order at 24. Based on this alone, ICE's Courthouse Arrest Policy is arbitrary and capricious.

---

[6] In combination with ICE's new claim of authority to enter homes through force on the basis of a removal order, without any warrant or neutral review, the Courthouse Arrest Policies would have the Kafkaesque effect of scaring people from attending immigration court and then ripping those same people from their homes on the faulty premise that they had been given a fair day in court. Memorandum from Acting ICE Director Todd Lyons, "Utilizing Form I-205, Warrant of Removal" (dated May 12, 2025) available at https://s3.documentcloud.org/documents/26499371/dhs-ice-memo-1-21-26.pdf.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

**b.** **The ICE Courthouse Arrest Policy Lacks a Reasoned Explanation as to Immigration Courts**

When, as here, an agency "decides to depart from decades-long past practices and official policies, the agency must at a minimum acknowledge the change and offer a reasoned explanation for it." *Am. Wild Horse Pres. Campaign*, 873 F.3d at 923. Neither the ICE Courthouse Arrest Policy nor its corresponding administrative record evince *any* awareness of the sea change that the new policy works in ICE arrest practices around *immigration* courthouses specifically. Immigration courthouse arrests involve considerations far different from the primarily criminal-courthouse enforcement that both the current ICE policy and its predecessors contemplate. For several reasons, this results in there being "no 'rational connection between the facts' on which the policies rely 'and the choice made' to expand courthouse arrests at *immigration* courts." Stay Order at 24 (quoting *All. for the Wild Rockies*, 68 F.4th at 493) (emphasis in original).

*First*, the ICE Courthouse Arrest Policy states that "agencies routinely engage in enforcement activities in or near courthouses because many individuals appear in courthouses for *unrelated criminal or civil violations*." ICE-AR-1 (emphasis added). Of course, that does not describe immigration arrests at immigration courts, where ICE is not arresting people appearing for unrelated violations but instead within the very same proceeding for which those people already are attending court. Likewise, while immigration arrests at *non*-immigration courthouses serve to apprehend individuals in order to place them into removal proceedings or to effectuate removal, no such function is served by ambushing a person in immigration court who has been previously released by either DHS or an immigration judge and is *voluntarily* appearing for their day in court, in reliance on the basic expectation that they can safely go home afterward. *Cf.* Stay Order at 25 (explaining that release pending removal proceedings means that ICE "has necessarily already determined that the noncitizen is neither a flight risk nor a threat to the public"). Had the policy considered this distinction, it naturally would include a proviso setting out that arrest partway through removal proceedings is not warranted absent a material change of circumstances. *See Garro Pinchi v. Noem*, No. 25-cv-05632-PCP, 2025 WL 3691938, at *2-3 (N.D. Cal. Dec. 19, 2025) (discussing, *inter alia*, *Saravia*, 280 F. Supp. 3d at 1176; *Matter of Sugay,* 17 I. & N. Dec.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · Fax 415.989.1663

637, 640 (BIA 1981)).

*Second*, the ICE Courthouse Arrest Policy claims that courthouse arrests "can reduce safety risks" because "individuals entering courthouses are typically screened by law enforcement personnel for weapons and other contraband." ICE-AR-1. But the policy presents no facts or analysis establishing the purported "safety risks" or showing that the changed policy reduces any such risks. In fact, the government already has determined that the noncitizens attending immigration court hearings do *not* present a safety threat or flight risk. *See, e.g., Saravia*, 280 F. Supp. 3d at 1176 ("Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."); *see also* 8 C.F.R. § 1236.1(c)(8) (requiring noncitizens seeking release to demonstrate they are neither a "danger to property or persons" nor a flight risk). Moreover, neither the policy nor the AR "explain why the prior guidance's approach, which allowed courthouse arrests of noncitizens deemed to threaten public safety if there was no 'safe alternative location,'" was inadequate to address this concern. Stay Order at 25.

