CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division

DOUGLAS JOHNS (CABN 314798)
WILLIAM SKEWES-COX (DCBN 1780431)
Assistant United States Attorney

60 South Market Street, Suite 1200
San Jose, California 95113
Telephone: (415) 846-8947
FAX: (408) 535-5081
Douglas.Johns@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CARMEN ARACELY PABLO SEQUEN, YULISA ALVARADO AMBROCIO, and LIGIA GARCIA,<br><br>Plaintiffs,<br><br>v.<br><br>SERGIO ALBARRAN, MARCOS CHARLES, THOMAS GILES, MONICA BURKE, KRISTI NOEM, U.S. DEPARTMENT OF HOMELAND SECURITY, TODD M. LYONS, SIRCE E. OWEN, PAMELA BONDI, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION AND REVIEW, UNITED STATES OF AMERICA,<br><br>Defendants. | CASE NO. 25-cv-06487-PCP<br><br>**DEFENDANTS' COUNTER-MOTION AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT – 12-HOUR WAIVER**<br><br>Honorable P. Casey Pitts<br>United States District Judge |

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. ISSUES TO BE DECIDED ..... 2

III. THIS COURT SHOULD STAY PROCEEDINGS PENDING APPEAL ..... 3

IV. PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE ..... 4

V. FACTUAL BACKGROUND ..... 4

- A. Declaration of National Emergency and President Trump's Executive Orders. ..... 4
- B. Administrative History of Detention Policy. ..... 5
- C. Detention Policy. ..... 6
- D. Additional Relevant Factual Background. ..... 7

VI. PROCEDURAL BACKGROUND ..... 7

- A. Procedural History. ..... 7
- B. Definition of Plaintiffs' Detention Class. ..... 8

VII. LEGAL STANDARD ..... 8

VIII. ARGUMENT ..... 10

- A. Plaintiffs Lack Standing to Seek Relief Other Than at 630 Sansome. ..... 10
- B. Plaintiffs' Claims Are Not Justiciable. ..... 11
- C. The Detention Policy Is Not Reviewable Under the APA. ..... 11
  - 1. Plaintiffs Have Another Adequate Remedy At Law and Have Already Received Relief on the 12-Hour Limit in this Case. ..... 12
  - 2. The Detention Policy Is Committed to Agency Discretion. ..... 13
  - 3. The Detention Policy Is Not Final Agency Action. ..... 14
- D. The Detention Policy Is Neither Arbitrary Nor Capricious. ..... 15
  - 1. The Detention Policy Considered Existing Alternatives, and Plaintiffs Cannot Substitute Their Policy Preferences for ICE and ERO's Reasoned Decisions. ..... 17
  - 2. The Detention Policy Is Consistent with ERO and ICE's Prior Policies Allowing Aliens to be Held More Than 12 Hours in "Exceptional Circumstances." ..... 19

3. The Detention Policy Is Lawful. .....20

4. The Detention Policy Balances Law Enforcement Operations and Enforcing the United States' Immigration Laws With Extended Holding Times. .....20

E. The Detention Policy Should Not be Vacated and Should Not be Vacated Across the United States. .....21

1. Nationwide Vacatur Is Improper Because Application of the Detention Policy Is Specific to Field Offices, and Specific Relief Can Be Afforded to Plaintiffs. .....21

2. Nationwide Vacatur of the Detention Policy Equates to an Impermissible Universal Injunction About the Limits of Holding Aliens Universal Injunction About the Limits of Holding Aliens .....23

3. The Appropriate Remedy Is to Remand the Detention Policy Back to ICE and ERO. .....24

IX. CONCLUSION .....25

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Am. Trucking Assoc., Inc. v. Atchison, T. & S.F.R. Co.*,
387 U.S. 397 (1967) ... 17

*Am. Hop. Assoc. v. Azar*,
385 F. Supp. 3d 1 (D.D.C. 2019) ... 24

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ... 9

*Arizona v. United States*,
567 U.S. 387 (2012) ... 15

*Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*,
462 U.S. 87 (1983) ... 17

*Bennett v. Spear*,
520 U.S. 154 (1997) ... 14

*Biden v. Texas*,
597 U.S. 785 (2022) ... 25

*Burlington Truck Lines v. United States*,
371 U.S. 156 (1962) ... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ... 9

*Cent. Maine Power Co. v. FERC*,
252 F.3d 34 (1st Cir. 2001) ... 25

*City of Oakland v. Lynch*,
798 F.3d 1159 (9th Cir. 2015) ... 12

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) ... 4

*Ctr. for Biological Diversity v. Haaland*,
58 F.4th 412 (9th Cir. 2023) ... 14

*Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*,
67 F.4th 1027 (9th Cir. 2023) ... 9

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*,
591 U.S. 1 (2020) ... 9

*DHS v. Regents of Univ. of Cal.*,
591 U.S. 1 (2020) .......... 24

*Ecological Rights Found. v. Fed. Emergency Mgmt.*,
384 F.Supp.3d 1111 (N.D. Cal. 2019) .......... 16

*F.C.C. v. Fox Television Studios, Inc.*,
556 U.S. 502 (2009) .......... 16

*Friends of the Earth, Inc. v. Laidlaw Environmental Services*
528 U.S. 693 (2000) .......... 10

*Griggs v. Provident Consumer Discount Co.*,
459 U.S. 56 (1982) .......... 3

*Hinck v. United States*,
550 U.S. 501 (2007) .......... 12

*I.N.S. v. Orlando Ventura*,
537 U.S. 13 (2002) .......... 25

*Jajati v. United States Customs and Border Protection*,
102 F.4th 1011 (9th Cir. 2024) .......... 13

*Kinney-Coastal Oil Co. v. Kieffer*,
277 U.S. 488 (1928) .......... 23

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......... 4

*Lincoln v. Vigil*,
508 U.S. 182 (1993) .......... 13

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......... 10, 14, 15

*Massachusetts v. EPA*,
549 U.S. 497 (2007) .......... 10

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .......... 9

*Michigan v. EPA*,
576 U.S. 743 (2015) .......... 9

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 9, 10, 16, 17

*National TPS Alliance v. Noem*,
No. 25-5724, -- F.4th --, 2026 WL 226573 (9th Cir. Jan. 28, 2026)) .......... 22

*National TPS Alliance*,
2026 WL 226573 .......... 22, 23

*Natural Grocers v. Vilsack*,
627 F. Supp. 3d 1130 (N.D. Cal. 2022) .......... 9

*Nat'l Ass'n of Home Builders v. Norton*,
340 F.3d 835 (9th Cir. 2003) .......... 17, 18, 20, 21

*Nat'l Family Farm Coal. v. Vilsack*,
758 F.Supp.3d 1060 (N.D. Cal. 2024) .......... 9

*New Jersey Conservation Found. v. FERC*,
111 F.4th 42 (D.C. Cir. 2024) .......... 25

*Occidental Eng'g Co. v. INS*,
753 F.2d 766 (9th Cir. 1985) ..........8

*Palisades Gen. Hosp. Inc. v. Leavitt*,
426 F.3d 400 (D.C. Cir. 2005) .......... 25

*Perez Perez v. Wolf*,
943 F.3d 853 (9th Cir. 2019) .......... 15

*Permian Basin Area Rate Cases,*
390 U.S. 747 (1968) ..........17

*Pinnacle Armor, Inc. v. United States*,
648 F.3d 708 (9th Cir. 2011) ..........13

*Porter v. Cal. Dep't of Corr.*,
419 F.3d 885 (9th Cir. 2005) .......... 9

*Racheria v. Jewell*,
776 F.3d 706 (9th Cir. 2015) .......... 16, 17

*Ramirez v. ICE*,
568 F. Supp. 3d 10 (D.D.C. 2021) .......... 24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) .......... 10

