UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| CARMEN ARACELY PABLO SEQUEN, et al., | Case No. 25-cv-06487-PCP |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION FOR STAY PENDING APPEAL** |
| SERGIO ALBARRAN, et al., | Re: Dkt. No. 214 |
| Defendants. | |

On June 23, 2026, the Court granted partial summary judgment on plaintiffs' claims under the Administrative Procedure Act and vacated the agency actions challenged in this case pursuant to 5 U.S.C. § 706(2)(A). *See* Dkt. No. 205. The vacated actions include Immigration and Customs Enforcement's 2025 courthouse-arrest policies (i.e., ICE Policy No. 11072.3 and ICE Policy No. 11072.4); the related 2025 courthouse-arrest policy of the Department of Justice's Executive Office of Immigration Review (i.e., EOIR Operating Policies and Procedures Memorandum 25-06); and ICE's waiver of its prior 12-hour limit on detentions in short-term holding facilities (i.e., ICE's June 24, 2025 memorandum titled "Nationwide Hold Room Waiver"). At the parties' request, *see* Dkt. No. 211, the Court entered final judgment on plaintiffs' APA claims on June 30, 2026 pursuant to Federal Rule of Civil Procedure 54(b), *see* Dkt. No. 212. The government now moves for a stay pending appeal of this Court's June 30, 2026 order entering final judgment.

A stay pending appeal is an "extraordinary remedy." *United States v. Mitchell*, 971 F.3d 993, 999 (9th Cir. 2020) (per curiam) (citation modified). Because "[a] stay is an intrusion into the ordinary processes of administration and judicial review," it "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Immigr. Defs. L. Ctr. v. Noem*, 145 F.4th 972, 983 (9th Cir. 2025) (citation modified) (quoting *Nken v. Holder*, 556 U.S. 418, 427

United States District Court
Northern District of California

United States District Court
Northern District of California

(2009)). "It is instead an exercise of judicial discretion," the "propriety [of which] is dependent upon the circumstances of the particular case," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* (quoting *Nken*, 556 U.S. at 433–34). Four factors guide the Court's exercise of its discretion:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id.* (quoting *Nken*, 556 U.S. at 434). If the movant cannot "ma[k]e a strong showing" that it is "likely to succeed on the merits," the movant "must show 'serious legal questions' going to the merits" and "a high degree of irreparable injury," *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023) (quoting *Lopez v. Heckler*, 713 F.2d 1432, 1435–36 (9th Cir. 1983)), such that "the balance of hardships tips sharply in its favor," *Lopez*, 713 F.2d at 1435 (citation modified).

## I.     The government has, at most, raised serious legal questions going to the merits.

For the reasons detailed in the Court's summary-judgment order, the government is unlikely to succeed in reversing the Court's vacatur of the challenged agency actions. The government's motion for a stay does not change the Court's analysis.

The government argues that the challenged policies are unreviewable under the APA because they concern purely discretionary "decisions[] not to prosecute or enforce." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). But the policies at issue in this case affirmatively expand the circumstances in which ICE is authorized to arrest noncitizens at courthouses or the duration for which ICE may detain noncitizens in short-term hold rooms—those are not "agency decisions to *refuse* enforcement," which might be "unsuitab[le] for judicial review." *Id.* (emphasis added).

The government also suggests that ICE had no need to "explain its consideration of the constitutional issues inherent in its" decision to waive the prior 12-hour limit on hold-room detentions. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 526 (2009) (emphasis added). Contrary to the government's implication, *Fox Television Stations* had no need to address whether an agency must expressly consider its constitutional obligations because the agency order at issue

2

United States District Court
Northern District of California

in that case "devote[d] four full pages of small-type, single-spaced text … to explaining why its [decision] [wa]s consistent with" the relevant constitutional provision. *Id.* at 526 (explaining that the Supreme Court would therefore "leave that [issue] aside"). Even assuming that an agency need not "*explain* its consideration of the [relevant] constitutional issues," however, that does not suggest that an agency need not consider its constitutional obligations at all. *See id.* (emphasis added). Just the opposite: An agency's obligations under the relevant substantive law—whether constitutional or statutory—are "an important aspect of the problem" that must be considered, even if not expressly. *See Nat'l Urb. League v. Ross*, 977 F.3d 770, 777 (9th Cir. 2020) (citation modified) (assessing the Census Bureau's consideration of its obligations under the Enumeration Clause and the Census Act). So "[i]f the [agency] did not look to" the relevant legal requirements "at all when formulating [it]s solution," the agency is "certainly … susceptible to claims that [its decisions] were arbitrary and capricious." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 682 (2020). That is what happened here. ICE did not merely fail to adequately explain how it considered its constitutional obligation to avoid creating punitive conditions of confinement; the record suggests that it failed to "engage[] in reasoned consideration" of the issue at all. Dkt. No. 205, at 62.

