Mark L. Hejinian (SBN 281417)
ef-mlh@cpdb.com
Marcia V. Valente (SBN 321852)
ef-mvv@cpdb.com
David C. Beach (SBN 226972)
ef-dcb@cpdb.com
Charmaine G. Yu (SBN 220579)
ef-cgy@cpdb.com
Evan G. Campbell (SBN 342223)
ef-egc@cpdb.com
Darien Lo (SBN 347244)
ef-dxl@cpdb.com
COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000
San Francisco, CA 94104
Telephone: (415) 391-4800

Marissa Hatton (SBN 348678)
mhatton@lccrsf.org
Andrew Ntim (SBN 347084)
antim@lccrsf.org
Jordan Wells (SBN 326491)
jwells@lccrsf.org
Nisha Kashyap (SBN 301934)
nkashyap@lccrsf.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone: (415) 543-9444

Neil K. Sawhney (SBN 300130)
nsawhney@aclunc.org
Adriana Herrera (SBN 368812)
aherrera@aclunc.org
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 621-2493

Laura Victoria Sanchez (SBN 253736)
laura@carecensf.org
Tala Berardi Hartsough (SBN 230204)
tala@carecensf.org
CARECEN SF
3101 Mission Street, Suite 101
San Francisco, CA 94110
Telephone: (415) 642-4402

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION**

CARMEN ARACELY PABLO SEQUEN, YULISA ALVARADO AMBROCIO, and LIGIA GARCIA,

Plaintiffs,

v.

SERGIO ALBARRAN, MARCOS CHARLES, THOMAS GILES, MONICA BURKE, MARKWAYNE MULLIN, U.S. DEPARTMENT OF HOMELAND SECURITY, TODD M. LYONS, SIRCE E. OWEN, TODD BLANCHE, U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES DEPARTMENT OF JUSTICE, EXECUTIVE OFFICE FOR IMMIGRATION AND REVIEW, UNITED STATES OF AMERICA,

Defendants

Case No. 5:25-CV-06487-PCP-NC

**CLASS ACTION**

**REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE PRELIMINARY INJUNCTION**

Judge: Hon. P. Casey Pitts
Date: November 5, 2026
Time: 10:00 a.m.
Crtrm.: 8

Trial Date: None Set

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 2

I. Defendants' Arguments on the Interpretation of the Injunction Fail .......... 2

A. This Court Has Unilateral Power to Interpret the Requirements of the PI, and It Has Already Done So .......... 2

B. Defendants' Self-Serving Interpretations of the PI Are Erroneous .......... 3

C. Defendants Should Have Sought Clarification if They Perceived Ambiguity in Their Obligations .......... 6

D. Defendants' Attempts to Relitigate the PI or Raise New Legal Arguments Are Unavailing .......... 7

II. Defendants' Opposition Confirms Their Violations of the PI .......... 8

A. Plaintiffs Have Shown that Defendants' Refusal to Provide Onsite Medical Care Endangers Class Members .......... 9

B. Defendants' Omissions on Medical Care Upon Request (PI No. 7) Are Dispositive .......... 10

C. Defendants Have Violated the PI's Requirements for Prescription Medication (PI No. 6) 10

D. Defendants' Admissions on Mental Health and Disability Accommodation Are Dispositive, and Their Evidence on Medically Necessary Diets and Communicable Disease Screening Is Unpersuasive (PI No. 5) .......... 11

E. Defendants Have Violated the PI's Requirements on Language Access and a Notice of Rights (PI Nos. 8, 12, 13), and Their Opposition Confirms It .......... 12

F. Defendants Violate the PI's Requirements on Hygiene (PI No. 9) .......... 12

III. Enforcement Is The Appropriate Procedural Vehicle for This Court to Interpret Its Order and Compel Compliance .......... 12

CONCLUSION .......... 16

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

# TABLE OF AUTHORITIES

**Cases**

*Al Otro Lado, Inc. v. Mayorkas*,
No. 17-CV-02366-BAS-KSC, 2022 WL 3142610 (S.D. Cal. Aug. 5, 2022) .......... 13

*Armstrong v. Brown*,
857 F. Supp. 2d 919 (N.D. Cal. 2012) .......... 9, 15

*Armstrong v. Brown*,
732 F.3d 955 (9th Cir. 2013) .......... 9

*Athena Cosms., Inc. v. Amn Distribution, Inc.*,
No. 22-55159, 2023 WL 370982 (9th Cir. Jan. 24, 2023) .......... 2

*Barco Mercado v. Noem*,
1:25-cv-06568-LAK, (S.D.N.Y. Aug. 12, 2025) .......... 5

*California by & through Becerra v. U.S. Dep't of the Interior*,
No. C 17-5948 SBA, 2020 WL 13093994 (N.D. Cal. July 30, 2020) .......... 13

*California v. U.S. Dep't of the Interior*,
No. 17-cv-05948-SBA (TSH), 2020 WL 1496278 (N.D. Cal. Mar. 16, 2020) .......... 13

*Clark v. Coye*,
60 F.3d 600 (9th Cir. 1995) .......... 15

*Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*,
321 F.3d 878 (9th Cir. 2003) .......... 6

*Cunningham v. David Special Commitment Ctr.*,
158 F.3d 1035 (9th Cir. 1998) .......... 14, 15

*D.N.N. v. Liggins*,
No. 1:25-cv-01613-JRR (D. Md. Sept. 28, 2026) .......... 9, 15