*Third*, the ICE Courthouse Arrest Policy seeks to justify courthouse immigration arrests as "required when in jurisdictions refuse to cooperate with ICE, including when such jurisdictions refuse to honor immigration detainers and transfer aliens directly to ICE custody." ICE-AR-1. But while that may have relevance for justifying immigration arrests at criminal courthouses, the policy is devoid of any explanation for why that is relevant to *immigration* courthouse arrests. Moreover, the ICE Courthouse Arrest Policy is not targeted at, let alone limited to, noncitizens who would be the subject of an immigration detainer. At the very least, ICE was required to offer a coherent explanation of the policy it chose and to consider narrower alternatives that cohered with the policy's stated rationale. *See* Stay Order at 25-26 (citing *DHS. v. Regents of Univ. of Cal.*, 591 U.S. 1, 30 (2020)). Nothing in the policy itself or the corresponding administrative record suggests that the agency did so.

*Fourth* and finally, the text of the ICE Courthouse Arrest Policy instructs officers that, absent operational necessity and high-level approval, they "should avoid enforcement actions in or near courthouses, or areas within courthouses that are wholly dedicated to non-criminal

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · Fax 415.989.1663

proceedings." ICE-AR-2. Despite this, both in practice and through the positions ICE has taken in federal court, the agency inexplicably claims that this instruction does *not* apply to ICE arrests at immigration courthouses. *See* Stay Order at 26-27. The administrative record does not supply the missing logical explanation for this disconnect, thereby underscoring that the agency not only failed to offer a logical explanation for its policy choice but also failed to engage in reasoned decision making in the first place. Such an extraordinary departure from ICE's prior policy and practice of abstaining from immigration courthouse arrests may not, consistent with the APA, be accomplished "sub silentio." *F.C.C.*, 556 U.S. at 515.

### c. The ICE Courthouse Arrest Policy Fails to Consider the Serious Reliance Interests Created by Its Prior Policy

Because ICE "was not writing on a blank slate," it was required to consider any "serious reliance interests" its prior policy may have engendered, "determine whether they [are] significant, and weigh them against competing policy concerns." *Thakur v. Trump*, No. 25-cv-04737-RFL, 2025 WL 1734471, at *13 (*citing Regents*, 591 U.S. at 30). In *Regents*, the Supreme Court found that, "[w]hen an agency changes course, as DHS did here, it must 'be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account."'" *Regents*, 591 U.S. at 30 (citations omitted)*.* The Supreme Court concluded that DHS's failure to address the reliance interests of DACA recipients, their families, their employers, and the loss of economic activity and tax revenue resulting from rescission of the DACA program made the rescission arbitrary and capricious. *Id.* at 30-32.

Like in *Regents*, neither the ICE Courthouse Arrest policy nor its administrative record identify or consider reliance interests that may have resulted from ICE's longstanding prior policy and practice prohibiting courthouse arrests. And, like in *Regents*, "there was much for [the agency] to consider." *Id.* at 31. Until recently, individuals pursuing relief in immigration court, their counsel, and court officials all shared the expectation that noncitizens could appear in immigration court without the specter of civil arrest and detention; noncitizens appeared in court expecting to return safely home at the end of the day, pro se assistance programs were built on the

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (COURTHOUSE ARRESTS)

premise that they could serve unrepresented litigants at the courthouse, and immigration judges assumed litigants appearing before them would return for their next hearing.

While ICE had flexibility in *how* to consider those reliance interests and what weight to give them, "it *was* required to assess whether there were reliance interests, determine whether they were significant, and weigh any such interests against competing policy concerns." *Regents*, 591 U.S. at 33 (emphasis in original). Because the ICE Courthouse Arrest Policy and its corresponding administrative record fail to assess whether there were any reliance interests at all, let alone determine if they are significant or take them "into account," *F.C.C.*, 556 U.S. at 515, this, too, renders the policy arbitrary and capricious. *Encino Motorcars*, 579 U.S. at 212.

### 2.    The EOIR Courthouse Arrest Policy is Arbitrary and Capricious

The EOIR Courthouse Arrest Policy is arbitrary and capricious because it fails "(1) to provide a rational explanation for its authorization of widespread arrests at immigration courthouses and (2) to address key considerations underlying the prior policy." Stay Order at 29. Additionally, the policy is arbitrary and capricious in that it fails to consider the existence of serious reliance interests, let alone account for them.