*Stand Up for California! v. U.S. Dep't of Interior*,
879 F.3d 1177 (D.C. Cir. 2018) .......... 24, 25

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........ 10

*Trump v. Casa*,
606 U.S. 831 (2025) ........ 23, 24

*United States v. Texas*,
599 U.S. 670 (2023) ........ 24

*Vaz v. Neal*,
33 F.4th 1131 (9th Cir. 2022) ........ 9

*Wild Fish Conservancy v. Salazar*,
628 F.3d 513 (9th Cir. 2010) ........16

**STATUTES**

5 U.S.C. § 553 ........ 17

5 U.S.C. § 701 ........ 13

5 U.S.C. § 703 ........ 24

5 U.S.C. § 704 ........ 12, 14

5 U.S.C. § 706 ........ 24

**FEDERAL RULES OF CIVIL PROCEDURE**

Federal Rule of Civil Procedure 56 ........ 8, 9

**EXECUTIVE ORDERS**

*Protecting the American People Against Invasion,* 90 Fed. Reg. 8443 (Jan. 20, 2025) ........4

*Securing Our Borders,* 90 Fed. Reg. 8327 (Jan. 20, 2025)........4, 18, 19

## NOTICE OF MOTION AND COUNTER-MOTION

PLEASE TAKE NOTICE that Defendants respectfully oppose Plaintiffs' motion for partial summary judgment and move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil Local Rule 16-5 to resolve all claims arising under the Administrative Procedure Act pertaining to the Nationwide Hold Room Waiver. Defendants' opposition and counter-motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, and all the matters of record filed with the Court.

## STATEMENT OF RELIEF

Defendants seek an order concluding that the Nationwide Hold Room Waiver complies with the Administrative Procedure Act.

## I. INTRODUCTION

Beginning in January 2025, President Donald J. Trump and his administration started pursuing their promise to the American public to enforce the immigration laws of the United States of America. Immediately upon being elected, President Trump declared a national emergency at the Southern Border. He issued two Executive Orders that terminated the harmful immigration policies of the previous administration including "catch-and-release." Because of President Trump's commitment to immigration enforcement, U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations' ("ERO") daily population of detainees increased. Initially, ERO's individual field offices applied for waivers of certain detention conditions including the 12-hour hold limit to both (A) comply with the Executive Branch's directives; and (B) safely detain and process aliens. As the number of waivers increased across the United States, ICE needed a more efficient way to confer discretion on individual field offices about how to safely hold and process aliens in short-term holding facilities. ICE's "Nationwide Hold Room Waiver" (the "Detention Policy") represents a logical and reasoned approach to providing field offices around the United States with discretion about how long to detain aliens in short-term holding facilities.

Plaintiffs' motion ignores the Detention Policy's history, plain language, and purpose. *See* Pls.' Mot. for Partial Summ. J. ("Mot."), ECF No. 175. Plaintiffs continue to overlook and disregard that the Detention Policy does not mandate that field offices hold aliens for longer than 12 hours. The Detention Policy confers discretion on field offices about the detention of aliens and is consistent with ICE and ERO's prior policies about how long aliens can be held in short-term holding facilities.

The Court should deny Plaintiffs' motion for summary judgment on the 12-hour waiver (i.e., the Detention Policy) and grant Defendants' counter-motion. The Detention Policy is not reviewable under the Administrative Procedure Act ("APA") because it is not final agency action and is committed to ICE and ERO's discretion by law. Even more important, Plaintiffs have another adequate remedy in the form of conditions of confinement claims that have already been actively pursuing in this case and have already received relief on. In addition, the Detention Policy is neither arbitrary nor capricious under the APA.

Even if the Court finds that the Detention Policy is inconsistent with the APA, vacatur across the United States is improper. Both the Supreme Court and the Ninth Circuit more recently have cautioned against providing relief beyond the parties in the case. In this case, and based on Plaintiffs' own class definition, the Court can provide complete relief to them by vacating the Detention Policy as to the field office located at 630 Sansome Street, San Francisco, California 94111 ("630 Sansome"). Because the Detention Policy is applied individually at each field office, that would be consistent with both the policy and binding recent precedent. In the alternative, if the Court finds that the Detention Policy is inconsistent with the APA, it should remand it back to ICE and ERO.[1]

## II. ISSUES TO BE DECIDED

1. Whether the Court should stay the proceedings in this case pending Defendants' pending appeal.

2. Whether Plaintiffs lack standing to challenge the Detention Policy at any field office other than 630 Sansome.

[1] Pursuant to Civil Local Rule 16-5, the parties' prior stipulation, and the Court's order granting the stipulation, the parties forego oral argument unless the Court deems it necessary or helpful. *See* Civil L.R. 16-5; Order Granting Stipulated Joint Req. at 5, ECF No. 168; Pls.' Notice of Mot. at 1 n.1, ECF No. 175.

3. Whether the Detention Policy is reviewable under the APA because Plaintiffs have an adequate remedy at law, the detention of aliens is committed to ICE and ERO's discretion, and the Detention Policy is not final agency action because each field office decides how long to detain an alien.

4. Whether the Detention Policy is arbitrary or capricious.

5. If the Court concludes that the Detention Policy violates the APA, whether vacatur of the Detention Policy should be limited to 630 Sansome based on the administrative record and Plaintiffs' proposed class definition.

6. If the Court concludes that the Detention Policy violates the APA, whether the Detention Policy should be vacated to ICE and ERO pursuant to further instructions from the Court.

## III. THIS COURT SHOULD STAY PROCEEDINGS PENDING APPEAL

For the reasons expressed in Defendants' opposition to Plaintiffs' motion for final class certification, the Court should stay the proceedings in this case pending appeal. *See* Defs.' Opp'n to Pls.' Mot. for Final Class Certification at 2-4, ECF No. 179. On November 25, 2025, this Court issued an order provisionally certifying Plaintiffs' two proposed classes. *See* Order Provisionally Certifying Classes, Granting Prelim. Inj., and Denying Stay at 1, 31, ECF No. 138. On December 23, 2025, Defendants appealed that order. *See* Defs.' Notice of Appeal at 2, ECF No. 154. In their motion for partial summary judgment, Plaintiffs are seeking relief on behalf of one of the classes at issue in the pending appeal. *See* Mot. at 1 (seeking relief on behalf of "Plaintiff Ligia Garcia, on behalf of herself and the Detention Class"). When Plaintiffs filed their motion for partial summary judgment, the Court had not certified the Detention Class. Certification of the Detention Class is at issue in Defendants' appeal. Defendants' appeal has not been resolved.

Consistent with Supreme Court precedent including *Griggs* and *Coinbase*, this Court should stay this case while the Court of Appeals considers the threshold question of whether Plaintiffs' proposed classes should have been certified at all. *Compare* Order Provisionally Certifying Classes, Granting Prelim. Inj., and Denying Stay at 1, 31, ECF No. 138 *with* Notice of Appeal, ECF No. 154; *see also Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (explaining that the filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal");

*see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 741 (2023) (recognizing that an automatic stay of district court proceedings is required related to any aspect of the case involved in the appeal). In addition, the Court should stay the case as a matter of discretion. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (acknowledging the power of the district court to stay proceedings). For either reason, and as further set forth in Defendants' opposition to Plaintiffs' motion for final class certification, the Court should stay the proceedings. *See* Defs.' Opp'n to Pls.' Mot. for Final Class Certification at 2-4, ECF No. 179.