The government's remaining merits arguments turn on its view that the Court failed to extend due deference to ICE and EOIR and instead substituted the Court's own policy preferences. But the Court's summary-judgment order expressly recognized that "it is not the Court's role under the APA to assess whether an agency's decision 'is the best one possible or even whether it is better than the alternatives.'" Dkt. No. 205, at 57 (quoting *Cal. Pub. Utilities Comm'n v. FERC*, 879 F.3d 966, 973 (9th Cir. 2018)). For that reason, the Court rejected certain of plaintiffs' arguments that, in the Court's view, reflected such policy disagreements. *See id.* at 56–57. The deference owed to agency decisionmaking does not, however, override the Court's duty "to ensure that the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choices made.'" *Nw. Ecosystem All. v. U.S. Fish & Wildlife Serv.*, 475 F.3d 1136, 1140 (9th Cir. 2007) (quoting *Nat'l Ass'n of Home Builders v. Norton,* 340 F.3d 835, 841 (9th Cir. 2003)). It was because ICE and EOIR did not do so that the Court held the challenged

United States District Court
Northern District of California

actions to be arbitrary and capricious.

Finally, the government contends that its appeal is likely to succeed because the Court vacated the challenged policies rather than remanding without vacatur. As the Court's summary-judgment order explained, "vacatur and remand is the default remedy under the APA," and remand without vacatur is appropriate only "in limited circumstances" where the agency demonstrates that it can "readily … cure [the] defect in its explanation of a decision." Dkt. No. 205 at 65, 69 (first quoting *Mont. Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025); and then quoting *Humane Soc. of U.S. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010)). Even in its motion to stay, the government offers nothing more than conclusory assertions that ICE and EOIR's "errors are easily fixable on remand." Such bare conclusions cannot satisfy the government's "burden of establishing that … ICE and EOIR could cure the defects in their decisionmaking." *Id.* (first citing *Coal. to Protect Puget Sound Habitat v. U.S. Army Corps. of Eng'rs*, 466 F. Supp. 3d 1217, 1219 (W.D. Wash. 2020); and then citing *Nat'l Parks Conservation Ass'n v. Semonite*, 422 F. Supp. 3d 92, 99 (D.D.C. 2019)).

The government's appeal is therefore unlikely to succeed and, at most, raises "serious legal questions."

## II.    The government has not demonstrated "a high degree" of irreparable harm.

The government argues that because "ICE's and EOIR's policies are how the Executive has decided to channel [its] authority" under the Immigration and Nationality Act to arrest and detain noncitizens suspected of immigration offenses, the Court's vacatur of the challenged policies "undoubtedly visits irreparable harm on the [g]overnment." But "[i]t is well established that the mere existence of the Executive Branch's desire to enact a policy is not sufficient to satisfy the irreparable harm prong." *Immigr. Defs. L. Ctr.*, 145 F.4th at 985 (citing *Doe #1 v. Trump*, 957 F.3d 1050, 1059 (9th Cir. 2020)). Rather, irreparable harm results from actual interference with "the Executive's ability to implement immigration policy." *Id.*

Here, the government has spoken of harm only "in general terms," like its need to enforce the INA, and has been "unable … to articulate concrete evidence of irreparable harm" to its implementation of immigration policy that will result from vacatur of the challenged agency