*Dreith v. Nu Image, Inc.*,
648 F.3d 779 (9th Cir. 2011) .......... 2

*F.V. v. Jeppesen*,
466 F. Supp. 3d 1110 (D. Idaho 2020) .......... 6

*Flores v. Sessions*,
394 F. Supp. 3d 1041 (C.D. Cal. 2017) .......... passim

*Graves v. Arpaio*,
48 F. Supp. 3d 1318 (D. Ariz. 2014) .......... 4, 5

*Hook v. State of Ariz., Dep't of Corr.*,
972 F.2d 1012 (9th Cir. 1992) .......... 13

*In re Crystal Palace Gambling Hall, Inc.*,
817 F.2d 1361 (9th Cir. 1987) .......... 7

*Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*,
774 F.3d 935 (9th Cir. 2014) .......... 2, 4, 5, 6

*Interstate Circuit, Inc. v. United States*,
306 U.S. 208 (1939) .......... 8, 10

*Marco Antonio B.R. v. Warden of Golden State Annex Det. Facility*,
No. 1:26-CV-00810-TLN-CSK, 2026 WL 1649601 (E.D. Cal. June 8, 2026) .......... 13

*Nat'l Lightning Prot. Corp. v. E. Coast Lightning Equip., Inc.*,
815 F. App'x 128 (9th Cir. 2020) .......... 14

*Nat'l Org. For the Reform of Marijuana Laws v. Mullen*,
828 F.2d 536 (9th Cir. 1987) .......... 7

*Nehmer v. U.S. Dep't of Veterans Affs.*,
494 F.3d 846 (9th Cir. 2007) .......... 2

*Oceana, Inc. v. Ross*,
No. 217CV05146RGKJEM, 2020 WL 5239197 (C.D. Cal. Jan. 8, 2020) .......... 13

*Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*,
760 F.2d 698 (6th Cir. 1985) .......... 6

*Regal Knitwear Co. v. Nat'l Labor Relations Bd.*,
324 U.S. 9 (1945) .......... 6

*RG Abrams Ins. v. L. Offs. of C.R. Abrams*,
No. 221-CV-00194-FLA (MAAx), 2021 WL 5213103 (C.D. Cal. Nov. 9, 2021) .......... 6

*Safari Club Int'l v. Bonta*,
756 F. Supp. 3d 837 (E.D. Cal. 2024) .......... 13

*Scandia Down Corp. v. Euroquilt, Inc.*,
772 F.2d 1423 (7th Cir. 1985) .......... 6

*Sequen v. Albarran*,
814 F. Supp. 3d 1068 (N.D. Cal. 2025) .......... 14

*Shillitani v. United States*,
384 U.S. 364 (1966) .......... 12

*Stone v. City & Cnty. of San Francisco*,
968 F.2d 850 (9th Cir. 1992) .......... 7

*Thakur v. Trump*,
795 F. Supp. 3d 1168 (N.D. Cal. 2025) .......... 3

*TiVo Inc. v. EchoStar Corp.*,
646 F.3d 869 (Fed. Cir. 2011) .......... 6

*United States v. Arpaio*,
No. CR-16-01012-001-PHX-SRB , 2017 WL 3268180 (D. Ariz. July 31, 2017) .......... 3

*Unknown Parties v. Nielsen*,
611 F. Supp. 3d 786 (D. Ariz. 2020) .......... 7

**Statutes and Rules**

Fed. R. Civ. P. 65(a) .......... 14

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

## INTRODUCTION

Plaintiffs have provided evidence of systemic violations of this Court's November 25, 2025 Preliminary Injunction ("PI Order" or "PI") in support of their opening motion (hereinafter "Mot."). These violations include that Defendants fail to provide language translation, hygiene supplies, or on-demand medical care, fail to inform Class Members of their rights, and conduct cursory medical screenings divorced from their stated purpose—"to identify and begin necessary treatment of those with mental or physical illness and injury [and] to provide access to prescription medication without interruption." PI Order at 50, ¶ 5. To the extent any doubt remained, Defendants' Opposition (ECF No. 247, hereinafter "Opp.") confirms these violations.

For daily compliance issues such as language translation, provision of hygiene supplies, and notice of rights, Defendants provide no competent evidence to contradict Plaintiffs' showing. They provide no contemporaneous records of compliance, logs, or testimony from personnel with firsthand knowledge demonstrating compliance with these PI provisions, even where such evidence should be available. Defendants do not meaningfully respond to the insufficiency of their telehealth medical screenings or rebut expert testimony on the dangerousness of short-term detention without an onsite medical professional. They instead maintain they can provide access to medical care by sending Class Members to a hospital or emergency room, ignoring that the PI requires both emergency *and* non-emergency medical care upon request. They do not offer evidence that 630 Sansome has a functioning system for medical care requests, and they do not rebut specific instances of Class Members being denied medical care at 630 Sansome or being improperly cleared for detention by telehealth nurses. Indeed, they admit that it was "unclear" whether the Class Member declarants "required immediate medical attention, immediate transport to a hospital or the calling of an ambulance." Opp. at 19. They do not dispute that these Class Members received no medical attention whatsoever while at 630 Sansome.

Defendants argue that, under their own interpretation of the PI, further compliance is unnecessary. In doing so, Defendants improperly supplant their judgment for that of the Court. Worse still, they attempt to relitigate the PI and now argue that the ICE's San Francisco Field Office ("630 Sansome") is not a detention center at all, contradicting their previous arguments and

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

sworn testimony. Finally, Defendants argue they are confused about the PI's obligations. This does not excuse noncompliance, nor is it a valid reason to avoid enforcement. If Defendants perceived ambiguity, they were obligated to seek clarification and any necessary modification—as this Court told them to do—rather than disobey the injunction. Defendants are also demonstrably out of compliance with PI provisions for which they raise no interpretation issue. This Court should exercise its inherent enforcement powers to bring Defendants into compliance.