### a.    The EOIR Courthouse Arrest Policy Lacks a Reasoned Explanation

A mere week after the abrupt change in ICE's policy on courthouse arrests, EOIR also rescinded its longstanding restriction on civil immigration enforcement at immigration court. However, unlike ICE, EOIR is *not* an enforcement agency. EOIR's mission is "to adjudicate immigration cases by fairly, expeditiously, and uniformly interpreting and administering the Nation's immigration laws."[7] OPPM 23-01, EOIR's prior policy proscribing courthouse arrests, explicitly recognized "the separate and distinct roles of DHS and [EOIR]." That recognition appropriately reflected the principle that law enforcement agencies "should not be the sole judges of when to utilize constitutionally sensitive means in pursuing their tasks." *United States v. U.S. Dist. Court for E. Dist. of Mich.,* 407 U.S. 297, 315-16 (1972). But the EOIR Courthouse Arrest

---

[7] Pltf's Req. for Judicial Notice, Ex. D.

COBLENTZ PATCH DUFFY & BASS LLP
ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663

Policy simply relies on the ICE Courthouse Arrest Policy as the basis for changing its own policy. OPPM 25-06 at 1 ("[The 2021] DHS Memorandum has been rescinded . . . . As such, there is no longer a basis to maintain OPPM 23-01."). This is arbitrary and capricious for several reasons.

*First*, the EOIR Courthouse Arrest Policy fails "to appreciate the full scope of [EOIR's] discretion." *Regents*, 591 U.S. at 26; *see also id.* at 12-13 (finding DHS termination of DACA to be arbitrary and capricious where DHS simply parroted DOJ legal analysis without exercising independent discretion). It claims that the 2023 policy it rescinds was *ultra vires* because EOIR ostensibly lacks authority to "prohibit DHS from conducting any action it is otherwise lawfully authorized to take." OPPM 25-06 at 2. The EOIR Courthouse Arrest Policy offers this statement without any elaboration, aside from citing to all of Title 8. *Id.* As the Court has correctly observed, however, the EOIR Courthouse Arrest Policy actually maintains that EOIR does have the authority to limit ICE from "conduct[ing] civil immigration enforcement actions in private EOIR space which is not customarily open to the public." Stay Order at 29-30 (quoting OPPM 25-06). EOIR fails to explain "why the same would not be true of other parts of its immigration courthouses." *Id.* (finding that such "an internally inconsistent analysis is [likely] arbitrary and capricious") (citation omitted).

Moreover, ample authority supports EOIR's ability to regulate conduct in its courthouses. For example, 8 U.S.C. § 1103(g) confers broad authority on the Attorney General to administer the immigration courts, and 5 U.S.C. § 301 gives executive department heads the power to make rules concerning the use of their respective agencies' property. *See also* 6 U.S.C. § 521 (establishing that EOIR is subject to the direction and regulation of the Attorney General). And 8 C.F.R. § 1003.0(b) sets out various powers of the Director of EOIR, including to prescribe EOIR operations and to "[p]rovide for appropriate administrative coordination with . . . the Department of Homeland Security[.]" 8 C.F.R. § 1003.0(b)(1)(i), (iii). These authorities appear to provide more than enough authority for the 2023 policy. But because the EOIR Courthouse Arrest Memo does not discuss any of them, it is impossible to discern EOIR's theory for its conclusory statement that the 2023 policy was "likely *ultra vires*." OPPM 25-06 at 2. And even if EOIR had

NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT (COURTHOUSE ARRESTS)

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

supported that statement with legal analysis and correctly concluded that the 2023 policy exceeded EOIR authority in some specific way, the agency then would have been required to consider what parts of the 2023 policy could and should have been preserved. *See Regents*, 591 U.S. at 25-26 (faulting DHS for terminating the entire program when only certain aspects of it were illegal).