## IV. PLAINTIFFS' REQUEST FOR JUDICIAL NOTICE

Plaintiffs request that the Court take judicial notice of two documents: (1) a screenshot of ICE's 2000 National Detention Standards for Non-Dedicated Facilities; and (2) ICE's Detention Standard from September 20, 2000. *See* Mot. at 4; *see also* Pls.' Req. for Judicial Notice at 3, Exs. A, B, ECF No. 177.[2] Defendants have no objection to the Court taking judicial notice of those documents.

## V. FACTUAL BACKGROUND

### A. Declaration of National Emergency and President Trump's Executive Orders.

In their opposition to Plaintiffs' motion for a preliminary injunction and stay of agency action, Defendants analyzed President Trump's declaration of a national emergency at the Southern Border of the United States and two applicable Executive Orders: (1) "Protecting the American People Against Invasion," Executive Order 14159; and (2) "Securing Our Borders," Executive Order 14165. *See* Defs.' Opp'n to Mot. for Prelim. Inj. and Stay of Agency Action at 3-4, ECF No. 111 (citing Proclamation No. 10886, 90 Fed. Reg. 8327 (Jan. 20, 2025), Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025), and Exec. Order No. 14165, 90 Fed. Reg. 8467 (Jan. 20, 2025)). For brevity, and given the Court's prior analysis, Defendants will not summarize that declaration and those Executive Orders again. Defendants reserve all of their rights with respect to President Trump's national emergency declaration and applicable Executive Orders including, but not limited to, the right to raise them in any future appeal.

[2] Plaintiffs requested that the Court take judicial notice of other documents. *See* Pls.' Req. for Judicial Notice, ECF No. 177. However, these other documents are not at issue in this motion for partial summary judgment.

**B. Administrative History of Detention Policy.**

During President Biden's Administration, ICE issued Policy Number "11087.2: Operations of ERO Holding Facilities."[3] AR-12.[4] The policy provides guidelines for U.S. Immigration and Customs Enforcement and Removal Operations of its holding facilities. *Id.* Under the guidelines, a "hold room" is "[a] holding cell, cell block, or other secure enclosure within a holding facility." AR-13. A "holding facility" is "[a] facility that contains hold rooms that are primarily used for the short-term confinement of individuals who have recently been detained, or are being transferred to or from a court, detention facility, other holding facility, or other agency." *Id.* The policy provides that "[a]bsent exceptional circumstances, no detainee should be housed in a holding facility for longer than 12 hours." AR-18.

Immediately after the American public elected President Trump, his administration started enforcing the immigration laws of the United States again. As a result, ERO's daily population of detained aliens increased across the United States. AR-2. To safely and effectively hold more aliens, ICE and ERO started executing waivers of the 12-hour hold limit for specific field offices around the United States.

On February 5, 2025, ICE and ERO executed a waiver for the hold room at a field office in Baltimore, Maryland. AR-27-29. The Deputy Field Office Director for ERO Baltimore requested the waiver because of President Trump's "nationwide operating posture" making "detention space less readily available." AR-29. The ERO Baltimore Field Office requested an extension of 48 hours beyond the 12-hour hold limit to detain aliens pending their transfer to detention facilities. *See id.*

A few days later, on February 10, 2025, ICE and ERO executed a waiver for the hold rooms at field offices in Harlingen, Texas, Miami, Florida, and San Antonio, Texas. AR-31-34. As with the ERO Baltimore Field Office, the ERO Offices in Harlingen, Miami, and San Antonio requested an extension to 48 hours "for utilization of hold rooms to detain aliens pending transfer/removal to support operation

[3] U.S. Immigration and Customs Enforcement and Removal Operations manage ICE's immigration enforcement progress including, but not limited to, the identification, arrest, detention, and removal of aliens.

[4] Citations to "AR" are citations to the certified administrative record for the "Nationwide Hold Room Waiver" on December 19, 2025. *See* Defs.' Notice of Filing of Certified Administrative Record for the Nationwide Hold Room Waiver, ECF No. 145.

during the week of February 9, 2025, only." AR-34. On February 27, 2025, ICE and ERO executed a hold room waiver for the New York City Field Office. AR-35; AR-40-41.

To accommodate the number of waiver requests, on March 24, 2025, ICE established a process to streamline waiver requests from field offices for both the 12-hour limit and other conditions. AR-42-43. The process required each waiver request to include evidence substantiating it. *Id.* As a result of ICE's new process, multiple ERO field offices requested waivers for conditions within their hold rooms including the 12-hour hold limit.

In February 2025, multiple offices within the ERO Los Angeles Field Office requested a waiver of the 12-hour hold room utilization time. AR-145-149. In March 2025, multiple offices within ERO New Orleans requested a waiver. AR-90-143. In April 2025, multiple offices within the ERO Dallas Field Office requested waivers including for the 12-hour policy. AR-70-75. In June 2024, ERO San Francisco Field Office requested an extension of 24 hours beyond the 12 hours "for utilization of hold rooms to detain aliens pending transfers outside the AOR to support the San Francisco AOR." AR-45.

Each time that a field office requested a waiver, it was reviewed and approved by several law enforcement and custody specialists. *See generally* AR-44-88. Each field office requesting a waiver had to specifically describe the waiver at issue and provide support for it. *See id.* In multiple requests, ICE described the failure of state and local law enforcement cooperating with federal law enforcement as one of the reasons why a waiver was needed. AR-145 (describing effect of the California Values Act on immigration enforcement); AR-29 (describing the consequences of the Maryland Dignity Not Detention Act on immigration enforcement).

**C. Detention Policy.**

On June 24, 2025, ICE issued the Nationwide Hold Room Waiver ("Detention Policy") in response to President Trump's declaration of a national emergency and two Executive Orders. AR-1-2. As a result of President Trump's National Emergency Declaration and his two related Executive Orders, the daily population of detained aliens increased. AR-2. Immigration field officers no longer had, or have, the option to release aliens or decline to release aliens into custody from other agencies. *See id.*

Critically, the Detention Policy does not require that a field office detain aliens for more than 12 hours. AR-1-2. The Detention Policy does not mandate how long a field office must detain an alien. *See id.* Instead, the Detention Policy "allows for aliens who are recently detained, or are being transferred to or from a court, detention facility, or holding facility, or other agency to be housed in a holding facility, for up to, but not exceeding 72 hours, absent exceptional circumstances." AR-1. The Detention Policy will remain in effect for "one calendar year," although ICE has discretion to extend that date. *See id.*

Under the Detention Policy, ICE and ERO remain committed to ensuring the safety of detainees. *See* AR-2. Field offices must follow the existing and extensive policies, procedures, and guidance governing holding facilities. *See id.* ERO will only hold detainees "for the least amount of time required for their processing, transfer, release, or repatriation as operationally feasible." *See id.*

### D. Additional Relevant Factual Background.

Plaintiffs are aliens who entered the United States without being inspected or admitted. *See* Pls.' Am. Compl. ("FAC") at 34-40, ECF No. 32. The U.S. Department of Homeland Security ("DHS") initiated removal proceedings against Plaintiffs charging them with being present in the United States without admission. Plaintiffs' individual circumstances are different. *See id.* at 34-40.

Plaintiffs have only ever experienced the Detention Policy at 630 Sansome. *See* FAC. Plaintiffs have never been to any other hold room that applies the Detention Policy including, but not limited to, in Maryland, Louisiana, Maryland, Texas, Florida, or any other part of California. *See, e.g.,* AR-27-29 (Baltimore, Maryland); AR-31-34 (Texas and Florida). In their motion for partial summary judgment, Plaintiffs failed to proffer any evidence about 630 Sansome or any other field office. *See generally* Mot.