4

United States District Court
Northern District of California

actions. *Id.* Even in a "preliminary posture," such "scant" evidence suffices only to make a "weak" showing of irreparable harm. *Id.* at 985, 994. And this case is not in such a preliminary posture. ICE and EOIR's courthouse-arrest policies have been stayed within ICE's San Francisco area of responsibility—encompassing northern California, Hawai'i, Guam, and Saipan—since December 24, 2025. *See Pablo Sequen v. Albarran*, 814 F. Supp. 3d 1005, 1042 (N.D. Cal. 2025). The government "thus had available to it the best evidence of harms likely to occur because of" the vacatur of the courthouse-arrest policies: "evidence of harms that *did* occur because of" the policies' suspension across a large region for more than six months. *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020). Yet the government has not "submit[ed] evidence of actual burdens … it has experienced since the [stay] issued," *id.*, and its "conclusory factual assertions and speculative arguments" do not suffice to show irreparable harm, *Doe #1 v. Trump*, 957 F.3d 1050, 1059–60 (9th Cir. 2020). Nor does the government's litigation conduct suggest that the six-month stay of the courthouse-arrest policies has caused irreparable harm: Though the government appealed the Court's stay order, it did not seek relief from that order pending appeal and has repeatedly delayed filing its opening brief in the Ninth Circuit, betraying a stark lack of urgency. As to the 12-hour-detention waiver, the government has acknowledged that "vacatur … still allow[s] field offices to hold aliens longer than 12 hours" so long as the field offices "apply for individualized waivers as they did before ICE issued the [waiver]." Dkt. No. 185, at 25. In other words, the only claimed harm of vacating the 12-hour-detention waiver is that ICE field offices must affirmatively request an extension of the longstanding limit on hold-room detentions rather than receiving one automatically. The government has not explained how requiring that additional step impairs its enforcement of immigration laws.

Thus, if the government has shown any irreparable harm at all, it certainly has not shown the "high degree" of harm necessary to justify a stay given the government's failure to demonstrate a likelihood of success on the merits. *See Manrique*, 65 F.4th at 1041.

**III.    The balance of equities and public interest do not favor of a stay.**

Because the government is the defendant in this action, the analysis as to the balance of equities and the public interest merge. *See Nken*, 556 U.S. at 435. As noted above, because the

5

government has only raised "serious legal questions" as to the merits of its appeal, it must demonstrate that these factors "tip[] sharply in its favor." *Mi Familia Vota v. Fontes*, 111 F.4th 976, 981 (9th Cir. 2024) (citation modified).

The government argues that "[t]here is always a public interest in prompt execution of removal orders," *Nken*, 556 U.S. at 436, and that the government has a "weighty" interest "in efficient administration of the immigration laws at the border," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). But the government's motion is devoid of any explanation as to how vacatur of the challenged policies prevents the government from executing removal orders or efficiently administering the immigration laws. Vacatur of the courthouse-arrest policies does not prohibit ICE from arresting noncitizens suspected of immigration offenses outside courthouses, and it permits ICE to continue arresting noncitizens inside courthouses in the circumstances enumerated in ICE and EOIR's prior policies. Similarly, vacatur of the 12-hour detention waiver does not prevent ICE from detaining individuals in short-term hold rooms—it simply reinstates the prior practice, under which individual field offices must request a waiver before using hold rooms for detentions longer than 12 hours absent exceptional circumstances.

On the other side of the scale, "the public interest is served by compliance with the APA," *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018), which mandates that arbitrary and capricious agency actions like those challenged here be "set aside," 5 U.S.C. § 706(2)(A). And as the Court detailed in an earlier order, leaving the courthouse-arrest policies in effect "presents noncitizens in removal proceedings with a Hobson's choice between two irreparable harms": risking likely arrest and detention if they appear in immigration court or irrevocably sacrificing their opportunity to pursue claims for asylum or other relief from removal if they fail to appear. *See Pablo Sequen*, 814 F. Supp. 3d at 1039–40.

Given the government's minimal showing of harm from vacatur, and the strong countervailing interests in vacating the challenged policies, the balance of hardships and public interest do not favor a stay of the Court's judgment, let alone "sharply."

United States District Court
Northern District of California

6

**IV.    Conclusion**

Because the government has at most raised serious questions going to the merits of its appeal and has not demonstrated a high degree of irreparable harm or that the equities and public interest favor a stay, the government's motion for a stay pending appeal (Dkt. No. 214) is DENIED.

**IT IS SO ORDERED.**

Dated: July 10, 2026

P. Casey Pitts
United States District Judge

United States District Court
Northern District of California