## ARGUMENT

### I. Defendants' Arguments on the Interpretation of the Injunction Fail

#### A. This Court Has Unilateral Power to Interpret the Requirements of the PI, and It Has Already Done So

Defendants confuse their self-serving interpretation of the injunction with their obligations under the injunction. Only this Court can interpret its Order, and it has already done so. *See* ECF No. 237-1, Transcript of December 22, 2025 Status Conference ("Status Conf. Tr."), at 44. "That the district court preserves such inherent authority [to enforce compliance] presupposes that it, and not a party before it, is the principal and proper arbiter with the responsibility to interpret the decree and oversee the litigation." *Nehmer v. U.S. Dep't of Veterans Affs.*, 494 F.3d 846, 860 (9th Cir. 2007). Although a party may "*suggest* a favored interpretation, a party—whether a private or public entity—cannot dictate the meaning of the decree to the court or relieve itself of its obligations under the decree without the district court's approval." *Id.* (emphasis in original). Notably, the Ninth Circuit has cautioned against condoning "Defendants' self-serving interpretation of their obligations under [an] injunction" when considering compliance, as it may "invite 'experimentation with disobedience.'" *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 954 (9th Cir. 2014).

The Court's oral clarification of the PI at the Status Conference was binding and is a basis for enforcement. *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011); *see also Athena Cosms., Inc. v. Amn Distribution, Inc.*, No. 22-55159, 2023 WL 370982, at *1 (9th Cir. Jan. 24, 2023) (affirming district court's conclusion that disobeying verbal orders was not reasonable or in good faith). Defendants do not get to set their own standard for compliance by reading the

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

injunction narrowly; only the Court's written and oral interpretations of the PI set the standard against which compliance is measured.

### B. Defendants' Self-Serving Interpretations of the PI Are Erroneous

Proper interpretation of the injunction depends on the entire context of the injunction and the purpose it is meant to serve. "In deciding whether an injunction has been violated it is proper to observe the objects for which the relief was granted and to find a breach of the decree in a violation of the spirit of the injunction, even though its strict letter may not have been disregarded." *Thakur v. Trump*, 795 F. Supp. 3d 1168, 1175 (N.D. Cal. 2025) (*citing Sea Shepherd*, 774 F.3d at 949); *see also United States v. Arpaio*, No. CR-16-01012-001-PHX-SRB , 2017 WL 3268180, at *4 (D. Ariz. July 31, 2017) ("The language of an injunction must be read in the light of the circumstances surrounding its entry: the relief sought by the moving party, the evidence produced at the hearing on the injunction, and the mischief that the injunction seeks to prevent."); *Flores v. Sessions*, 394 F. Supp. 3d 1041, 1057–58 (C.D. Cal. 2017) ("The Agreement certainly makes no mention of the words 'soap,' 'towels,' 'showers,' 'dry clothing,' or 'toothbrushes' . . . Nevertheless, the Court finds that these hygiene products fall within the rubric of the Agreement's language requiring 'safe and sanitary' conditions.")

Defendants' interpretations of the PI are untenable. They seemingly read the first sentence of the provision requiring medical screenings (PI No. 5) as divorced from the rest of the paragraph that follows: in other words, they accept their obligation to "[c]onduct a basic medical screening," but they dissociate that obligation from the fundamental *purpose* of the screening, which is "to identify and begin necessary treatment of those with mental or physical illness and injury [and] to provide access to prescription medication without interruption." PI Order at 50, ¶ 5. Similarly, Defendants collapse the provisions of PI No. 7, which requires *both* access to the services of licensed medical personnel upon request between the hours of 7 a.m. and 9:30 p.m. and emergency medical response at all times. PI Order at 50, ¶ 7. Although the PI distinguishes between prompt, on-demand medical care during the day and emergency response at all times, Defendants see no difference in the provisions. Moreover, Defendants assert that they would be providing Class Members with prompt access to medical care simply by *taking them to a different*

*detention facility*. Opp. at 9. But long-term detention facilities can be up to eight hours away from 630 Sansome, *see* ECF No. 237-23, Lucero Lopez Decl. ¶ 21, and Class Members are not guaranteed to receive medical care promptly after they arrive at long-term detention. *See* ECF No. 237-16, Gonzalez Almanza Decl. ¶ 22; ECF No. 237-22 Ex. 22, Rivas Cruz Decl. ¶ 15. Transfer to such a facility cannot reasonably be substituted for compliance with the PI's requirement that Defendants provide "prompt access to medical care" at 630 Sansome. Defendants' tortured reading of the injunction requires no deference and is unrecognizable in the context of the PI's factual bases and remedial purposes.

Defendants' interpretations also defy common sense. For instance, they suggest that because the PI requires the services of licensed medical personnel—but does not explicitly state that the personnel must have *legally compliant* licensure—they are free to provide medical screenings that violate California's telehealth rules. Opp. at 8–9. Such a technical reading of the PI does not preclude enforcement, or even contempt, as the Ninth Circuit has recognized, "[t]he schemes available to those determined to evade injunctions are many and varied, and no injunction can explicitly prohibit every conceivable plan designed to defeat it." *Sea Shepherd*, 774 F.3d at 954 (issuing contempt order despite alleged interpretation issues). The injunction does not need to cover every conceivable loophole—such as the commonsense notion that licensed medical professionals should not violate state regulations—to be enforceable.