*Second*, the EOIR Courthouse Arrest Policy fails to provide a reasoned explanation for permitting ICE enforcement actions at *immigration* courts, as distinct from other courthouses where ICE might conduct enforcement. EOIR cannot rely on ICE's policy for that purpose, because ICE's policy did not address immigration courts, let alone address them from the vantage point of EOIR's distinct mission and role.[8]

*Third*, EOIR previously recognized that condoning ICE arrests at immigration courts undermines the two agencies' "separate and distinct role[] . . . in the eyes of the public." EOIR-AR-2. The EOIR Courthouse Arrest Policy does not disclaim the importance of this consideration and appears to acknowledge it, noting that EOIR and ICE conduct "separate functions." OPPM 25-06. Given that premise, there is no reasoned explanation for EOIR's decision to jettison a policy that contributes to a goal the agency ostensibly maintains.[9] In light of this lack of reasoned explanation, the EOIR Courthouse Arrest Policy is arbitrary and capricious.

---

[8] Plaintiffs acknowledge footnote 88 on page 31 of the Court's Stay Order, but contend that, notwithstanding ICE's interpretation of its policy not to include immigration courts among non-criminal courthouses, EOIR cannot point to an ICE policy where that policy and its corresponding administrative record evince no consideration of immigration courts specifically.

[9] The policy casts aspersions on *other* EOIR policies as having eroded "EOIR's integrity and impartiality," OPPM 25-06 at 2, but it does not state that the agency's prior courthouse arrest policy had this effect, and there is no evident logical support for that proposition. That stated, Plaintiffs acknowledge the Court has read the new policy to indicate that EOIR's view is "such a distinction no longer exists in the public eye." Stay Order at 33-34. Plaintiffs seek to preserve this argument.

**b.**     **The EOIR Courthouse Arrest Policy Fails to Address Key Considerations Underlying the Prior Policy**

In rescinding OPPM 23-01, the EOIR Courthouse Arrest Policy summarily dismissed the prior policy's core concern that courthouse arrests would chill the exercise of the right to seek relief in immigration court, offering only this cursory assertion:

> OPPM 23-01 suggested that permitting DHS enforcement actions in or near OCIJ space would have some sort of vague, unspecified "chilling effect" on aliens appearing for hearings or would otherwise "disincentivize" them from appearing. OPPM 23-01 provided no data to support these assertions, nor did it explain why, contrary to logic, aliens with valid claims to legal immigration status would be disincentivized from attending their hearings, even though they had no reason to fear any enforcement action by DHS.

OPPM 25-06 at 2 (quotations in original).

Regarding EOIR's suggestion that the prior policy purportedly lacked data or support for its conclusion that arrests near immigration courthouses would have a chilling effect, an agency's "reasonable predictive judgment" need not be supported by empirical data to be sound. *FCC v. Prometheus Radio Project*, 592 U.S. 414, 427 (2021).[10] EOIR provides no reason for abandoning its assessment regarding the predictable chilling effect of courthouse arrests. Thus, the same reasons why ICE was required to consider chilling effect, *see supra* III.B.1(a), apply with even greater force to EOIR, as an agency dutybound to prioritize the procedures Congress created for presenting and adjudicating claims in immigration court.

The EOIR Courthouse Arrest Policy makes the remarkable and unsubstantiated claim that immigrants "with valid claims" have "no reason to fear any enforcement action." OPPM 25-06 at 2. This claim makes no sense for several reasons. *First*, not all immigration hearings result in final determinations on the merits; many are akin to status conferences. *Second*, an immigrant

---

[10] Although not cited in the prior policy, both common sense and empirical data support the proposition that ICE courthouse arrests have a chilling effect on attendance of court proceedings. *See, e.g.,* Angela Irvine et al., *The Chilling Effect of ICE Courthouse Arrests: How Immigration and Customs Enforcement (ICE) Raids Deter Immigrants from Attending Child Welfare, Domestic Violence, Adult Criminal, and Youth Court Hearings* (Oct. 2019), https://www.immigrantdefenseproject.org/wp-content/uploads/ice.report.exec_summ.5nov2019.pdf.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

could not know, prior to their hearing, whether the immigration judge will find their claim meritorious. *Third*, ICE makes courthouse arrests *before* the conclusion of EOIR proceedings, including prior to an immigration judge even considering the validity of an immigrant's claims. *See, e.g.*, *Garro Pinchi*, 2025 WL 3691938, at *3. Thus, the EOIR Courthouse Arrest Policy fails to address longstanding, important concerns about chilling participation in immigration court proceedings.