## VI. PROCEDURAL BACKGROUND

### A. Procedural History.

The parties and the Court are aware of the procedural history of this case. Defendants only include the relevant procedural background for Plaintiffs' motion for partial summary judgment on the Detention Policy. On October 10, 2025, and before Defendants had even responded to the amended complaint, Plaintiffs filed their motion for a preliminary injunction and stay of agency action. *See* Pls.' Mot. for Prelim. Inj. and Stay of Agency Action, ECF No. 64. On October 24, 2025, Defendant's filed their

opposition. *See* Defs.' Opp'n to Mot. for Prelim. Inj. and Stay of Agency Action, ECF No. 111. Subsequently, Plaintiffs improperly submitted reply evidence, but the Court allowed Defendants to respond to it. *See generally* Defs.' Resp. to New Evidence, ECF No. 127.

On November 25, 2025, and after a hearing, the Court granted Plaintiffs' motion for provisional class certification and a preliminary injunction. *See* Order Provisionally Certifying Classes, Granting Prelim. Inj., and Denying Stay at 1, 51, ECF No. 138. The Court denied Plaintiffs' motion for a stay of the 12-hour waiver. *See id.* Defendants appealed the Court's order. *See* Defs.' Notice of Appeal at 2, ECF No. 154. On January 29, 2026, Plaintiffs moved for final class certification of the same two classes at issue in Defendants' appeal while the appeal is pending with the Ninth Circuit. *See* Pls.' Mot. for Final Class Certification, ECF No. 172.

**B. Definition of Plaintiffs' Detention Class.**

Plaintiffs filed their motion for partial summary judgment on behalf of the "Detention Class." *See* Mot. at 3. In their motion for provisional class certification, Plaintiffs defined the Detention Class as "[a]ll persons who are now or will be detained in a holding cell in ICE's San Francisco Field Office." *See* Pls.' Mot. for Provisional Class Certification at 3, ECF No. 33. In that same motion, Plaintiffs further defined ICE's San Francisco Field Office as 630 Sansome. *See id.* at 7. Plaintiffs distinguished ICE's San Francisco Field Office from the San Francisco Area of Responsibility. *See id.* at 13. The Court provisionally certified Plaintiffs' Detention Class. *See* Order Provisionally Certifying Classes, Granting Prelim. Inj., and Denying Stay at 1, 31, ECF No. 138.

Later, in Plaintiffs' motion for final class certification, they define the Detention Class as "all persons who are now or will be detained in a holding cell in ICE's San Francisco Field Office." *See* Pls.' Mot. for Final Class Certification at 2, ECF No. 172. Once again, Plaintiffs define ICE's San Francisco Field Office as 630 Sansome. *See id.* at 6. Plaintiffs' Detention Class is expressly limited to the alleged conditions at 630 Sansome based on their own class definition.

## VII. LEGAL STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005). Summary judgment must be granted if there is no genuine issue as to any material fact, viewing the evidence in the nonmoving party's favor. *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022).

"It is well established that, in a suit brought under the APA to review agency action, 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *See Nat'l Family Farm Coal. v. Vilsack*, 758 F.Supp.3d 1060, 1071 (N.D. Cal. 2024) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)). "In reviewing agency action other than the interpretation of a statute, the scope of review under the APA is narrow," and "agency action will be upheld unless it is found to be 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Nat'l Family Farm Coal.,* 758 F.Supp.3d at 1073 (quoting *Natural Grocers v. Vilsack*, 627 F. Supp. 3d 1130, 1143 (N.D. Cal. 2022)). "Agency action is arbitrary and capricious when the agency 'relie[s] on factors which Congress has not intended it to consider, entirely fail[s] to consider an important aspect of the problem, [or] offer[s] an explanation for its decision that runs counter to the evidence before the agency." *Ctr. for Biological Diversity v. U.S. Fish and Wildlife Serv.*, 67 F.4th 1027, 1035 (9th Cir. 2023) (alterations in original) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

"The Court's deference extends to less than stellar work by an agency, so long as its analytical path and reasoning can be reasonably discerned," *Natural Grocers v. Vilsack*, 627 F. Supp. 3d 1130, 1142 (N.D. Cal. 2022) (quotation omitted), although it is still incumbent on agencies to "engage in 'reasoned decisionmaking,' " *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 16 (2020) (quoting *Michigan v. EPA*, 576 U.S. 743, 750 (2015)), and "articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,' " *State Farm Mut. Auto.*

*Ins. Co.*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

**VIII. ARGUMENT**

**A. Plaintiffs Lack Standing to Seek Relief Other Than at 630 Sansome.**

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy" that "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing exists only where the plaintiff demonstrates that (1) he has suffered an "injury in fact" that is concrete, particularized, and actual or imminent, (2) the injury is "fairly traceable" to the defendant's conduct, and (3) the injury can be "redressed by a favorable decision." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Massachusetts v. EPA*, 549 U.S. 497, 517 (2007) (same). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *See Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC)*, 528 U.S. 693, 706 (2000); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

For starters, Plaintiffs lack standing to seek relief other than at 630 Sansome based on their own class definition. *See* Pls.' Mot. for Final Class Certification at 2, ECF No. 172. Plaintiffs are bringing this motion on behalf of a class of aliens who have allegedly been injured by conditions at 630 Sansome. *See id.* Plaintiffs do not include any alien who allegedly has been injured by conditions at any other field office around the United States. Plaintiffs fail to address that fundamental flaw in their motion. *See generally* Mot. Plaintiffs have expressly defined themselves as being limited to 630 Sansome, yet they are seeking nationwide relief through vacatur. *See* Mot. at 17-18. Based on their own class definition, Plaintiffs lack standing to seek relief other than at 630 Sansome.

Moreover, the Detention Policy does not require any field office to take any action. AR-1-2. The Detention Policy does not mandate that any field office hold an alien longer than twelve hours. *See id.* The application of the Detention Policy depends on the circumstances of each field office. AR-1-2. The conditions at each field office may not be the same. In other words, and based on the administrative record, the conditions at each field office vary. *See, e.g.,* AR 27-29 (Baltimore, Maryland); AR-31-34 (Florida and Texas); AR-40-41 (New York). In their motion, Plaintiffs seek to vacate the waiver of the 12-

hour limit in full. *See* Mot. at 17-18. But Plaintiffs offer no explanation for how they have standing to challenge the 12-hour limit at any location other than 630 Sansome. *See generally* Mot.

To the extent Plaintiffs have suffered an injury in fact, the injury was allegedly caused by the conditions at one particular field office. More specifically, Plaintiffs have only established that they suffered an injury in fact caused by the application of the Detention Policy at 630 Sansome. Plaintiffs have not established that they have suffered an injury at any other field office around the United States. Nor have Plaintiffs proffered any evidence about the conditions of any field office other than 630 Sansome despite the certified administrative record mentioning multiple field offices.

In addition, Plaintiffs have not established that their alleged injury in fact can be redressed by a favorable decision other than at 630 Sansome. If, for example, the Court vacates the Detention Policy at any other field office around the United States, that will not redress Plaintiff's alleged injury caused by the alleged conditions at 630 Sansome. Plaintiffs lack standing to challenge the Detention Policy at any field office other than at 630 Sansome, which is what their proposed class is based on.

**B. Plaintiffs' Claims Are Not Justiciable.**

In their opposition to Plaintiffs' motion for a preliminary injunction and stay of agency action, Defendants argued that Plaintiffs' claims are not justiciable because they lack standing, are moot, and are not ripe. *See* Defs.' Opp'n to Mot. for Prelim. Inj. and Stay of Agency Action at 10-12, ECF No. 111. Defendants acknowledge this Court's prior rulings in this case rejecting their Article III arguments. For brevity, and given the Court's prior rulings, Defendants will not advance those arguments again in this opposition. But Defendants reserve all of their rights on appeal concerning the Article III arguments that they previously raised, and the right to raise those prior arguments in any future appeal.