Defendants are incorrect that onsite medical requirements are always written in the first instance; instead, they are often later added or clarified, as the cases cited by Defendants show. In *Graves v. Arpaio*, the district court interpreted a paragraph of its judgment that only partially referenced onsite care. 48 F. Supp. 3d 1318, 1346 (D. Ariz. 2014) ("All pretrial detainees confined in the jails shall have ready access to care to meet their serious medical and mental health needs. When necessary, pretrial detainees . . . shall otherwise be provided with appropriate alternative on-site medical services"). As a matter of interpretation, the *Graves* court clarified that the "[r]eady access to care" provision meant detainees "will be seen face-to-face." *Id.* Defendants' argument on the medical screening provision of *Graves* is also incorrect. That provision did not outright require face-to-face medical care, but the court found that the provision "remain[ed] necessary to

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

correct a current and ongoing violation of the federal right," in part because "Defendants have not shown that [] the receiving screening results in timely face-to-face examination by a medical provider." *Id*. Similarly, the Temporary Restraining Order issued in *Barco Mercado v. Noem* omitted an explicit onsite medical requirement.[1] *See* 1:25-cv-06568-LAK, ECF No. 65 ¶ 2(f)-(g) (S.D.N.Y. Aug. 12, 2025). The defendants responded by seeking a stay and modification, and noting that, under their interpretation of the prescription medication provisions of the TRO, "ICE Health Service Corps has medical staff on hand to provide any medication brought by or received on behalf of detainees." *Barco Mercado*, ECF No. 67 at 1. The district court then modified the language of the TRO to include 24/7 onsite medical personnel and later converted it to a Preliminary Injunction. *Barco Mercado*, ECF Nos. 77, 97. *Barco Mercado* shows that onsite medical care may be necessary to carry out an order's intent, that onsite medical care is operationally feasible in ICE Hold Rooms, and that Defendants in other instances recognize the need to seek modification to operationalize an order or where they read ambiguity into an order.

Defendants effectively nullify the protections of the PI by subjecting Class Members to perfunctory video screenings—that often overlook obvious physical medical issues—and then funneling Class Members into detention without medical care. Fundamentally, telehealth medical screenings at 630 Sansome are not designed to "begin necessary" medical treatment or facilitate prescription medication access. "By construing their obligations narrowly to include only refraining from acts specifically enumerated in the injunction, and not acts likely to nullify the injunction, the Defendants assumed the risk that their attempts at technical compliance would prove wanting." *Sea Shepherd*, 774 F.3d at 954–55. Defendants' attempts at bare-minimum technical compliance with the PI have left Class Members at serious risk of adverse medical events and without meaningful access to medical attention. *See* ECF No. 237-15, Keller Report ("Keller Report") at 16–27. Enforcement is appropriate to ensure Class Members receive the protections the PI is meant to provide.

[1] Defendants correctly point out that Plaintiffs' opening motion mistakenly states that the *Barco Mercado* Preliminary Injunction did not explicitly require onsite medical care. This was an inadvertent error; the Temporary Restraining Order in that case, not the PI, omitted onsite care.

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

### C. Defendants Should Have Sought Clarification if They Perceived Ambiguity in Their Obligations

Ultimately, if Defendants perceived some ambiguity in the PI, they as the enjoined party were obligated to seek clarification and any necessary modification—not to violate the order while remaining deliberately ignorant of the Court's stated intentions. "The Supreme Court has long recognized that, when questions arise as to the interpretation or application of an injunction order, a party should seek clarification or modification from the issuing court, rather than risk disobedience and contempt." *F.V. v. Jeppesen*, 466 F. Supp. 3d 1110, 1115 (D. Idaho 2020) (*citing McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949)) ("Respondents could have petitioned the District Court for a modification, clarification or construction of the order . . . But respondents did not take that course either. They undertook to make their own determination of what the decree meant. They knew they acted at their peril."); *Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 15 (1945). The Ninth Circuit has likewise reiterated that where an enjoined party claims ambiguity in a binding order, "the proper approach would be for [them] to seek a modification or clarification of the injunction from the district court." *See Connecticut Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003).

Defendants' assertions of ambiguity do not excuse their noncompliance. "[W]here a party faced with an injunction perceives an ambiguity in the injunction, it cannot unilaterally decide to proceed in the face of the injunction and make an after-the-fact contention that it is unduly vague." *TiVo Inc. v. EchoStar Corp.*, 646 F.3d 869, 885 (Fed. Cir. 2011); *see also Sea Shepherd*, 774 F.3d at 954; *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1432 (7th Cir. 1985); *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir. 1985). Defendants are responsible for "'tak[ing] all reasonable steps within [their] power to comply' with a court order," and "among those steps is seeking clarification from the court of a purportedly vague order." *RG Abrams Ins. v. L. Offs. of C.R. Abrams*, No. 221-CV-00194-FLA (MAAx), 2021 WL 5213103, at *6 (C.D. Cal. Nov. 9, 2021). Defendants' after-the-fact claims of ambiguity are even more inappropriate given that their interpretation is contested, and the Court has already clarified the PI and directed them to seek modification if necessary. *See* Status Conf. Tr. at 44.