The EOIR Courthouse Arrest Policy makes a facile attempt to cite statistics in support of its policy change, but this attempt falls far short. The policy claims—without citation to any source or any support in the administrative record—that after the 2021 DHS Memorandum took effect, over 530,000 immigrants did not attend their scheduled hearings. OPPM 25-06 at 2. Apart from being unsupported, this is a red herring. Prior policies against courthouse arrests did not purport to resolve the problem of all non-appearances; instead, they recognized that the specter of immigration enforcement at court proceedings would only serve to *increase* non-appearance rates through a climate of fear. The EOIR Courthouse Arrest Policy does not explain how expanded immigration enforcement against people already cooperating with the agency would resolve, rather than exacerbate, alleged rates of non-appearance. Stay Order at 32 (explaining that EOIR's reliance on this statistic to demonstrate the non-existence of a chilling effect is a "non sequitur"); *cf. Centro Legal de la Raza v. Exec. Off. for Immigr. Rev.,* 524 F. Supp. 3d 919, 963 (N.D. Cal. 2021) ("[A]s a matter of process and reasoned decisionmaking, an 'agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'") (citation omitted). At bottom, "EOIR's attempts to provide the requisite 'reasoned explanation' for rejecting its prior concerns about chilling effects" fail. Stay Order at 33.

        **c.**      **The EOIR Courthouse Arrest Policy Fails to Consider the Serious Reliance Interests Created by Its Prior Policy**

Like ICE, EOIR "was not writing on a blank slate" and thus was required to consider any "serious reliance interests" its prior policy may have engendered, "determine whether they [are] significant, and weigh them against competing policy concerns." *Thakur*, 2025 WL 1734471, at

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

*13 (*citing Regents*, 591 U.S. at 30). Neither the EOIR Courthouse Arrest policy nor its administrative record identify or consider reliance interests that may have resulted from the longstanding prior policy and practice of avoiding immigration courthouse arrests. As noted previously, individuals pursuing relief in immigration court, their counsel, and court officials all shared the expectation that noncitizens could appear in immigration court without the specter of arrest and detention. The EOIR Courthouse Arrest Policy upends that shared expectation without acknowledging, let alone accounting for it. For this additional reason, the EOIR Courthouse Arrest Policy is arbitrary and capricious.

### C.    The Court Should Hold Unlawful and Set Aside the Agencies' Courthouse Arrest Policies

Where an agency action violates the APA, "[v]acatur and remand is permissible and, indeed, is the presumptive remedy." *Kapa'a v. Trump*, 794 F. Supp. 3d 793, 822 (D. Haw. 2025) (citing *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025)); *see also Corner Post, Inc. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 603 U.S. 799, 830-31 (2024) (Kavanaugh, J., concurring) (cataloguing decisions that vacated agency actions rather than merely enjoining the enforcement of rules against specific plaintiffs). Consistent with the text of Section 706 of the APA, this remedy has long been understood to act against the agency action itself, rather than against particular individuals or entities. *See E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 681 (9th Cir. 2021) ("[W]hen a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed."); *see also, e.g.*, *Regents*, 591 U.S. at 36 & n.7; *Whitman v. American Trucking Ass'ns*, 531 U.S. 457, 486 (2001); *Board of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp.*, 474 U.S. 361, 364-365 (1986). This accords with Congress's understanding that the APA tasked federal courts with addressing agency actions "in much the same way that an appellate court vacates the judgment of trial court." *Corner Post*, 603 U.S. at 830 (Kavanaugh, J., concurring).[11]

---

[11] When courts have "crafted interim equitable relief" in APA cases that is tailored to particular circumstances or parties, they have done so in reliance on the text of Section 705 of the APA.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663