**C. The Detention Policy Is Not Reviewable Under the APA.**

The Detention Policy is not reviewable under the APA for three separate reasons. First, Plaintiffs have another adequate remedy. Second, the Detention Policy is committed to agency discretion. Third, the Detention Policy is not final agency action.

### 1. Plaintiffs Have Another Adequate Remedy At Law and Have Already Received Relief on the 12-Hour Limit in this Case.

The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. An adequate alternative remedy in a court exists where "a legal remedy under the APA would impermissibly provide for duplicative review." *City of Oakland v. Lynch*, 798 F.3d 1159, 1165 (9th Cir. 2015). The district court should consider whether the statutory scheme "provides a forum for adjudication, a limited class of potential plaintiffs, a statute of limitations, a standard of review, and authorization for judicial relief." *Id.* (quoting *Hinck v. United States*, 550 U.S. 501, 506 (2007)). Plaintiffs' conditions of confinement claims have a forum for adjudication (i.e., district court), a limited class of potential plaintiffs (i.e., aliens detained at 630 Sansome), a standard of review (i.e., deliberate indifference, among others, as cited at ECF 138 at 39), and authorization for judicial relief (i.e., the Court's order and conditions about 630 Sansome). Here, Plaintiffs have two separate adequate remedies arising out of conditions of confinement claims and that they have already taken advantage of in this case.

First, Plaintiffs have, and can, pursue conditions of confinement claims to limit a particular field office from holding aliens longer than 12 hours based on the conditions of that office. Indeed, Plaintiffs pursued those claims in this case, and they were awarded preliminary relief. *See* Order Provisionally Certifying Classes, Granting Preliminary Injunction, and Denying Stay at 50-51, ECF No. 138. Because of the Court's injunction, Defendants were practically precluded from holding aliens longer than 12 hours. *See id.* at 50-51 (listing 13 separate conditions). Eventually, Plaintiffs' claims will be resolved at trial or through summary judgment.

Second, and relatedly, Plaintiffs have, and can, pursue conditions of confinement claims to improve specific conditions at field offices to eliminate the alleged constitutional violations caused by the Detention Policy. Notably, Plaintiffs never argue in their motion that 12 hours is the appropriate amount of time for an alien to be held in a hold room. *See* Mot. Rather, Plaintiffs take issue with the increase of the amount of time that a field office can hold an alien. *See* Mot. at 1, 3-5. Plaintiffs do not appear to dispute that an alien could be held for more than 12 hours if it was done safely and effectively. To

improve any alleged deficiencies in a particular field office, Plaintiffs have, and can, seek relief about specific conditions. For example, in this case, Plaintiffs sought an order requiring medical screenings and limitations on lighting inside the hold rooms. *See* Order Provisionally Certifying Classes, Granting Preliminary Injunction, and Denying Stay at 50-51, ECF No. 138.

It would be difficult for Plaintiffs to argue that they do not have another remedy. The parties have spent the last few months litigating those other remedies. Eventually, the factfinder will weigh and decide the appropriate facts to determine the scope of that remedy. Tellingly, Plaintiffs fail to substantively address the adequate remedy. Plaintiffs summarily conclude that "there is no specific statutory processes or remedy that would apply here." *See* Mot. at 9. Plaintiffs fail to mention the Court's 51-page order and 13 conditions that significantly modified the exact field office they are challenging. *See* Order Provisionally Certifying Classes, Granting Preliminary Injunction, and Denying Stay at 50-51, ECF No. 138. Plaintiffs have another remedy, pursued that other remedy, and are still pursuing that remedy. Plaintiffs offer no explanation for why that remedy is insufficient. Accordingly, the Detention Policy is not reviewable under the APA, and Plaintiffs' motion for partial summary judgment should be denied.

**2. The Detention Policy Is Committed to Agency Discretion.**

Agency action is not subject to judicial review where the action "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *see also Lincoln v. Vigil*, 508 U.S. 182, 190–91 (1993). Agency action is "committed to agency discretion by law" only in "those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply, thereby leaving the court with no meaningful standard against which to judge the agency's exercise of discretion." *See Jajati v. United States Customs and Border Protection*, 102 F.4th 1011, 1016 (9th Cir. 2024) (quoting *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 719 (9th Cir. 2011)).

The 2011 Performance-Based National Detention Standards ("2011 PBNDS") did not limit an alien from being held in a hold room for more than 12 hours. *See* Mot. at 4. As Plaintiffs concede, the 2011 PBNDS allowed aliens to be held for more than 12 hours in "exceptional circumstances." *See id.* Similarly, Policy Number 11087.2, "Operations of ERO Holding Facilities," allowed aliens to be held for more than 12 hours in "exceptional circumstances." AR-12-26; *see also* Mot. at 4. Even Plaintiffs

recognize that ICE and ERO had, and still have, discretion about how long to detain aliens based on varying circumstances. *See* Mot. at 4-5.

The Detention Policy continues the trend of conferring discretion on ICE and ERO's individual field offices about how long to hold aliens in response to President Trump's Executive Orders and declaration of a national emergency. AR-1-2. Plaintiffs never argue that President Trump's Executive Orders and declaration of a national emergency do not qualify as "exceptional circumstances." Under the Detention Policy, a field office retains discretion to hold an alien up to 72 hours in a holding facility based on President Trump's Executive Orders and national emergency declaration. AR-2. But the holding facility must hold aliens "for or the least amount of time required for their processing, transfer, release, or repatriation as operationally feasible." AR-2.

ICE and ERO have discretion about how long to hold aliens. There is no law to apply about how long aliens should be held in a holding facility. Plaintiffs recognize that based on their own analysis. *See* Mot. at 4. There is no meaningful standard to judge ICE and ERO's exercise of discretion. Even if the Court vacates the Detention Policy, based on Plaintiffs' own analysis, ICE and ERO could hold aliens longer than 12 hours based on "exceptional circumstances" at their discretion. The detention and holding of aliens in hold rooms is committed to ICE and ERO. It is not reviewable under the APA.

### 3. The Detention Policy Is Not Final Agency Action.

The APA limits judicial review to "final agency action." 5 U.S.C. § 704. Not all agency conduct is qualified as "final agency action" under the APA. *See Ctr. for Biological Diversity v. Haaland*, 58 F.4th 412, 417 (9th Cir. 2023). "An agency action is "final" only if it both (1) "mark[s] the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," and (2) is "one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). Day-to-day operations of agencies are generally not considered final agency action, and not subject to APA review. *See Lujan,* 497 U.S. at 899.

The Detention Policy is not final agency action. As a starting point, the Detention Policy does not mandate that any field office hold an alien for more than 12 hours. AR-1-2. It provides ICE and ERO's individual field offices with discretion to detain an alien up to 72 hours based on the field office and the

alien's circumstances. AR-2. The field office decides how long to detain an alien. AR-1-2. Thus, the Detention Policy is interlocutory in nature because it does not represent the final step of the detention process for a holding facility. The final step is based on each field office, the circumstances of each field office, and the circumstances of each alien. AR-1-2.

Plaintiffs' own analysis underscores why the Detention Policy is not final agency action. Plaintiffs recognize that the Detention Policy only "allowed" ICE to "substantially increase the length of immigrants' detention in holding facilities." *See* Mot. at 7. Plaintiffs never argue that the Detention Policy did anything more than allow field offices to hold some aliens longer than 12 hours.