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

Finally, because Plaintiffs seek only enforcement and not contempt sanctions, whether Defendants have an excuse for their noncompliance—valid or otherwise—is irrelevant. The Court may enforce its order even without a finding of willful noncompliance or bad faith interpretation. *See, e.g.*, *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992); *Nat'l Org. For the Reform of Marijuana Laws v. Mullen*, 828 F.2d 536, 543 (9th Cir. 1987).

**D. Defendants' Attempts to Relitigate the PI or Raise New Legal Arguments Are Unavailing**

The Court should reject Defendants' inappropriate attempts to relitigate the PI to avoid compliance. First, noncompliance cannot be excused because Defendants often hold Class Members for less than twelve hours. The Court has already held that the provisions of the PI apply to detention of less than twelve hours, which it reiterated at the Status Conference. *See* PI Order at 38, n.116; Status Conf. Tr. at 3.

Second, Defendants' contention that onsite screening is not appropriate because 630 Sansome lacks clinical space and resources for in-person medical evaluations is circular and does not excuse noncompliance. Whether Defendants *already* have the resources to conduct in-person medical screenings is irrelevant to the appropriateness of in-person medical care; "[t]he government cannot assert a lack of resources defense against an injunction because it is prospective relief, and the government may be compelled to expand the pool of resources to remedy a constitutional violation." *See Unknown Parties v. Nielsen*, 611 F. Supp. 3d 786, 814 (D. Ariz. 2020) (citing *Peralta v. Dillard,* 744 F.3d 1076, 1083 (9th Cir. 2014)); *see also In re Crystal Palace Gambling Hall, Inc.,* 817 F.2d 1361, 1365 (9th Cir. 1987) ("A party cannot disobey a court order and later argue that there were 'exceptional circumstances' for doing so."). And "federal courts have repeatedly held that financial constraints do not allow states to deprive persons of their constitutional rights." *Stone*, 968 F.2d at 858.

In their attempt to relitigate the PI rather than comply with it, Defendants also make new arguments regarding the standards governing their Hold Rooms and suggest for the first time that 630 Sansome is not actually a detention facility at all. They offer testimony from an ICE Health Service Corps (IHSC) official who claims that 630 Sansome is "not an ICE detention facility" and

that "ICE national detention standards . . . do not apply to hold rooms." ECF No. 247-1, Declaration of Robin N. Hunter Buskey ("Buskey Decl.") at ¶ 8. This assertion directly contradicts Defendants' previous arguments and sworn testimony. Defendants previously argued "630 Sansome is governed by ERO Directive 11087.2 . . . and ICE Detention Standards." *See* ECF No. 111, at 5. They offered the declaration of Supervisory Detention Officer Andrew Kaskanlian who—under penalty of perjury—stated that "The Holding Facility [at 630 Sansome] is governed by the January 31, 2024, ERO Directive 11087.2 [and] the ICE National Detention Standards." ECF No. 110 ¶¶ 6, 8. Defendants' new arguments also contradict the factual and legal findings in the PI. *See* PI Order pp. 39–40, 45 (applying detention facility standards to 630 Sansome). Concerningly, this new testimony suggests that the officials responsible for administering medical care under the PI are completely unfamiliar with the standards that govern 630 Sansome, and indeed, do not even view it as a detention facility. Defendants' reliance on these officials underscores their lack of reasonable effort to comply with the PI.

## II. <u>Defendants' Opposition Confirms Their Violations of the PI</u>

Defendants fail to rebut, or even engage with, the vast majority of Plaintiffs' evidence. They provide no contemporaneous records of compliance or training, logs, or any testimony from personnel with firsthand knowledge sufficient to explain conditions inside their own facility on any given day. This evidentiary void is not a minor gap—it is the absence of compliance.

The photographs of first aid items, hygiene materials, posters, and food attached to the Declaration of Andrew Kaskanlian ("Kaskanlian Decl."), ECF No. 247-2, do not demonstrate compliance. They are not accompanied by any explanation of whether and how those items are used, who is responsible for providing them to Class Members, and whether, as a practical matter, any of these items has been provided to any Class Member. Defendants' failure to produce specific evidence in response to Plaintiffs' showing supports enforcement. *See Interstate Circuit, Inc. v. United States,* 306 U.S. 208, 226 (1939) ("The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse.").

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

### A. Plaintiffs Have Shown that Defendants' Refusal to Provide Onsite Medical Care Endangers Class Members

Dr. Keller's analysis confirms that Class Members are harmed by Defendants' refusal to provide onsite medical care. In response, Defendants do not challenge Dr. Keller's qualifications. They do not offer alternative explanations for why the Class Members identified in his report did not receive physical examinations, why they were deprived of needed medications, whether they were at risk for adverse medical events due to lack of sufficient care, or whether they were improperly cleared for detention. They do not contend that Dr. Keller's conclusions are incorrect. Instead, they argue that Dr. Keller's findings do not set a standard for noncompliance. This argument misses the point.

Dr. Keller's findings are not offered to set a standard for compliance. This Court sets the standard for compliance, and Dr. Keller's report examines the medical harms that have resulted from Defendants' noncompliance. Declarations are commonly used to demonstrate Class Member harm due to legal noncompliance. *See, e.g.*, *D.N.N. v. Liggins*, No. 1:25-cv-01613-JRR, ECF No. 197-1 (Plaintiffs' enforcement motion supported by expert report regarding occupancy limits in ICE's Baltimore Hold Rooms) (D. Md. Sept. 28, 2026); *Flores*, 394 F. Supp. 3d at 1053–62 (relying on Class Member declarations to enforce settlement agreement regarding conditions of confinement in CBP Patrol Stations); *Armstrong v. Brown,* 857 F. Supp. 2d 919, 950–51 (N.D. Cal. 2012), *aff'd*, 732 F.3d 955 (9th Cir. 2013).