As a corollary, vacatur under Section 706 of a nationwide policy necessarily provides universal relief. That feature of Section 706 vacatur orders is important here, as Defendants have deployed their new policies in immigration courthouses around the country. *See* Declaration of Graeme Blair at ¶ 14 (examining data from other regions and finding "a discontinuous, large increase in estimated [immigration] courthouse arrests after January 20, 2025"). *See also, e.g.*, *H.F.S.R. v. Francis,* No. 1:26-cv-238, 2026 WL 160542, at *3 (N.D. Ga. Jan. 20, 2026) (stating ICE "has frequently detained non-citizens at immigration courthouses when they arrive to comply with their duty to appear in court[s]"); *Make the Rd. N.Y. v. Noem*, No. 25-cv-190, 2025 WL 2494908, at *21 (D.D.C. Aug. 29, 2025) (citing declarations detailing "[a] massive wave of courthouse arrests"). A significant number of Courthouse Arrest class members' cases will be re-venued during the pendency of the proceedings, resulting in their eventual hearings taking place in immigration courts outside of ICE's San Francisco Area of Responsibility. *See* Blair Dec. at ¶¶ 15-18 (explaining that thousands of cases now pending *outside* of ICE's San Francisco Area of Responsibility were previously venued within the San Francisco Area of Responsibility, including 143 that were originally venued within the San Francisco Area of Responsibility during 2025). Cases may be re-venued if class members move to other areas for economic or other reasons, *cf.* 8 C.F.R. § 1003.20(b) (establishing "good cause" standard for changes of venue), but also, EOIR may *sua sponte* transfer venue outside of the San Francisco Area of Responsibility. *See* Pltf's Req. for Judicial Notice, Ex. E ("EOIR has a well-established practice of administratively transferring cases when new hearing locations open or current hearing locations close. . . Such administrative transfers reflect the operational realities of running a nationwide court system in which hearing locations change regularly over time."). Thus, ordering a traditional vacatur remedy under Section 706 will ensure that Courthouse Arrest class members

---

*Immigr. Defs.*, 145 F.4th at 995 (citing Section 705's language that "grants courts the power to issue all 'necessary and appropriate process' tailored to the circumstances of a particular case to 'preserve status or rights). The text of Section 706 is different, commanding courts to "set aside agency action." 5 U.S.C. § 706(2)(A).

are protected from Defendants' arbitrary and capricious courthouse arrest policies, irrespective of where they must attend immigration court.

## IV.    CONCLUSION

For the reasons stated above, the Court should hold unlawful and set aside the ICE Policy Number 11072.3, ICE Policy Number 11072.4, and EOIR Operating Policies and Procedures Memorandum 25-06.

DATED: January 29, 2026                  LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF
                                         THE SAN FRANCISCO BAY AREA


                                         By:    _/s/ Marissa Hatton_
                                                MARISSA HATTON
                                                ANDREW NTIM
                                                JORDAN WELLS
                                                NISHA KASHYAP
                                                Attorneys for Plaintiffs

DATED: January 29, 2026                  CARECEN SF


                                         By:    _/s/ Laura Victoria Sanchez_
                                                LAURA VICTORIA SANCHEZ
                                                TALA BERARDI HARTSOUGH
                                                Attorneys for Plaintiffs

DATED: January 29, 2026                  AMERICAN CIVIL LIBERTIES UNION
                                         FOUNDATION OF NORTHERN CALIFORNIA


                                         By:    _/s/ Neil K. Sawhney_
                                                NEIL K. SAWHNEY
                                                LAUREN M. DAVIS
                                                Attorneys for Plaintiffs

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 · Fax 415.989.1663
Coblentz Patch Duffy & Bass LLP

DATED:  January 29, 2026                    COBLENTZ PATCH DUFFY & BASS LLP


By:    _____/s/ Mark Hejinian_____
       MARK L. HEJINIAN
       MARCIA V. VALENTE
       DAVID C. BEACH
       CHARMAINE G. YU
       EVAN G. CAMPBELL
       DARIEN LO
       Attorneys for Plaintiffs

ONE MONTGOMERY STREET, SUITE 3000, SAN FRANCISCO, CALIFORNIA 94104-5500
415.391.4800 · FAX 415.989.1663
COBLENTZ PATCH DUFFY & BASS LLP

**ATTESTATION**

I, Mark L. Hejinian, am the ECF user whose identification and password are being used to file the foregoing document. In compliance with LR 5-1(i)(3), I hereby attest that all parties have concurred in this filing.

DATED:  January 29, 2026                    COBLENTZ PATCH DUFFY & BASS LLP


By:      */s/ Mark L. Hejinian*
                                            MARK L. HEJINIAN
                                            Attorneys for Plaintiffs