Plaintiffs' arguments that the Detention Policy qualifies as "final agency action" and is subject to APA review would have sweeping and untenable consequences. *See* Mot. at 6-7. A court could not review such decisions without bringing within the scope of the APA virtually every aspect of ICE's continuing and constantly changing operations at its facilities. Based on the plain terms of the Detention Policy, each field office retains discretion about how long to detain aliens up to 72 hours. AR-1-2. Every time Defendants wished to alter their own policy, they would have to seek a court's permission and convince the court, through detailed submissions, that the change was due to a sufficient need. ICE's decision to issue the Detention Policy and temporarily waive the prior 12-hour policy was internal, based on its expertise, and in response to a national emergency and two separate Executive Orders. *See id.*

**D. The Detention Policy Is Neither Arbitrary Nor Capricious.**

The Federal Government "has broad, undoubted power over the subject of immigration and the status of aliens." *Arizona v. United States*, 567 U.S. 387, 394 (2012); *see* U.S. Const. art. I § 8, cl. 4 (granting Congress the power to "establish an uniform Rule of Naturalization"). The INA grants broad discretionary authority to the Executive Branch to administer the removal process. *See Perez Perez v. Wolf*, 943 F.3d 853, 860 (9th Cir. 2019) ("Review under the APA is unavailable when 'statutes preclude judicial review' and when the 'agency action is committed to agency discretion by law.'" (internal quotations omitted)) (quoting 5 U.S.C. § 701(a)(1)-(2)).

With regard to review of agency policies, the Supreme Court has held that "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that

of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "[T]he Court will not substitute its own judgment for that of the agency" but will "engage in a careful, searching review to ensure that the agency has made a rational analysis and decision on the record before it." *Ecological Rights Found. v. Fed. Emergency Mgmt.*, 384 F.Supp.3d 1111, 1119 (N.D. Cal. 2019) (quoting *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 521 (9th Cir. 2010)).

"Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm Mut. Auto. Ins. Co.*, 463 U.S. at 43. An agency must examine the relevant data and "articulate a satisfactory explanation for its action." *See F.C.C. v. Fox Television Studios, Inc.*, 556 U.S. 502, 513 (2009). "And of course the agency must show that there are good reasons for the new policy." *Id.* at 515. "But it need not demonstrate to a court's satisfaction that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible under the statute, that there are good reasons for it, and that the agency *believes* it to be better, which the conscious change of course adequately indicates." *Id.* at 515 (emphasis in original). An agency's decision is arbitrary and capricious if it ignores important considerations or evidence on the record. *See Racheria v. Jewell*, 776 F.3d 706, 714 (9th Cir. 2015).

The Detention Policy's plain language and administrative record confirm that it is neither arbitrary nor capricious. The American public elected President Trump, among many reasons, to enforce the immigration laws of the United States. When President Trump took office, he immediately started enforcing the immigration laws of the United States. AR-1. He declared a national emergency. *Id.* President Trump issued two separate Executive Orders pertaining to protecting the public and detaining criminal aliens. *See id.*; AR-3-11. He ended the former administration's policy of releasing aliens. AR-2. Consequently, ERO's daily population increased. *See id.* That increase "put additional strain on finding and coordinating transfers of aliens to available beds" within the prior timeline of 12 hours. *See id.* Because of President Trump's policies, "ERO field offices have had to resort to holding aliens in holding

facilities beyond the 12-hour limit." *See id.* The certified administrative record confirms that ERO field offices around the country including field offices in California, Louisiana, Maryland, and Texas applied for waivers of the 12-hour limit before ICE issued the Detention Policy.

The Detention Policy reflects a decision to provide each ERO field office with discretion about how long to detain aliens up to 72 hours as a result of Executive Branch policies. *See* AR-1-2. A single Detention Policy is more efficient than analyzing and approving the multiple requests for waivers that ERO and ICE were receiving from field offices around the United States. *See, e.g.,* AR-27-29 (Baltimore, Maryland); AR-31-34 (Florida and Texas); AR-40-41 (New York); AR-145-149 (Southern California); AR-90-143 (Louisiana). The Detention Policy reflects efficient decision making to a problem affecting field offices.

Plaintiffs argue that the Detention Policy is arbitrary and capricious because "it (1) fails to consider existing alternatives; (2) is inconsistent with other ICE policies it expressly leaves in place; (3) entirely failed to consider important aspects of the problem or the humanitarian costs of ICE's actions." *See* Mot. at 10. Each argument lacks merit, ignores the plain language of the Detention Policy, and ignores the reasons why ICE issued the Detention Policy.

**1. The Detention Policy Considered Existing Alternatives, and Plaintiffs Cannot Substitute Their Policy Preferences for ICE and ERO's Reasoned Decisions.**

The APA does not require an analysis of all alternatives. *See* 5 U.S.C. § 553. The Supreme Court has explained that "regulatory agencies do not establish rules of conduct to last forever." *State Farm,* 463 U.S. at 42 (quoting *Am. Trucking Assoc., Inc. v. Atchison, T. & S.F.R. Co.,* 387 U.S. 397, 416 (1967)). "[A]n agency must be given ample latitude to "adapt their rules and policies to the demands of changing circumstances." *Id.* (quoting *Permian Basin Area Rate Cases,* 390 U.S. 747, 784 (1968)). An agency must simply "consider[ ] the relevant factors and articulate[ ] a rational connection between the facts found and the choice made." *Nat'l Ass'n of Home Builders v. Norton*, 340 F.3d 835, 841 (9th Cir. 2003) (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council*, 462 U.S. 87, 105 (1983)).

On its face, the Detention Policy confirms that ICE and ERO considered existing alternatives before deciding to waive the 12-hour limit. AR-1-2. The Detention Policy states that under President

Trump's policies, ERO field offices lacked the authority to "discretionarily release aliens, nor decline to take aliens into custody from our counterparts in Homeland Security Investigations (HSI) or U.S. Customs and Border Protection (CBP)." AR-2. In other words, ICE and ERO considered whether they could release aliens, or decline to take as many aliens into custody. *See id.* Under Executive Branch directives, they could not. As a consequence, some field offices had to hold aliens in holding facilities for more than 12 hours. AR-1-2.

Plaintiffs argue that ICE and ERO failed to consider "*any* existing alternatives alleviate overcrowding, including discretionarily releasing immigrants, declining custody from HSI and CBP, releasing low-risk immigrants on ICE's Alternatives to Detention ("ATD") programs or otherwise simply not arresting more immigrants than ICE can detain in its long-term detention facilities." *See* Mot. at 11 (emphasis in original). That is wrong. The Detention Policy expressly rejects those alternatives. *See* AR-2. The Detention Policy expressly confers discretion on each field office about how long to detain aliens based on the circumstances of each field office. AR-1-2.

Plaintiffs' existing alternatives argument is premised on their policy preferences. *See* Mot. at 11. Plaintiffs argue that Defendants could have decided not to detain or release aliens because they were "appropriate for Release on Recognizance or the heightened requirements of an Order of Supervision." *See id.* Thus, according to Plaintiffs, "many, if not all, of the class members would be well-suited to various ATD programs." *Id.* These are plainly policy preferences that the public rejected when deciding to elect President Trump and that are inconsistent with Executive Branch policy.

Plaintiffs incorrectly argue that "*nothing* in the administrative record limits ICE's discretion." *See* Mot. at 12 (emphasis in original). President Trump's Executive Order 14165, "Securing Our Borders," expressly states that the former administration's "catch-and-release policies undermine the rule of law and our sovereignty, create substantial risks to public safety and security, and divert critical resources away from stopping the entry of contraband and fugitives into the United States." AR-9. In that same Executive Order, the Executive Branch provides explicit direction to the Secretary of the Department of Homeland Security about ICE's discretion:

> The Secretary shall, consistent with applicable law, issue new policy guidance or propose regulations regarding the appropriate and consistent use of lawful detention authority under the INA, including the termination of the practice commonly known as ''catch-and-release,'' whereby illegal aliens are routinely released into the United States shortly after their apprehension for violations of immigration law.