The harm to Class Members outlined in Dr. Keller's report is unrebutted. Dr. Keller explains how lack of medication continuity and physical medical care risk Class Members' health, even in detention of less than twelve hours. *See* Keller Report at 24–26. Dr. Keller provides analysis of specific Class Members who were endangered by medical screenings with no physical assessment or by lack of medication continuity. *Id.* at 16-17. The Buskey Declaration offered by Defendants does nothing to rebut these conclusions: it does not even mention them. The Buskey Declaration instead confirms that medical screenings at 630 Sansome cannot possibly translate to meaningful medical care: while he explains that "[t]he licensed Registered Nurse conducting the screening determines whether the [Class Member] is cleared for up to 12 hours in a hold room,

requires isolation until medically cleared, or needs other disposition," he simultaneously admits that 630 Sansome lacks clinical space, "hygienic fixtures and procedures," "medical equipment and supplies," and "appropriate isolation areas." *See* Buskey Decl. at ¶¶ 12, 19.

### B. Defendants' Omissions on Medical Care Upon Request (PI No. 7) Are Dispositive

Defendants maintain they could, in theory, provide medical care upon request by either sending a Class Member to a hospital or calling emergency medical personnel. Opp. at 19. In service of this argument, they provide only a general policy and no evidence that any such requested medical care has ever been provided. They provide no records of Class Member medical care requests, no testimony from personnel who respond to such requests, and no policies or training on responding to or assessing medical care requests. They do not respond to Plaintiffs' evidence that ICE agents are either unavailable to take medical care requests or they outright deny medical care requests. *See* Mot. at 14. They also do not offer any evidence in response to Dr. Keller's finding that "[t]he availability of an offsite emergency department is NOT an acceptable or appropriate substitute for an onsite medical professional" because detention officers are not trained or competent to evaluate or respond to medical complaints. Keller Report at 26. These omissions are dispositive, and Defendants' citation of one abstract medical policy—with no specific evidence to suggest the policy has been implemented—is insufficient to show compliance. *See Interstate Circuit,* 306 U.S. at 226.

### C. Defendants Have Violated the PI's Requirements for Prescription Medication (PI No. 6)

The PI explicitly gives Class Members "the right to possess, receive, and retain their prescribed medication on their person at all times." PI Order at 50. For Class Members who had their medication on them, Defendants do not meaningfully contest their accounts that their medication was taken away from them, Mot. at 15–16, and Defendants do not address Dr. Keller's findings that prescription medications are confiscated and "may (or may not) be dispensed by untrained, unsupervised lay officers who do not appropriately document med[ication] administration." *See* Keller Report at 25. For Class Members that do *not* have medication with them when detained, Defendants offer no argument whatsoever, despite the PI's requirement that

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

Defendants "provide access to prescription medication without interruption." PI Order at 50. They do not rebut Dr. Keller's finding that "[p]atients with chronic medical problems are denied continuity of any medications not on their person when they arrive at Sansome." Keller Report at 25. If Defendants perceived practical issues with PI compliance—for instance, with glucose pinprick needles—they should have sought modification rather than violating the injunction and endangering diabetic Class Members. Instead, Defendants openly admit that even after this Court directed them to meet and confer with Plaintiffs on perceived problems with universal on-person possession of medications, they did nothing to follow up. Opp. at 19.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

### D. Defendants' Admissions on Mental Health and Disability Accommodation Are Dispositive, and Their Evidence on Medically Necessary Diets and Communicable Disease Screening Is Unpersuasive (PI No. 5)

Defendants do not address their admissions that they provide no mental health care or disability accommodation at 630 Sansome. *Compare* Mot. at 5 *with* Opp. at 20–21. This alone is dispositive on the issue of compliance with PI No. 5. Defendants instead maintain that they only provide mental health and disability accommodation in instances "constituting an emergency." Opp. at 20. They provide no policies, guidance, training, or firsthand accounts of how lay staff assess whether a mental health issue or a disability constitutes an emergency. More importantly, the PI does not apply solely to mental health or disability "emergencies." PI Order at 50, ¶ 5.

Defendants do not engage with Dr. Keller's assessment that frozen meals are not suitable for all dietary needs. *See* Keller Report at 14. Defendants also fail to contend with Plaintiffs' evidence that individuals with medical needs affecting their diet are ignored and unaccommodated. *See* Mot. at 18–19. Their rejoinder that Class Members can simply drink juice to maintain their blood sugar—without the supervision of an onsite medical professional or access to medical equipment to monitor their blood sugar levels—is facially absurd.

The PI requires that medical screenings are sufficient to "recognize, segregate, and treat those with communicable diseases," PI Order at 50, yet Defendants readily admit that 630 Sansome lacks "appropriate isolation areas." *See* Buskey Decl. at ¶¶ 12, 19. Defendants do not provide evidence that any of the seven Class Members who screened positively for Tuberculosis were segregated, tested, or treated—instead, these individuals were cleared for general holding at

630 Sansome. Although Defendants suggest that "appropriate care and testing *may* then be carried out" in long-term detention (Opp. at 20, emphasis added), they provide no evidence that such care and testing is actually provided. This falls short of the objectives and plain language of the PI.