AR-10 (quoting Executive Order 14165, "Securing Our Borders"). Plaintiffs are simply wrong when they argue that ICE had discretion to release aliens or decline to take them into custody. *See* Mot. at 12. As set forth above, President Trump's Executive Order 14165, "Securing Our Borders," expressly prohibits discretionary release. AR-9-10. And the Detention Policy explicitly cites President Trump's Executive Orders and declaration of a national emergency as the source of its authority. AR-1. Defendants are not "belatedly justifying" the Detention Policy. *See* Mot. at 12. President Trump issued his Executive Orders and declared a national emergency before ICE issued the Detention Policy. *Compare* AR-9 (Executive Order issued January 20, 2025 *with* AR-1 (Detention Policy issued June 24, 2025).

Finally, Plaintiffs advance a number of arguments about overcrowding or ICE and ERO's ability to safely detain aliens. *See* Mot. at 13. There is no record before the Court about any facility other than 630 Sansome. Plaintiffs' claims about the conditions at all field offices around the United States and the ability of ICE and ERO to safely detains aliens are speculative and baseless.

**2. The Detention Policy Is Consistent with ERO and ICE's Prior Policies Allowing Aliens to be Held More Than 12 Hours in "Exceptional Circumstances."**

Next, Plaintiffs contend that the Detention Policy is arbitrary and capricious because it is "internally inconsistent." *See* Mot. at 14. To the contrary, the Detention Policy is consistent with ICE and ERO's prior policies including those cited by Plaintiffs in their motion. *See* Mot. at 4-5.

As Plaintiffs concede in their motion, the 2011 PBNDS allowed aliens to be held in a holding facility for more than 12 hours in "exceptional circumstances." *See* Mot. at 4. Likewise, Policy Number 11087.2, "Operations of ERO Holding Facilities," allowed aliens to be held for more than 12 hours in "exceptional circumstances." AR-12-26; *see also* Mot. at 4. ICE and ERO issued the Detention Policy in response to a new administration's Executive Orders and declaration of a national emergency for one year.

AR-1-2; AR-3-11. Those are exceptional circumstances. Plaintiffs fail to refute that they are. *See* Mot. at 14. ICE and ERO's prior policies contemplate situations where aliens might be held in a holding facility longer than 12 hours, and the Detention Policy confirms that it was issued for one of those situations. The Detention Policy is consistent with ICE and ERO's prior policies.

**3. The Detention Policy Is Lawful.**

Plaintiffs further argue that the Detention Policy is arbitrary and capricious because it is not in accordance with the law. *See* Mot. at 17. Plaintiffs fail to identify any law mandating that aliens can only be held in holding facilities for 12 hours. *See* Mot. at 17.

Plaintiffs' argument conflates speculation about the facts of specific field offices with review under the APA. Plaintiffs speculate that the Detention Policies created "logistical difficulties" that "necessarily engenders constitutional violations." *See* Mot. at 17. The circumstances at each field office may vary based on the detainee population and needs of each field office. Under the Detention Policy, each field office retains the discretion about how to hold aliens safely for more than 12 hours. AR-1-2. But in Plaintiffs' motion under the APA, there is no evidence before the Court in this case about any facility other than 630 Sansome. Even more significant, there is no evidence about any facility including 630 Sansome in this motion. *See generally* Mot. Based on the APA and the certified administrative record, the Detention Policy is lawful.

**4. The Detention Policy Balances Law Enforcement Operations and Enforcing the United States' Immigration Laws With Extended Holding Times.**

Finally, Plaintiffs advance arguments about ICE and ERO failing to consider "constitutional and humanitarian consequences." *See* Mot. at 14-15. As a starting point, Plaintiffs again conflate the alleged facts pertaining to each field office with whether the Detention Policy is arbitrary and capricious under the APA. On its face, the Detention Policy explicitly contemplates and mentions the safe detention of aliens. AR-2.

The Detention Policy states that the waiver of the 12-hour limit is to "[t]o accommodate appropriately housing the increased number of detainees while ensuring their safety and security and avoid violation of holding facility standards and requirements." *See Id.* The Detention Policy orders field

offices to hold aliens for the "for the least amount of time required for their processing, transfer, release, or repatriation as operationally feasible." *See id.* The Detention Policy requires that "[a]ll other hold room and hold facilities requirements continue to apply to ensure the safety, security and humane treatment of those in custody in hold rooms and hold facilities." AR-1-2.

Plaintiffs fail to mention any of the actual language of the Detention Policy. Plaintiffs assume, without any citation, that the vague "constitutional requirements for overnight detention" are the same for all judicial districts and circuits. *See* Mot. at 15. The Detention Policy is a national policy intended to effectively and efficiently provide guidance to field offices around the country. *See* AR-1-2. While Defendants acknowledge that there may be overlap between Ninth Circuit cases and cases from other circuits, Plaintiffs fail to establish that the alleged constitutional would be evaluated the same across the United States. Even more important, Plaintiffs speculate about the conditions at each field office. *See* Mot. at 16-17. Plaintiffs assume that constitutional violations will occur without any support or justification. *See* mot. at 16-17. Plaintiffs' constitutional and humanitarian arguments are wholly speculative, and there is no evidence to support those arguments before the Court in this motion.

**E. The Detention Policy Should Not be Vacated and Should Not be Vacated Across the United States.**

For the reasons set forth above, the Court should deny Plaintiffs' motion for partial summary judgment. However, if the Court finds that the Detention Policy is not consistent with the APA, the appropriate remedy is not to vacate the policy for every field office across the United States.

**1. Nationwide Vacatur Is Improper Because Application of the Detention Policy Is Specific to Field Offices, and Specific Relief Can Be Afforded to Plaintiffs.**

As explained throughout, the Detention Policy does not compel field offices to hold aliens for longer than 12 hours. AR-1-2. Based on the Detention Policy, each field office has discretion about how long it can safely hold aliens. AR-2. As demonstrated by the certified administrative record, field offices around the United States handled holding aliens in different ways based on the needs of each field office.

More recently, in *National TPS Alliance v. Noem*, No. 25-5724, -- F.4th -- 2026 WL 226573, (9th Cir. Jan. 28, 2026), the Ninth Circuit examined setting aside an agency rule under the APA. There, the

plaintiffs challenged DHS' vacatur and termination of Temporary Protected Status designations for certain countries. *See id.* The Ninth Circuit declined to resolve the question of whether a universal stay under the APA is consistent with Supreme Court precedent. *See id.* at *17 (citing *Trump v. CASA, Inc.*, 606 U.S. 831 (2025)). But the Ninth Circuit suggested that a district court should consider whether a universal stay is appropriate based on the needs of each case. *See id.* In analyzing whether the district court should have vacated the policy at issue across the United States, the Ninth Circuit explained that it would be "impossible" for the district court to "craft relief that is complete *and* benefits only the named [P]laintiffs." *Id.* (italics in original). The Ninth Circuit criticized the Federal Government for failing to explain how an order affording relief to the plaintiffs could be crafted. *See id.* Because the district court could not afford relief to only the plaintiffs, it did not abuse its discretion by setting aside the policies at issue in full and across the United States. *See id.* at *18.

Here, and in contrast, the Court can afford relief that is complete and benefits Plaintiffs including their proposed class. In this case, Plaintiffs' proposed class only includes members who are, or will be, detained at 630 Sansome. *See* Pls.' Mot. for Final Class Certification at 2, ECF No. 172. If the Court agrees with Plaintiffs that the Detention Policy violates the APA, it could set aside the Detention Policy as to 630 Sansome. That would provide Plaintiffs the exact relief they are seeking. Affording relief beyond 630 Sansome benefits an entirely different class of people who are not before the Court, and who Plaintiffs have not demonstrated are affected by the Detention Policy. Consistent with recent Ninth Circuit precedent, the Court should not vacate the Detention Policy nationwide and afford relief to the Plaintiffs in this case. *See National TPS Alliance,* 2026 WL 226573, at *17-18 (analyzing whether the district court abused its discretion by vacating the policy in full). If the Court believes that the Detention Policy is improper, it should vacate the Detention Policy as to 630 Sansome.