**E. Defendants Have Violated the PI's Requirements on Language Access and a Notice of Rights (PI Nos. 8, 12, 13), and Their Opposition Confirms It**

Defendants fail to provide any policies, training, or logs showing compliance with the PI's notice requirement. PI Order at 50–51, ¶¶ 12, 13. They do not assert that they have created a notice that explains all of the protections of the PI, nor do they produce a copy of any such notice. The posted documents they cite are silent as to many rights under the PI, such as the right to hygiene items. *See* Kaskanlian Decl., Ex. B. Defendants also provide no evidence of ever employing the services of a translator to explain PI rights to a Class Member who does not speak English or Spanish, and they fail to explain why at least ten Class Members who do not speak English or Spanish were given no translation during their medical screenings. *See* Mot. at 20.

**F. Defendants Violate the PI's Requirements on Hygiene (PI No. 9)**

The PI requires Defendants to provide Class Members with hygiene products, not to withhold such products unless Class Members ask for them. *See* PI Order at 50–51. Indeed, where the Court intended to condition an obligation on Class Member request, it did so expressly. PI Order at 49–50, ¶¶ 1, 7 (requiring extra blankets and medical care upon request). By contrast, PI No. 9 requires Defendants to provide hygiene products to each Class Member with no mention of the need for a request. *Id.* at 50–51 ¶ 9. Furthermore, the logical fallacy of Defendants' argument is underscored by their lack of requisite notice: because they never tell Class Members they are entitled to these products, Class Members do not ask. Defendants have failed to contradict Class Members' firsthand accounts regarding lack of hygiene items, and their after-the-fact misguided interpretation is insufficient to avoid enforcement. *See Flores*, 394 F. Supp. 3d at 1057–58.

**III. <u>Enforcement Is the Appropriate Procedural Vehicle for This Court to Interpret Its Order and Compel Compliance</u>**

Plaintiffs seek enforcement of the PI to effectuate its purpose, not contempt sanctions. District courts' "inherent power to enforce compliance with their lawful orders" is well settled. *Shillitani v. United States*, 384 U.S. 364, 370 (1966); *Hook v. State of Ariz., Dep't of Corr.*, 972

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

F.2d 1012, 1014 (9th Cir. 1992). If necessary, a court may clarify an order at the same time it exercises its inherent enforcement power, as "[this] power includes the power to construe and interpret the language of the judgment." *California v. U.S. Dep't of the Interior*, No. 17-cv-05948-SBA (TSH), 2020 WL 1496278, at *3 (N.D. Cal. Mar. 16, 2020), *report and recommendation adopted*, No. C 17-5948 SBA, 2020 WL 13093994 (N.D. Cal. July 30, 2020). Therefore, "[a] motion to enforce judgment is the 'usual method' for requesting a court to interpret its own judgment and compel compliance with a prior decision." *California*, 2020 WL 13093994, at *3.

Defendants' arguments regarding contempt procedures are premature and irrelevant to the instant enforcement motion. Indeed, enforcement is an important tool that can avoid the need for contempt proceedings. "It is undoubtedly proper for a district court to issue an order clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent 'unwitting contempt.'" *Al Otro Lado, Inc. v. Mayorkas*, No. 17-CV-02366-BAS-KSC, 2022 WL 3142610, at *10 (S.D. Cal. Aug. 5, 2022) (citing *Regal Knitwear Co.*, 324 U.S. at 15 (explaining that courts may clarify injunctive orders and issue enforcement orders "to avoid unwitting contempts as well as to punish deliberate ones.")). "By clarifying the scope of a previously issued injunction, a court 'adds certainty to an implicated party's effort to comply with the order and provides fair warning as to what future conduct may be found contemptuous.'" *Safari Club Int'l v. Bonta*, 756 F. Supp. 3d 837, 840 (E.D. Cal. 2024) (citing *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984)). To forestall potential contempt, a court should grant a motion to enforce "when a prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it, even if the noncompliance was due to misinterpretation of the judgment." *Oceana, Inc. v. Ross*, No. 217CV05146RGKJEM, 2020 WL 5239197, at *3 (C.D. Cal. Jan. 8, 2020).

Defendants' arguments that employ the substantive standards of contempt are also unavailing. First, good faith interpretation is not a defense against enforcement—the Court can exercise inherent enforcement authority regardless of a party's varying interpretation of an order. *See, e.g.*, *Marco Antonio B.R. v. Warden of Golden State Annex Det. Facility*, No. 1:26-CV-00810-TLN-CSK, 2026 WL 1649601, at *1 (E.D. Cal. June 8, 2026) (a motion to enforce shall be granted "even if the noncompliance was due to misinterpretation"). Similarly, there is no clear and

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

convincing standard for *interpretation* of the Court's PI—interpretation is squarely within the Court's inherent power. *See Flores*, 394 F. Supp. 3d at 1049 (rejecting clear and convincing standard for interpretation and enforcement of a settlement agreement regarding conditions in ICE and CBP detention because "Plaintiffs make no attempt to hold Defendants in civil contempt."). Finally, Rule 65 notice applies to the issuance of injunctions, not the enforcement of already-existing injunctions. *See* Fed. R. Civ. P. 65(a). This Court has already put Defendants on notice that it "retains jurisdiction to clarify and enforce the preliminary injunction and to modify it as needed to preserve the status quo." *Sequen v. Albarran*, 814 F. Supp. 3d 1068, 1072 n.2 (N.D. Cal. 2025) (*citing Thakur*, 795 F. Supp. 3d at 1178–79).[2]

This Court has already held that its clarification (i.e., reiteration) of the PI on December 22, 2025 was not a modification. *Sequen*, 814 F. Supp. 3d at 1072. Likewise, enforcement of the PI and subsequent clarification would not constitute new or modified relief. Where a district court applies the terms of an injunction to subsequent conduct, it does not modify the injunction "but instead merely interpret[s] it." *Nat'l Lightning Prot. Corp. v. E. Coast Lightning Equip., Inc.*, 815 F. App'x 128, 130 (9th Cir. 2020) ("Because the district court's order, whether or not correct, was 'pursuant to' the injunction, it did not constitute a modification.").