Notably, all of the cases cited by Plaintiffs predate *National TPS Alliance*. *See* Mot. at 18. And all of the cases cited by Plaintiffs were decided in district court, not in the Ninth Circuit like *National TPS Alliance. National TPS Alliance* is binding precedent and supports that a district court should not simply vacate policies nationwide if specific relief can be provided to the parties bringing the lawsuit. *See*

*National TPS Alliance,* 2026 WL 226573, at *17-18. *National TPS Alliance* supports Defendants' position that nationwide vacatur is improper.

**2. Nationwide Vacatur of the Detention Policy Equates to an Impermissible Universal Injunction About the Limits of Holding Aliens.**

In the same vein, nationwide vacatur is improper for two additional related reasons. First, it equates to an impermissible universal injunction. In *Trump v. Casa,* 606 U.S. 831, 837 (2025), the Supreme Court held that universal injunctions likely exceed the equitable authority that Congress granted to district courts. Although the Supreme Court did not decide *CASA* under the APA, it cautioned against awarding complete relief to nonparties. *See id.* at 851. In fact, the Supreme Court explained that "'complete relief is not synonymous with 'universal relief.'" *Id.* "It is a narrower concept: The equitable tradition has long embraced the rule that courts generally 'may administer complete relief *between the parties*.'" *Id.* (quoting *Kinney-Coastal Oil Co. v. Kieffer*, 277 U.S. 488, 507 (1928) (emphasis added)).

As described above, if the Court agrees with Plaintiffs, it can award "complete relief" as to them for 630 Sansome, the only field office they have ever experienced and that their proposed class is based on. *See* Pls.' Mot. for Final Class Certification at 2, ECF No. 172; *see also* Pls.' Am. Compl., ECF No. 32 (describing conditions exclusively at 630 Sansome). Awarding relief beyond 630 Sansome violates the principles that the Supreme Court rejected in *CASA*. The Court would be providing relief to nonparties about alleged conditions at field offices in which there is no evidence or record before it. The certified administrative record confirms that multiple field offices requested waivers of the 12-hour limit before the Detention Policy, but there is no evidence of what the conditions of those field offices are.

Second, vacating the Detention Policy amounts to the Court setting limits on holding times in holding facilities around the United States. In other words, the Court would be legislating how long aliens can be held in holding facilities. The Detention Policy does not state how long aliens must be held at holding facilities. AR-1-2. Nor does it require aliens to be held for up to 72 hours in a holding facility. AR-1-2. By vacating the Detention Policy, the Court will, in essence, set a limit on aliens being held for 12 hours absent "exceptional circumstances." AR-18.

**3. The Appropriate Remedy Is to Remand the Detention Policy Back to ICE and ERO.**

It is questionable whether vacatur is a permissible APA remedy. *See United States v. Texas*, 599 U.S. 670, 693-703 (2023) (Gorsuch, Thomas, & Barrett, JJ., concurring). Even if it is, because the agency can cure defects identified by the Court, and because vacatur would be disruptive to the essential enforcement functions of ICE and ERO, it is unwarranted. Instead, the Court should remand the unwritten policy to the ICE and ERO to take action consistent with the Court's analysis. This is appropriate where, as here, ICE and ERO retain discretion over the actions deemed to violate the APA and are experts in immigration enforcement. *See Ramirez v. ICE*, 568 F. Supp. 3d 10, 24 (D.D.C. 2021) (citing *Am. Hop. Assoc. v. Azar*, 385 F. Supp. 3d 1, 11 (D.D.C. 2019)).11 Alternatively, as set forth above, should the Court vacate the Detention Policy, vacatur should not be universal. Rather, it should operate only with respect to the specific parties involved in the lawsuit. Plaintiffs have a remedy available to be afforded "complete relief" with respect to the Detention Policy.

In APA cases, the typical remedy is for the court to "hold unlawful and set aside agency action, findings, and conclusions." 5 U.S.C. § 706(2)(A). This is commonly termed "vacatur." *Texas*, 599 U.S. at 695 (concurrence). But the APA "does not say anything about 'vacating' an agency action ('wholesale' or otherwise)," and accordingly, a plurality of the Supreme Court has said that section 702(2)(A)'s terms, "set aside," do not mean "vacate," but rather to "disregard." *See id.*; *see also* 5 U.S.C. § 703 (APA remedies). As such, while courts may order an agency action to be "disregarded" for purposes of the parties, they may not vacate an agency action for non-parties. *See Texas*, 599 U.S. at 693 (noting when a court "finds a remedy merited, it provides party-specific relief"); *see also CASA,* 606 U.S. at 851 (stating the rule that complete relief should generally be limited to the parties in the lawsuit).

In any event, at most, remand without vacatur or set aside is the appropriate remedy for the APA violation found here because vacatur could produce "disruptive consequences" to the Executive's operation of foreign policy and the implementation of immigration laws. Vacatur is not a required remedy for unlawful agency action. *See Stand Up for California! v. U.S. Dep't of Interior*, 879 F.3d 1177, 1190 (D.C. Cir. 2018) ("the district court acted well within its discretion in finding vacatur unnecessary to

address any harm the defect had caused"); *Cent. Maine Power Co. v. FERC*, 252 F.3d 34, 48 (1st Cir. 2001) ("[a] reviewing court that perceives flaws in an agency's explanation is not required automatically to set aside the . . . order"). Instead, the question is (1) "the likelihood that deficiencies in an order can be redressed on remand and (2) the disruptive consequences of vacatur." *New Jersey Conservation Found. v. FERC,* 111 F.4th 42, 64 (D.C. Cir. 2024).

On remand, ICE and ERO can fix its process in line with the Court's decision. *Cf. I.N.S. v. Orlando Ventura*, 537 U.S. 13, 16 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands"). Specifically, it can take "new agency action" in line with the Court's findings and conclusions. *See Biden v. Texas*, 597 U.S. 785, 807-08 (2022) (discussing *DHS v. Regents of Univ. of Cal.*, 591 U.S. 1, 20-21 (2020)). So, here too—the Court should remand without vacatur to the agencies "for further action consistent with [the Court's] opinion." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005).

Finally, the disruptive consequences of vacatur of the Detention Policy because of the effect it would have on enforcing the immigration laws of the United States support remand. Moreover, vacatur of the Detention Policy would still allow field offices to hold aliens longer than 12 hours. However, each field office would have to apply for individualized waivers as they did before ICE issued the Detention Policy. Plaintiffs are not seeking to vacate holding aliens for longer than 12 hours. *See* Mot. They are only seeking to vacate a nationwide waiver of the 12-hour limit. *See* Mot. That underscores why issues pertaining to the Detention Policy should be addressed at the field office level if there are deficient conditions. Any alien, like Plaintiffs in this case, has the right to challenge whether conditions at a field office are appropriate. It is for ICE and ERO on remand to make policy decisions consistent with the Court's opinion, including how long to detain aliens. In short, were the Court to consider vacating the Detention Policy, it should remand without vacatur to avoid disrupting law enforcement functions and the application of the United States' immigration laws.

## IX. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion for partial summary judgment on the 12-hour waiver and grant Defendants' counter-motion for partial summary judgment.

DATED: February 26, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Douglas Johns*
DOUGLAS JOHNS
Assistant United States Attorney

*Attorneys for Defendants*