*Cunningham v. David Special Commitment Center* is entirely inapposite, as it involved modification of an earlier injunction. 158 F.3d 1035 (9th Cir. 1998). *Cunningham* dealt with an injunction that required an institution for *male* sex offenders to comply with constitutional standards for mental health care. *Id.* at 1036. Three years later, the institution received its first *female* resident, who moved to enforce the injunction. *Id.* at 1037. The district court subsequently

[2] Defendants' contention that they lacked notice of noncompliance issues beyond onsite medical care is flatly inaccurate. Plaintiffs have attempted to meet and confer with Defendants on issues related to disability accommodation, mental health, language translation, medically necessary meals, and the one-hour notice of rights beginning with their February 2, 2026 deficiency letter. *See* ECF No. 237-2. Plaintiffs reiterated those concerns in a June 2, 2026 deficiency letter, expressly noting they would use the lack of documentation on those issues, as well as issues regarding medical equipment, prescription medication access, and hygiene supplies, as evidence of noncompliance. *See* ECF No. 237-11. The parties conferred on June 5, 2026, on July 9, 2026, and again on September 28, 2026, without resolution. Plaintiffs also dispute Defendants' contention that "the parties have reached agreement[] regarding attorney access" (Opp. at 18); although the parties continue to meet and confer about attorney access, it remains a live issue.

ordered "defendants to place [her] in a secure treatment facility where she is not housed with males" and provide her with a different treatment plan. *Id.* The Ninth Circuit concluded the enforcement order "create[ed] a new legal relationship between [the female resident] and defendants that did not theretofore exist and add[ed] an entirely new set of obligations." *Id.*

The modification of the injunction was even more stark in *Clark v. Coye*, which involved a *state law passed subsequent to an injunction* requiring the California Department of Health Services to reimburse providers for certain procedures. 60 F.3d 600 (9th Cir. 1995). The district court summarily enjoined the operation of the new law based on the prior injunction. *Id.* at 604. That was error because "the district court was incorrect in its conclusion that [the new state law] was inconsistent with the terms of the existing injunction." *Id.* In sum, the operation of the new law was reconcilable with the existing injunction, so the district court's order enjoining the new law constituted a modification, not a clarification.

Defendants do not meaningfully distinguish *Armstrong,* which demonstrates the full remedial scope available to a court enforcing its order: including the power to order changes to policy and protocol, to require appropriate training, and to order compliance monitoring and reporting. *See Armstrong,* 857 F. Supp. 2d at 951, 938–941 (issuing enforcement order requiring that the defendants "develop a revised plan," create a grievance system specifically for disability accommodation, create a system to "determine what, if any, reasonable accommodations in housing, programming, or parole proceedings the parolee requires," and to add specific language to "existing or future contracts" pursuant to the original injunction). Moreover, the agreed-upon "Amended Plan" at issue in *Armstrong* was created because the district court *ordered* its creation as an enforcement measure after the plaintiffs submitted evidence of noncompliance. *Id.* at 942.

Finally, monitoring an injunction compliance via specific obligations also does not constitute a new injunction. *See D.N.N.*, No. 1:25-cv-01613-JRR, ECF No. 231 (enforcing preliminary injunction by requiring ICE to produce biweekly reports with, among other things, data on "daily maximum cell counts for each of the Baltimore Hold Room cells," data on over-the-counter medications, and data on the provision of prescription medications); *see also, e.g.*, *Armstrong,* 857 F. Supp. 2d at 949, 951–52; *Flores*, 394 F. Supp. 3d at 1052–62.

Coblentz Patch Duffy & Bass LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

COBLENTZ PATCH DUFFY & BASS LLP
One Montgomery Street, Suite 3000, San Francisco, California 94104-5500
415.391.4800 • Fax 415.989.1663

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully ask that this Court grant their Motion to Enforce the Preliminary Injunction.

DATED: October 22, 2026

LAWYERS' COMMITTEE FOR CIVIL RIGHTS OF THE SAN FRANCISCO BAY AREA

By: */s/ Marissa Hatton*
MARISSA HATTON
ANDREW NTIM
JORDAN WELLS
NISHA KASHYAP
Attorneys for Petitioner

DATED: October 22, 2026

CARECEN SF

By: */s/ Laura Victoria Sanchez*
LAURA VICTORIA SANCHEZ
TALA BERARDI HARTSOUGH
Attorneys for Petitioner

DATED: October 22, 2026

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF NORTHERN CALIFORNIA

By: */s/ Neil K. Sawhney*
NEIL K. SAWHNEY
LAUREN M. DAVIS
Attorneys for Petitioner

DATED: October 22, 2026

COBLENTZ PATCH DUFFY & BASS LLP

By: */s/ Mark L. Hejinian*
MARK L. HEJINIAN
MARCIA V. VALENTE
DAVID C. BEACH
CHARMAINE G. YU
EVAN G. CAMPBELL
DARIEN LO
Attorneys for Petitioner